**UNITED STATES DISTRICT COURT**
Northern District of Alabama
Office of the Clerk
Room 140, 1729 5th Avenue North
Birmingham, Alabama 35203
(205) 731-1700

```
┌─────────────────────────────┐
│          FILED              │
│         Jun 29, 2015        │
│  CLERK, U.S. DISTRICT COURT │
│ EASTERN DISTRICT OF CALIFORNIA│
└─────────────────────────────┘
```

Sharon N. Harris
Clerk of Court

June 22, 2015

```
CAED Case # 1:15-cv-0990 LJO BAM
Lindblom v. Santander Consumer et al
```

David J. Bradley, Clerk of Court
Southern District of Texas, Houston Division
515 Rusk Avenue
Houston, TX 77002

Our Case Number 2:14-cv-2104-MHH

Dear Clerk:

```
April Lindblom
```

    In accordance with the order of this court entered June 22, 2015, Plaintiff ~~Timmy~~ ~~Fontenot~~'s claims in the above-entitled case are transferred back to your court for further litigation. Enclosed is a copy of the order, all complaints filed in this case and a copy of the docket sheet. We are also enclosing a disc with all of this information in PDF format.

                    Sincerely,

                    SHARON N. HARRIS, CLERK

                    By: _S/ Katie Kimbrough_____
                         Deputy Clerk

Enclosures

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CARMEN WOODS, et al.,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | |
| | } | **Case No.:  2:14-cv-02104-MHH** |
| **SANTANDER CONSUMER USA** | } | |
| **INC.; OCWEN LOAN SERVICING,** | } | |
| **LLC; OCWEN FINANCIAL** | } | |
| **CORPORATION; WESTERN** | } | |
| **UNION BUSINESS SOLUTIONS** | } | |
| **(USA) LLC,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>ORDER</u>

In this action, a group of plaintiffs assert claims against defendant Santander Consumer USA, Inc. for alleged violations of the Telephone Consumer Protection Act.  (Doc. 50, p. 33).  On behalf of a putative nationwide class, the plaintiffs also assert claims against Santander; Ocwen Loan Servicing, LLC; Ocwen Financial Corporation (collectively "Ocwen"); and Western Union Business Solutions (USA) LLC for alleged violations of the Fair Debt Collection Practices Act.  (Doc. 50, pp. 10–17).  The FDCPA claims concern "speedpay fees" that Santander, Ocwen, and Western Union purportedly charged borrowers when borrowers made payments on mortgage and car loans via telephone or via the internet.  (Doc. 50, ¶

32).  The named plaintiffs contend that the fees were not "'expressly authorized by the agreement creating the [plaintiffs'] debt[s] or permitted by law.'"  (Doc. 50, ¶ 42) (quoting 15 U.S.C. §1692f(1)).  Plaintiffs from California and Texas also assert state-law claims against the defendants.  (Doc. 50, ¶¶ 69–123).

The action is before the Court on the plaintiffs' third-amended complaint. (Doc. 50).  As the plaintiffs have amended their complaint and revised their claims, the defendants have filed a variety of motions.  (Docs. 23, 25, 29, 30, 31, 32).  The Court heard oral arguments on the pending motions on June 6, 2015.[1]  In this order, the Court resolves those motions based on the Court's review of the third amended complaint.

### 1.  Rule 12(b)(1) Motion to Dismiss

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, defendant Ocwen has moved the Court to dismiss the claims that plaintiffs Esmeralda Gonzalez and John Self have asserted against the company.  Ocwen argues that those plaintiffs lack standing to pursue their claims.  (Doc. 29).  The motion is well-taken.

In its motion, Ocwen demonstrated it has no record of having serviced a mortgage for Ms. Gonzalez.  (Doc. 29, pp. 4-6; Doc. 29-2, p. 3).  In addition, Ocwen demonstrated that its records indicate that although Ocwen currently

---

[1] A court reporter was present, and a transcript is available upon request.

services a mortgage loan connected to the property at Mr. Self's street address, he is not the borrower for the debt on that property.  (Doc. 29, p. 7).  In the third-amended complaint, the plaintiffs assert that they rely on the defendants' documents to support their claims.  (Doc. 50, ¶ 28).  At the hearing on the defendants' motions, plaintiffs' counsel acknowledged that they have no information to contradict the evidence on which Ocwen relies in its motion.

Because neither Ms. Gonzalez not Mr. Self is a borrower, these plaintiffs lack standing to assert FDCPA or state law claims against Ocwen, and the Court, consequently, lacks subject matter jurisdiction over those claims.  *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259, 1264, 1265 (11th Cir. 2011).  Western Union has not moved to dismiss Ms. Gonzalez's and Mr. Self's claims for lack of subject matter jurisdiction; however, the Court has an independent duty to examine subject matter jurisdiction.  Fed. R. Civ. P. 12(h); *Frulla v. CRA Holdings, Inc.*, 543 F.3d 1247, 1250 (11th Cir. 2008).  For the reasons that Ocwen stated, the Court also lacks subject matter jurisdiction over Ms. Gonzalez and Mr. Self's claims against Western Union.  Therefore, the Court **DISMISSES** without prejudice the claims asserted by Ms. Gonzalez and Mr. Self against Ocwen and Western Union.[2]

---

[2] This ruling eliminates Count VI in its entirety.

## 2.  Rule 12(b)(2) Motion to Dismiss

With the dismissal of plaintiffs Gonzalez and Self from this action, only two out-of-state plaintiffs remain, California plaintiff April Lindblom and Texas plaintiff Timmy Fontenot . (Doc. 50, pp. 4–5).  Both plaintiffs intend to represent the putative nationwide FDCPA class and statewide classes who assert claims against Santander, Ocwen, and Western Union under state statutes that resemble the FDCPA.  Santander argues that the Court should dismiss Ms. Lindblom's and Mr. Fontenot's claims because the Court lacks personal jurisdiction over Santander with respect to those claims. (Doc. 30).

In addition to asserting an FDCPA claim against Santander and Western Union on behalf of a nationwide class, Ms. Lindblom alleges that those defendants violated Cal. Civ. Code §1788.17.  She seeks to represent a class of California plaintiffs who purportedly were harmed by Santander's and Western Union's alleged violations of the state statute. (Doc. 50, pp. 20-26).  Similarly, in addition to asserting an FDCPA claim against Santander, Ocwen, and Western Union on behalf of a nationwide class, Mr. Fontenot alleges that those defendants violated certain provisions of the Texas Finance Code.  He seeks to represent a class of Texas plaintiffs who purportedly were harmed by Santander's, Ocwen's, and Western Union's alleged violations of the state code. (Doc. 50, pp. 27-33).  Mr.

Fontenot also asserts, individually, a TCPA claim against Santander.  (Doc. 50, ¶¶ 124, 138).

Although the Court conceivably could exercise jurisdiction over Santander with respect to Ms. Lindblom and Mr. Fontenot's FDCPA claims if the Alabama plaintiffs persuade the Court to certify a nationwide FDCPA class, for the reasons discussed at the hearing in this matter, the Court does not have personal jurisdiction over Santander with respect to Ms. Lindblom's and Mr. Fontenot's state-law claims or Mr. Fontenot's TCPA claim.  All of those claims arose from transactions that occurred in Texas and California.   At the hearing on the defendants' motions, Ocwen and Western Union indicated that the Court does not have personal jurisdiction over them either with respect to the state-law class claims.  Consistent with the Court's discussion with the parties at the hearing, the Court finds that it has neither specific nor general jurisdiction over the defendants as with respect to Ms. Lindblom's and Mr. Fontenot's state-law claims or Mr. Fontenot's TCPA claim.  The Court may exercise personal jurisdiction over the defendants with respect to Ms. Lindblom's and Mr. Fontenot's FDCPA claims only if the Court certifies a nationwide FDCPA class.

Under 28 U.S.C. §1631, if the Court finds that it lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed.

. . ." 28 U.S.C. § 1631.  The plaintiffs' most recent proposed amended complaint states that Mr. Fontenot resides in Harris County, Texas, and he bought a car (the loan for which was serviced by Santander) from a dealer in Houston, Texas; Ms. Lindblom resides in Madera County, California, where she bought a Jeep that was financed by Santander.  (Doc. 35-1, ¶¶ 12, 13, 14, 15).  Based on these allegations, it appears that Ms. Lindblom's claims could have been brought in a federal district court in the Eastern District of California; Mr. Fontenot's claims could have been brought in a district court in the Southern District of Texas.  Therefore, the Court **TRANSFERS** Ms. Lindblom's claims to the United States District Court for the Eastern District of California, and the Court **TRANSFERS** Mr. Fontenot's claims to the United States District Court for the Southern District of Texas.[3]

### 3.  Remaining Motions to Dismiss and Sever

In light of these dismissals and transfers, the Court has pending before it the Alabama plaintiffs' TCPA claims against Santander and a putative nationwide class claim against Santander, Ocwen, and Western Union under the FDCPA.  The Court rules as follows on the remaining pending motions related to those claims: The Court **DENIES** without prejudice Ocwen's motion to sever due to misjoinder, (Doc. 23), and Santander's motion to sever.  (Doc. 32).  The defendants may refile their motions to sever prior to trial, but the Court will keep the claims together for

---

[3] The Court also orders these transfers pursuant to 28 U.S.C. § 1404(a).

pretrial purposes.  The Court **DENIES** as moot Western Union's 12(b)(6) motion to dismiss or, alternatively, for a more definite statement.  (Doc. 25).  The Court **DENIES** Santander's 12(b)(6) motion to dismiss or, alternatively, for a more definite statement.  (Doc. 31).  The Court **DENIES** as moot plaintiffs' motion to amend/correct complaint.  (Doc. 35).  The Court **GRANTS** the joint motion to continue the Rule 26(f) conference, (Doc. 33), and the motion to temporarily stay discovery.  (Doc. 44).  The Court directs the Clerk to please **TERM** Docs. 23, 25, 29, 30, 31, 32, 33, 35 & 44.  The Court will issue a separate order requiring briefing on the plaintiffs' theory of recovery under the FDCPA.

**DONE** and **ORDERED** this June 22, 2015.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CARMEN WOODS, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CASE NO.: 2:14-CV-02104-MHH** |
| **SANTANDER CONSUMER USA, INC.,** | ) | |
| **ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**THIRD AMENDED COMPLAINT**

This class action complaint claims that defendant Western Union Business Solutions (USA) LLC ("Western Union") entered into "partnerships" with debt collectors including defendants Santander Consumer USA, Inc. ("Santander") and Ocwen Financial Corporation and Ocwen Loan Servicing, LLC (collectively and severely referred to as "Ocwen") whereby Western Union charged consumers transaction fees for payments to debt collectors by telephone and then kicked back most of each fee collected to the debt collectors. Plaintiffs claim that this scheme violates 15 U.S.C. 1692f(1), of the Fair Debt Collection Practices Act ("FDCPA") which makes the following conduct of a debt collector unlawful:

> "The collection of any amount (including any … fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

1

Plaintiffs also assert claims on behalf of the class under California and Texas state law that incorporates this provision of the FDCPA. Additionally, certain individual plaintiffs bring individual claims against Santander Consumer USA for violations of the Telephone Consumer Protection Act ("TCPA").

## THE PARTIES

1.     Plaintiff Carolyn Coleman is an adult resident citizen of Jefferson County, Alabama. Santander and Western Union committed the TCPA and FDCPA violations described below against her based on a vehicle purchased by her daughter Carmen Woods. Plaintiff Coleman was harmed by the actions of Santander and Western Union in Alabama.

2.     Plaintiff Justin Cooper is an adult resident citizen of Russell County, Alabama. On June 14, 2007, he purchased a vehicle from Payless Car Sales. Plaintiff Cooper financed this vehicle through a consumer loan. Plaintiff Cooper was harmed by the actions of Santander and Western Union in Alabama.

3.     Plaintiff Debbie Glover is an adult resident citizen of Montgomery County, Alabama. In February of 2008, she purchased a 2006 Buick Lacrosse from Tameron Honda. Plaintiff Glover financed this vehicle through a consumer loan. Plaintiff Glover was harmed by the actions of Santander and Western Union in Alabama.

4.      Plaintiff Jalita Flood is an adult resident citizen of Mobile County, Alabama. On October 12, 2007, she purchased a 2005 Nissan Altima from McConnell Automotive. Plaintiff Flood financed this vehicle through a consumer loan. Plaintiff Flood was harmed by the actions of Santander and Western Union in Alabama.

5.      Plaintiff Cynthia Paul is an adult resident citizen of Montgomery County, Alabama. On March 22, 2008, she purchased a 2007 GMC Envoy. Plaintiff Paul financed this vehicle through a consumer loan. Plaintiff Paul was harmed by the actions of Santander and Western Union in Alabama.

6.      Plaintiff Stephen Pollitt is an adult resident citizen of Montgomery County, Alabama. In 2007, he purchased a vehicle from McGee Pontiac. Plaintiff Pollitt financed this vehicle through a consumer loan. Plaintiff Pollitt was harmed by the actions of Santander and Western Union in Alabama.

7.      Plaintiff Shirley Ray is an adult resident citizen of Barbour County, Alabama. On September 1, 2007, she purchased a 2007 Chevrolet Cobalt from C&H Auto Sales. Plaintiff Ray financed this vehicle through a consumer loan.. Plaintiff Ray was harmed by the actions of Santander and Western Union in Alabama.

8.      Plaintiff Ashley Sherrin is an adult resident citizen of Baldwin County, Alabama. On July 19, 2006, she purchased a 2006 Kia Rio from McCray Kia.

3

Plaintiff Sherrin financed this vehicle through a consumer loan. Plaintiff Sherrin was harmed by the actions of Santander and Western Union in Alabama.

9.      Plaintiff Jameishia Tripp is an adult resident citizen of Walker County, Alabama. In September of 2007, she purchased a 2005 Scion TC from Honda of Jasper. Plaintiff Tripp financed this vehicle through a consumer loan. Plaintiff Tripp was harmed by the actions of Santander and Western Union in Alabama.

10.      Plaintiff Brenda Watson is an adult resident citizen of Mobile County, Alabama. On March 19, 2008, she purchased a 2006 Hummer H3 from Capital Auto Company. Plaintiff Watson financed this vehicle through a consumer loan..  Plaintiff Watson was harmed by the actions of Santander and Western Union in Alabama.

11.      Plaintiff Porter Conley is an adult resident citizen of Barbour County, Alabama. In July of 2007, he purchased a 2007 Dodge Ram from Hughes Johnson Chrysler Dodge Jeep. Plaintiff Flood financed this vehicle through a consumer loan. Plaintiff Conley was harmed by the actions of Santander and Western Union in Alabama.

12.      Plaintiff Timmy Fontenot is an adult resident citizen of Harris County, Texas. In 2006 he purchased a 2004 Saab 93 from Carmax in Houston, Texas. Plaintiff Fontenot financed this vehicle through a consumer loan. In addition, Mr. Fontenot has a home mortgage serviced by Ocwen.

13.     Plaintiff John Self is an adult resident citizen of Denton County, Texas. He purchased a home in 2006 that was financed through a loan that was later acquired or serviced by Ocwen.

14.     Plaintiff Esmeralda Gonzalez is an adult resident citizen of Los Angeles County, California. In 2007, she took out a mortgage was later acquired or serviced by Ocwen.

15.     Plaintiff April Lindblom is an adult resident citizen of Madera County, California. She purchased a 2006 Jeep Liberty from Michael Auto. Plaintiff Lindblom financed this vehicle through a consumer loan..

16.     Plaintiff Harold McWhorter is an adult resident citizen of Jefferson County, Alabama. He purchased a home at 4112 Avenue L in Fairfield, Alabama in 1999. This loan was acquired by Ocwen in default and is currently serviced by Ocwen. Plaintiff McWhorter was harmed by the actions of Ocwen and Western Union in Alabama.

17.     Plaintiff Robert Fielder is an adult resident citizen of Jefferson County, Alabama. He financed a home at 201 Wind View Trace in Irondale, Alabama through GMAC. This loan was acquired by Ocwen in default and is currently serviced by Ocwen. Plaintiff Fielder was harmed by the actions of Santander and Western Union in Alabama.

18.     Defendant Ocwen Loan Servicing, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Florida. A major portion of its business includes the purchase and servicing of subprime home loans in default.

19.     Defendant Ocwen Financial Corporation is a Delaware corporation with its principal place of business in Florida. A major portion of its business includes the purchasing and servicing of subprime home loans in default.

20.     Defendant Western Union Business Solutions (USA) LLC is a Delaware corporation with its principal place of business in Englewood, Colorado.

21.     Defendant Santander Consumer USA, Inc. is an Illinois corporation with its principal place of business in Dallas, Texas. A major portion of its business includes the purchasing and servicing of subprime auto loans in default.

## JURISDICTION AND VENUE

22.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because some of each Plaintiffs' claims arise under federal law, specifically the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.

23.     Jurisdiction is proper in this Court under 28 U.S.C. §1332 (d) because those claims that do not arise under federal law are part of a class action in which

the amount in controversy exceeds the sum of $5,000,000 and the class contains citizens of different states than the Defendants.

24.    Venue is proper in this Court under 28 U.S.C. § 1391 (b)(2) because a substantial part of the events giving rise to Plaintiffs' claims took place in the Northern District of Alabama.

25.    Joinder of all Plaintiffs and all claims against all Defendants is proper under Rule 20, Fed. R. Civ. Proc., because all of the illegal charges and fees were made through defendant Western Union's Speedpay service.   Hence, all of Plaintiffs' claims against all defendants arise out of the same "series of transactions or occurrences," and there are questions of "law and fact common to all plaintiffs" that will arise in this action.

26.    Supplemental Jurisdiction exists under 28 U.S.C. 1367(a).

27.    Personal Jurisdiction is proper in this Court because all of Plaintiffs' claims, including those made by Plaintiffs' from Alabama, arise from a common nucleus of operative fact.

**FACTUAL BACKGROUND**

28.    All of the Plaintiffs in this action are consumers as that term is used in the FDCPA. Each purchased vehicles, and in some cases homes. Each of these acquisitions were financed through secured consumer loans. Each of the automobile

loans was acquired or serviced by Santander. Each of the home loans were acquired or serviced by Ocwen. Although Plaintiffs do not recall exactly when defendants began servicing their loans, defendants own records contain this information.

29.    As they attempted to pay back these loans, the Plaintiffs eventually fell behind and went into default. The servicing rights to the auto loans were acquired by Defendant Santander Consumer USA ("Santander") after the Plaintiffs fell into default. Plaintiffs' mortgage loans were acquired by Defendant Ocwen Loan Servicing, LLC or Defendant Ocwen Financial Corporation (collectively, "Ocwen") after the Plaintiffs fell into default. Because Ocwen and Santander acquired these loans after they were in default, both Ocwen and Santander are debt collectors under the FDCPA.

30.    The Plaintiffs often attempted to pay these debts over the telephone. When they did so, Ocwen and Santander processed their payments through the Speedpay service they used in partnership with Defendant Western Union. Defendant Western Union partners with various businesses to allow bill payment over the telephone. Western Union advertises that "we invest in our clients' success by partnering with them every step of the way." Western Union Website, available at http://Payments.westernunion.com/product-suites/payments (last accessed May 14, 2015). Western Union offers its partners advanced payment options like "feature-rich web, mobile solutions, recurring, eBills, and expedited online bill pay"

as well as "industry-standard payment channels, including web, IVR, CSR, and walk-in." Western Union describes its relationship with the debt collectors for whom it provides these services as an "ongoing partnership." Western Union also advertises that "dedicated project managers stay with you – beyond implementation," and that the company "invest[s] in our clients' success by partnering with them every step of the way." (Id.) Western Union's method of processing payments for other companies is illustrated by Appendix A.

31. The partnerships that Western Union creates with debt collectors like Ocwen and Santander have a specific purpose. As stated on the website, "[o]ur services help you evaluate your payment strategy and find opportunities to help reduce costs, improve efficiency, migrate customers to **more profitable payment channels** and more." (Id. (emphasis added)). In other words, Western Union helps these debt collectors make more profit by charging the customer and splitting the fee with the debt collector.

32. When Plaintiffs attempted to use the telephone or internet to pay on their loans to Ocwen or Santander, defendant's required that plaintiff's use Western Union's Speedpay. Western Union required in turn that Plaintiffs pay a fee in addition to their payment and remitted a portion of the fee back Santander or Ocwen, as applicable. It thus collected money both on its own behalf and on behalf of the lenders. Under the FDCPA, a debt collector includes anyone who "regularly collects,

or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Western Union thus regularly collects debts owed or due another, making it a debt collector under the FDCPA.

33.     The statute of limitations has been tolled as to the plaintiffs during all relevant times because defendants concealed from the plaintiffs, and the public generally, that a portion of the money paid by Plaintiffs for its Speedpay service was remitted to debt collectors including Ocwen and Santander, in violation of the FDCPA. Plaintiffs diligently checked the fees on their accounts, but did not know that this remittance occurred. Because the entire fee was at all times labeled as a Western Union fee, plaintiffs had no reason to suspect that any portion of this fee incidental to payment of the principal debt was being paid not to Western Union but to the debt collectors. Western Union's concealment of this fee split prevented Plaintiffs from learning of their cause of action against defendants until well within the limitations period.

**COUNT I: VIOLATION OF THE FDCPA BY WESTERN UNION**

34.     This nationwide class count is brought by all Plaintiffs against Defendant Western Union.

35.    This action is maintainable as a nationwide class action pursuant to 15 U.S.C. 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. All of the named Plaintiffs seek to represent the following class:

36.    All individuals in the United States who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with a loan being serviced by a debt collector as defined by the FDCPA.

37.    Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. Western Union partners with many different companies to offer the Speedpay service, including the other two defendants. Ocwen is one of the three largest mortgage servicing companies in the country, and Santander's website states that it has over 2,000,000 accounts. Each of these consumers who pays over the phone uses Western Union's Speedpay system, as do thousands if not millions of consumers paying other debt collectors.

38.    Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate the FDCPA.

39.    Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

40.     Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

41.     Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Western Union to partner with other businesses to charge illegal fees. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

42.     The FDCPA makes it an illegal, "unfair practice" for a debt collector to undertake "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1).

43.     Western Union regularly collects or attempts to collect, directly or indirectly, debts owed another and it is therefore a debt collector within the meaning of the FDCPA. Western Union is also a debt collector under the FDCPA because it acted as the partner of debt collectors including Ocwen and Santander in facilitating their debt collection activity, actively participated in the violations of the FDCPA, charged the Speedpay fees, split the fees, and hid the split from the consumers. Each of the loans at issue was in default at the time Western Union obtained the right to provide Speedpay service to that loan.

44.     Because the fees charged by Western Union are not authorized by the agreement creating the debt or any provision of law, their collection violates 15 U.S.C. §1692f. See Quinteros v. MBI Assocs., 999 F. Supp. 2d 434 (E.D.N.Y. 2014). The Quinteros court found that a five dollar processing fee violated the FDCPA.

45.     The plain instruction of § 1692f(1) is that the collection of any amount incidental to the principal obligation, unless expressly authorized by agreement creating the debt or permitted by law, violates the FDCPA. Courts have interpreted the FDCPA broadly. See, e.g., Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989) ("It is clear that Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them.") Id. at 438. Accord; Acosta v. Credit Bureau, 2015 U.S.

Dist. LEXIS 55870 (N.D. Ill., Apr. 29, 2015). The phrase "permitted by law" means that "a debt collector may not collect any amount if either '(A) state law expressly prohibits collection of the amount or (B) the contract does not provide for collection of the amount and state law is silent.'" <u>Acosta</u>, 2015 Dist. LEXIS 55870 at *8 (quoting <u>FTC Staff Commentary on the FDCPA</u>, 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988).

46.   The states of North Carolina, Wyoming, and Colorado have issued administrative opinions that interpret virtually identical language in state law to make the kind of fees charged by the Defendants illegal. (Ex. A – Opinion of the N.C. Dep't of Ins.; Ex. B. – Advisory Op. of Admin., Colo. Collection Agency Bd.). Indeed, the Attorney General of Wyoming opined that the fees violate that state's law precisely because they violate the FDCPA. (Ex. C., Letter from Atty. Gen. Bruce Salzburg to Rocklon Edmonds).

## COUNT II: VIOLATION OF THE FDCPA BY SANTANDER

47.   Plaintiffs Carolyn Coleman, Justin Cooper, Debbie Glover, Jalita Flood, Shirley Ray, Cynthia Paul, Ashley Sherrin, Stephen Pollitt, Jameishia Tripp, Barbara Turner, Porter Conley, April Lindblom and Timmy Fontenot bring this nationwide class count against Defendant Santander.

48.     This action is maintainable as a nationwide class action pursuant to 15 U.S.C. 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. The Plaintiffs named in Paragraph 43 seek to represent the following class:

> All individuals in the United States who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with any loan being service by Santander, and as to which Santander obtained those servicing rights at a point in time when the loan was in default.

49.     Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. Santander's own website states that it services over 2,000,000 accounts. Many thousands of those accounts, or the servicing rights to them, were acquired from other lenders while the loan was in default. Each time a consumer pays over the telephone, the Western Union Speedpay service is used. Thousands of customers pay in this fashion each month.

50.     45. Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging the fee, not authorized by the contract or any provision of existing law, violate the FDCPA.

51.     Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

52.     Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired

experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

53.     Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Santander in charging illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

54.     All of the Plaintiffs' damages under this count arise out of a single nucleus of operative fact defined by the agreement between Santander and Western Union to collect illegal fees. In fact, Santander followed the exact same course of conduct with respect to the loans of each and every Plaintiff, including those both inside and outside of the state of Alabama.

55.     The FDCPA makes it an illegal, "unfair practice" for a debt collector to undertake "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly

authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1).

56.    Santander qualifies as a debt collector under the FDCPA because it regularly collects debts owed to others and because it acquired each of the loans or rights to service the loans after the loan was in default.

57.    Because the fees collected by Santander are not authorized by the agreement creating the debt or any provision of law, their collection violates 15 U.S.C. §1692f.

## COUNT III: VIOLATION OF THE FDCPA BY OCWEN

58.    Plaintiffs Timmy Fontenot, Harold McWhorter, Robert Fielder, Esmeralda Gonzalez, and John Self bring this nationwide class count against Ocwen.

59.    This action is maintainable as a nationwide class action pursuant to 15 U.S.C. § 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. The Plaintiffs named in Paragraph 52 seek to represent the following class:

> All individuals in the United States who, during the applicable limitations period paid a convenience fee through Western Union's Speedpay service in connection with any loan being serviced by Ocwen, and as to which Ocwen obtained those servicing rights at a point in time when the loan was in default.

60.    Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. Ocwen is one of the three largest non-bank

mortgage servicing companies in the nation. At a minimum, it services hundreds of thousands of loans, many of which are paid online through Western Union's Speedpay service.

61.    Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate the FDCPA.

62.    Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

63.    Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

64.    Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Ocwen in charging illegal fees whenever customers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other

available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

65.    All of the Plaintiffs' damages under this count arise out of a single nucleus of operative fact defined by the agreement between Ocwen and Western Union to collect illegal fees. In fact, Ocwen followed the exact same course of conduct with respect to the loans of each and every Plaintiff, including those both inside and outside of the state of Alabama.

66.    The FDCPA makes it an illegal, "unfair practice" for a debt collector to undertake "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1).

67.    Because Ocwen regularly collects debts owed others and because it acquired each of the loans at issue in this case while that loan was in default, it qualifies as a debt collector under the FDCPA.

68.    Because the fees charged by Ocwen are not authorized by the agreement creating the debt or any provision of law, their collection clearly violates 15 U.S.C. §1692f.

## COUNT IV: VIOLATION OF CALIFORNIA LAW BY WESTERN

## UNION

69.     Plaintiffs April Lindblom and Esmeralda Gonzalez bring this statewide class 3action count.

70.     This action is maintainable as a statewide class action pursuant to Cal. Civ. Code § 1788.17, 15 U.S.C. § 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. The Plaintiffs named in Paragraph 61 seek to represent the following class:

> All individuals in the state of California who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with any consumer loan governed by the Rosenthal Fair Debt Collection Practices Act.

71.     Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. Western Union partners with many different companies to offer the Speedpay service, including the other two defendants. Ocwen is one of the three largest mortgage servicing companies in the country, and Santander's website states that it has over 2,000,000 accounts. Many of the individuals paying through Speedpay live in California, which has the largest population of any state.

72.     Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not

authorized by the contract or any provision of existing law, violate the Rosenthal FDCPA.

73.     Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

74.     Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

75.     Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Western Union in partnering with debt collectors to charge illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

76.     Western Union acted is a debt collector under California law because it acted as the partner of the other debt collectors including Ocwen and Santander in

their debt collection activity, charging the unauthorized Speedpay fees, splitting the fees, and concealing the split. Western Union is also a debt collector under California law because it regular engages in the collection of consumer debts owed itself or others.

77.    The California plaintiffs' claims arise out of a common nucleus of operative fact with the Alabama plaintiffs' claims because Western Union followed the exact same course of conduct with respect to the charging of Speedpay fees in California as in Alabama, Texas, and every other state.

78.    Because Western Union charged fees that violate 15 U.S.C. 1692f(1), they also violated Cal. Civ. Code § 1788.17, which prohibits any entity covered by California's analogous state statute (the Rosenthal FDCPA) from violating the FDCPA.

## COUNT V: VIOLATION OF CALIFORNIA LAW BY SANTANDER

79.    This action is maintainable as a statewide class action pursuant to Cal. Civ. Code § 1788.17, 15 U.S.C. § 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. Plaintiff April Lindblom seeks to represent the following class:

> All individuals in the state of California who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with an automobile loan serviced by Santander.

80.     Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. Santander has over 2,000,000 customer accounts in total, and California has more of these accounts than any other state.

81.     Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate the Rosenthal FDCPA.

82.     Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

83.     78 Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

84.     Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Santander to collect illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by

the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

85.    Santander qualifies as a debt collector under the Rosenthal FDCPA because it regularly engages in the collection of consumer debts, owed to itself or others. See Cal. Civ. Code § 1788.2(b)-(c).

86.    The California plaintiffs' claims arise out of a common nucleus of operative fact with the Alabama plaintiffs' claims because Santander followed the exact same course of conduct with respect to the charging of Speedpay fees in California as in Alabama, Texas, and every other state.

87.    Because Santander charged fees that violate 15 U.S.C. 1692f(1), they also violated Cal. Civ. Code § 1788.17, which prohibits any entity covered by California's analogous state statute (the Rosenthal FDCPA) from violating the FDCPA.


**COUNT VI: VIOLATION OF CALIFORNIA LAW BY OCWEN**

88.    This action is maintainable as a statewide class action pursuant to Cal. Civ. Code § 1788.17, 15 U.S.C. § 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. Plaintiff Esmeralda Gonzalez seeks to represent the following class:

All individuals in the state of California who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with a mortgage loan serviced by Ocwen.

89.    Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. Ocwen is one of the three largest mortgage servicing companies in the nation and state of California has more mortgages than any other state.

90.    Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate the Rosenthal FDCPA.

91.    Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

92.    Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

93.    Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of

a common course of conduct by Ocwen to collect illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

94.    Ocwen qualifies as a debt collector under the Rosenthal FDCPA because it regularly engages in the collection of consumer debts, owed to itself or others. See Cal. Civ. Code § 1788.2(b)-(c).

95.    The California plaintiffs' claims arise out of a common nucleus of operative fact with the Alabama plaintiffs' claims because Ocwen followed the exact same course of conduct with respect to the charging of Speedpay fees in California as in Alabama, Texas, and every other state.

96.    Because Ocwen charged fees that violate 15 U.S.C. 1692f(1), they also violated Cal. Civ. Code § 1788.17, which prohibits any entity covered by California's analogous state statute (the Rosenthal FDCPA) from violating the FDCPA.

## COUNT VII: VIOLATION OF TEXAS LAW BY WESTERN UNION

97.    This action is maintainable as a statewide class action pursuant to Tex. Fin. Code § 392.403 and Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs John Self and Timmy Fontenot seek to represent the following class:

> All individuals in the state of Texas who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with any consumer loan governed by Chapter 392 of the Texas Finance Code.

98.    Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable.

99.    Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate Chapter 392 of the Texas Finance Code.

100.    Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

101.    Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

102.   Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Western Union in partnering with debt collectors to charge illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

103.   Western Union is a debt collector under Texas law because it acted as the partner of other debt collectors including Ocwen and Santander, charging the Speedpay fees at issue in this case, splitting them with the other debt collectors, and concealing the split. Western Union is also a debt collector under Texas law because it engaged in debt collection activities as set out in this complaint.

104.   The Texas plaintiffs' claims arise out of a common nucleus of operative fact with the Alabama plaintiffs' claims because Western Union followed the exact same course of conduct with respect to the charging of Speedpay fees in Texas as in Alabama, California, and every other state.

105.   The fees charged by Western Union violate Tex. Fin. Code 392.303(a)(2) which prohibits debt collectors from "collecting or attempting to

collect interest or a charge fee or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."

## COUNT VIII: VIOLATION OF TEXAS LAW BY SANTANDER

106.   This action is maintainable as a statewide class action pursuant to Tex. Fin. Code § 392.403 and Rule 23 of the Federal Rules of Civil Procedure. Plaintiff Timmy Fontenot seeks to represent the following class:

> All individuals in the state of Texas who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with an automobile loan serviced by Santander.

107.   Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable.

108.   Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate Chapter 392 of the Texas Finance Code.

109.   Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

110.   Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests

adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

111.   Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Santander in charging illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

112.   Santander qualifies as a debt collector under Tex. Fin. Code § 392.001, which includes any person who engages in debt collection activities.

113.   The Texas plaintiffs' claims arise out of a common nucleus of operative fact with the Alabama plaintiffs' claims because Santander followed the exact same course of conduct with respect to the charging of Speedpay fees in Texas as in Alabama, California, and every other state.

114.   The fees charged by Santander violate Tex. Fin. Code 392.303(a)(2) which prohibits debt collectors from "collecting or attempting to collect interest or

a charge fee or expense incidental to the obligation unless the interest or incidental

charge, fee, or expense is expressly authorized by the agreement creating the

obligation or legally chargeable to the consumer."

## COUNT IX: VIOLATION OF TEXAS LAW BY OCWEN

115.   This action is maintainable as a statewide class action pursuant to Tex.

Fin.. Code § 393.303(b) and Rule 23 of the Federal Rules of Civil Procedure.

Plaintiff John Self seeks to represent the following class:

> All individuals in the state of Texas who, during the applicable
> limitations period, paid a convenience fee through Western Union's
> Speedpay service in connection with a mortgage loan serviced by
> Ocwen.

116.   Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all

class members is impracticable.

117.   Pursuant to Rule 23(a)(2), this case is predominated by one question of

law and fact that is common to all members of the class: does charging a fee, not

authorized by the contract or any provision of existing law, violate Chapter 392 of

the Texas Finance Code.

118.   Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical

of those of the class.

119.   Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and

adequately represent the interests of the class. The named plaintiffs have no interests

adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

120.   Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Ocwen in charging illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

121.   Ocwen qualifies as a debt collector under Tex. Fin. Code 392.001, which includes any person who engages in debt collection activities.

122.   The Texas plaintiffs' claims arise out of a common nucleus of operative fact with the Alabama plaintiffs' claims because Ocwen followed the exact same course of conduct with respect to the charging of Speedpay fees in Texas as in Alabama, California, and every other state.

123.   The fees charged by Ocwen violate Tex. Fin. Code 392.303(a)(2) which prohibits debt collectors from "collecting or attempting to collect interest or a charge

fee or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."

## COUNT IX: VIOLATIONS OF THE TCPA BY SANTANDER

124.   Plaintiffs Carolyn Coleman, Justin Cooper, Debbie Glover, Jalita Flood, Shirley Ray, Stephen Pollitt, Jameishia Tripp, Barbara Turner, Porter Conley, Ashley Sherrin, April Lindblom, and Timmy Fontenot bring this count on behalf of themselves as individuals.

125.   All of the plaintiffs named in Paragraph 97 had car loans held and/or serviced by Defendant Santander Consumer USA, Inc. ("Santander"). Santander regularly called plaintiffs' cellular telephones.

126.   Santander made these calls with an automatic telephone dialing system called the ASPECT telephony system. The ASPECT Dialer system qualifies as an auto-dialer under the FDCPA.

127.   On multiple occasions Santander used an auto-dialer or pre-recorded voice to call plaintiff Carolyn Coleman on her cellular telephone number, without her express consent.

128.   On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Justin Cooper on his cellular telephone number, 706-289-7839, without his express consent.

129.   On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Debbie Glover on her cellular telephone number, 334-324-4947, without her express consent.

130.   On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Jalita Flood on her cellular telephone number, 251-643-2259, without her express consent.

131.   On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Cynthia Paul on her cellular telephone number, 334-312-0699, without her express consent.

132.   On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Stephen Pollitt on his cellular telephone number, 334-399-8734, without his express consent.

133.   On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Shirley Ray on her cellular telephone number, 334-344-9624, without her express consent.

134.   On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Ashley Sherrin on her cellular telephone number, 251-752-0437, without her express consent.

135.   On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Jameishia Tripp on her cellular telephone number, 205-435-0064, without her express consent.

136.   On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Barbara Turner on her cellular telephone number, 251-714-5225, without her express consent.

137.   On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Porter Conley on his cellular telephone number, 334-367-9331, without his express consent.

138.   On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff April Lindblom on her cellular telephone number, 559-664-2066, without her express consent.

139.   On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Timmy Fontenot on his cellular telephone number, 281-723-2577, without his express consent.

140.   134. The date and time of each call made by Santander using its auto-dialer or pre-recorded voice is recorded in Santander's own internal records. The

identification of each call alleged to violate the TCPA to each respective number is easily ascertainable in Santander's own records.

141.   None of the plaintiffs ever provided Santander with permission to contact their cellular telephones with automatic dialers or pre-recorded voice messages.

142.   Santander's calls thus violated 47 U.S.C. § 227(b)(1)(iii), which prohibits anyone from using an auto-dialer or pre-recorded voice to call a cellular telephone without the called party's consent.

143.   Santander's violation of the TCPA entitles the plaintiffs to statutory damages of $500 per violation.

144.   Santander knowingly or willfully violated the TCPA.

145.   Santander's knowing or willful violations of the TCPA entitle the plaintiffs to treble statutory damages of $1500 per violation.

## PRAYER FOR RELIEF

Plaintiffs pray for the following relief:

(A)    following appropriate discovery, an order certifying the three above-described nationwide classes pursuant to Fed. R. Civ. P. 23, with notice as applicable to the absent class members;

(B)     following appropriate discovery, an order certifying the above-described statewide subclasses in California and Texas, with notice as applicable to the absent class members;

(C)     an order appointing D. Frank Davis and John E. Norris as class counsel for the nationwide class and statewide subclasses;

(D)     a declaratory ruling that the Defendants have engaged in the practices alleged herein in violation of federal law, California law, and Texas law

(E)      appropriate injunctive relief requiring Defendants to stop engaging in these illegal practices;

(F)     upon a jury verdict, an award of compensatory and statutory damages under the TCPA, the FDCPA, and California and Texas law;

(G)     an award of attorneys' fees and costs as authorized by the FDCPA, California law, and Texas law;

(H)     such further and different relief as the Court may deem appropriate.

## **JURY DEMAND**

Plaintiffs demand trial by struck jury of all issues.

/s/ John E. Norris_____
John E. Norris
One of the Attorneys for Plaintiffs

**OF COUNSEL:**
D. Frank Davis (DAV009)
John E. Norris (NOR041)
Wesley W. Barnett (BAR141)
Courtney L. Peinhardt (PEI001)

Dargan Ware (WAR089)
Davis & Norris, LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com
courtney@davisnorris.com
dware@davisnorris.com

## CERTIFICATE OF SERVICE

     I hereby certify that I have served a copy of the above and foregoing document by electronic filing with the Court's CM/ECF filing system which will transmit this filing to all counsel of record on this the 15th day of June, 2015:

                             /s/ John E. Norris_____
                             John E. Norris
                             One of the Attorneys for Plaintiff

# North Carolina
## DEPARTMENT OF INSURANCE

*Wayne Goodwin | Commissioner of Insurance*

## AGENT SERVICES

### MEMORANDUM

**TO:**    **All NC Licensed Collection Agencies**
          **All Interested Parties**

**FROM:**  **Agent Services Division**

**DATE:**  **June 12, 2014**

**Re:**    **"Convenience Fees" for payments to collection agencies**

Many consumers are being charged fees for making payments to collection agencies using certain methods such as credit card, telephone, electronic check, and debit card. The purpose of this memo is to inform all persons, firms, corporations, or associations which are subject to licensing under Article 70, Chapter 58 of the North Carolina General Statutes, that they are prohibited from charging such fees to North Carolina consumers.

N.C. Gen. Stat. § 58-70-115(2), prohibiting unfair practices, states:

> No collection agency shall collect or attempt to collect any debt by use of any unfair practices. Such practices include, but are not limited to, the following:
>
> . . .
>
> (2) *Collecting or attempting to collect from the consumer all or any part of the collection agency's fee or charge for services rendered*, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge.

(Emphasis added). The term "consumer" is broadly defined under N.C.G.S. § 58-70-90(2) as "an individual, aggregation of individuals, corporation, company, association, or partnership that has incurred a debt or alleged debt." Violations of N.C.G.S. § 58-70-115 constitute unfair or deceptive acts or practices proscribed by Article 70 or by N.C.G.S. § 75-1.1  See N.C.G.S. § 58-70-130(c).

A "convenience fee" or other charge imposed on the consumer for making payments to a collection agency by phone, check, credit card, or any other method is essentially a fee for the collection agency's services and is thus prohibited by the first clause of N.C.G.S. § 58-70-115(2).

There may be policy arguments that "convenience fees" should be allowed if the fee is disclosed to the consumer, the consumer agrees to pay the fee, the fee is imposed for an optional payment method which the collection agency is not required to offer, the collection agency offers other payment methods that do not require a fee, and the fees do not exceed the collection agency's actual costs of providing the service. However, N.C.G.S. § 58-70-115(2) does not allow collection agencies to charge consumers such fees under any circumstances.

It has also been argued that the phrase "unless legally entitled to such fee or charge" under the second clause of N.C.G.S. § 58-70-115(2) applies to collection fees as well as "interest or other charge, fee or expense incidental to the principal debt" and that a collection agency would thus be legally entitled to recover fees for its services from the debtor if the contract creating the debt contains a provision which expressly authorizes the collection agency to recover such fees. However, in the attached October 26, 2010 advisory letter to the Agent Services Division, the North Carolina Attorney General's office advised Agent Services Division that the phrase "unless legally entitled to such fee or charge" only applies to the immediately preceding phrase which states "collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt."  Moreover, the Attorney General's office further advised that assuming *arguendo* that the phrase "unless legally entitled to such fee or charge" applies to collection fees, such fees are still prohibited unless expressly authorized by statute.  The Attorney General's office noted that: (1) North Carolina courts have long held that collection fee recovery provisions are void and unenforceable absent express statutory authorization and (2) the only statute which authorizes recovery of collection fees is N.C.G.S. § 6-21.2, which authorizes collection agencies to collect or attempt to collect reasonable attorney fees from debtors pursuant to a note or other indebtedness.

Agent Services Division requests that all collection agencies subject to licensure under Article 70 of Chapter 58 ensure that that they do not demand, collect, or attempt to collect a "convenience fee" or other prohibited fees from North Carolina consumers and that they otherwise comply with all applicable statutes and regulations. The Agent Services Division may take administrative action against licensed collections agencies which violate or refuse to comply with any provision of Article 70 of Chapter 58.

Please contact Agent Services Division at (919) 807-6800 if you have any questions.

cc:    Anne Goco Kirby, Insurance Section, North Carolina Attorney General's Office
       Dan Johnson, Insurance Section, North Carolina Attorney General's Office
       David Boone, Insurance Section, North Carolina Attorney General's Office
       Kevin Anderson, Consumer Protection Division, North Carolina Attorney General's Office
       Lynne Weaver, Consumer Protection Division, North Carolina Attorney General's Office



# State of North Carolina
Department of Justice
PO Box 629
Raleigh, North Carolina
27602

ROY COOPER
ATTORNEY GENERAL

Reply to: ANNE G. KIRBY
INSURANCE SECTION
(919) 716-6610
FAX: (919) 716-6757

October 26, 2010

Etta P. Maynard
Deputy Commissioner, Agent Services Division
North Carolina Department of Insurance
1201 Mail Service Center
Raleigh, NC 27699-1201

Dear Ms. Maynard:

I am writing this letter in response to Agent Services' request for an opinion as to whether a collection agency can recover any of its fees for services from a debtor if the agreement creating the debt contains a provision which authorizes the recovery of such fees. N.C. Gen. Stat. § 58-70-115 prohibits collection agencies from collecting or attempting to collect any debt by use of any unfair practices. N.C.G.S. § 58-70-115 provides, in pertinent part, that:

> No collection agency shall collect or attempt to collect any debt by use of any unfair practices. Such practices include, but are not limited to, the following:
> . . . *Collecting or attempting to collect from the consumer all or any part of the collection agency's fee or charge for services rendered*, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge.

N.C.G.S. § 58-70-115(2)[1] (Emphasis added).

---

[1]        N.C.G.S. § 75-55, which prohibits debt collectors from collecting or attempting to collect any debt by use of "any unconscionable means," contains a nearly identical provision which prohibits debt collectors from "Collecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge." See N.C.G.S. § 75-55(2).  N.C.G.S. § 75-50(3) defines "debt collector" as "any person engaging, directly or indirectly, in debt collection from a consumer except those persons subject to the provisions of Article 70, Chapter 58 of the General Statutes."

Etta P. Maynard
October 26, 2010
Page 2

"It is well settled that the meaning of any legislative enactment is controlled by the intent of the legislature and that legislative purpose is to be first ascertained from the plain language of the statute." State v. Bates, 348 N.C. 29, 34, 497 S.E.2d 276, 279 (1998). "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). The plain language of N.C.G.S. § 58-70-115(2) prohibits collection agencies from "collecting or attempting to collect from the consumer all or any part of the collection agency's fee or charge for services rendered." Thus, it is my informal opinion that N.C.G.S. § 58-70-115(2) prohibits collection agencies from collecting or attempting to collect their fees for services rendered from consumers even if the contract creating the debt contains a provision authorizing the collection or recovery of such fees.

It has been argued that the phrase "unless legally entitled to such fee or charge" applies to collection fees as well as incidental interest and charges and that a collection agency may thus recover its collection fees from the debtor if the contract creating the debt contains a provision which authorizes it to recover such fees.[2] However, under the doctrine of the last antecedent, "relative and qualifying words, phrases, and clauses ordinarily are to be applied to the word or phrase immediately preceding and, unless the context indicates a contrary intent, are not to be construed as extending to or including others more remote." HCA Crossroads Residential Ctrs. v. North Carolina Dep't of Human Resources, et. al, 327 N.C. 573, 578, 398 S.E.2d 466, 469 (1990). Since the context of N.C.G.S. § 58-70-115(2) does not indicate any contrary intent, the phrase "unless legally entitled to such fee or charge" applies only to the immediately preceding phrase.[3]

Assuming *arguendo* that the phrase "unless legally entitled to such fee or charge" applies to collection fees, my opinion would not change because collection fee recovery provisions are void and unenforceable absent express statutory authorization. Our courts have long held that

---

[2]    The federal Fair Debt Collection Practices Act also prohibits debt collectors from collecting or attempting to collect any debt through unfair or unconscionable means and provides that such means include the recovery of collection fees "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." See 15 USC § 1692f(1). Although the federal Act is less restrictive in this regard, it does not override North Carolina's prohibition against collection fees. See 15 USC § 1692n (providing that federal Act does not override state debt collection laws which provide any consumer greater protection). There are some instances in which federal law does allow collection fees for federally-related debts, such as in the collection of guaranteed student loans, and explicitly preempts state law in those instances.

[3]    The immediately preceding phrase allows collection agencies to collect amounts incidental to the principal debt such as interest, contractual late fees, and statutory returned check fees.

Etta P. Maynard
October 26, 2010
Page 3

contractual provisions requiring a debtor to pay collection fees incurred for collection upon
default of payment are contrary to public policy and void.[4]  See, e.g., Tinsley v. Hoskins, 111
N.C. 340, 16 S.E. 325 (1892).

Earlier court decisions addressed the enforceability of collection fee recovery provisions
incorporated in promissory notes or security instruments.  In Tinsley, the Court held that a
stipulation in a promissory note awarding the promissee "the usual collection fee" in the event of
collection of the note by legal process was void and unenforceable.  Id. at 342, 16 S.E. at 325.
The Tinsley Court adopted the rationale of other courts which have struck such provisions on
grounds that they are "'a stipulation for a penalty or forfeiture, tends to the oppression of the
debtor and to encourage litigation, is a cover for usury, is without any valid consideration to
support it, contrary to public policy and void.'"  Id.  (Citation omitted).  This rationale was
subsequently applied in Brisco v. Norris, 112 N.C. 671, 16 S.E. 850 (1893)(promissory note);
Williams v. Rich, 117 N.C. 235, 23 S.E. 257 (1895) (deed of trust); Turner v. Boger, 126 N.C.
300, 35 S.E. 92 (1900) (deed of trust); Finance Co. v. Hendry, 189 N.C. 549, 127 S.E. 629
(1925)(promissory note); and Howell v. Roberson, 197 N.C. 572, 150 S.E. 32 (1929)(promissory
note).

More recent cases indicate that collection fee recovery provisions are unenforceable in
any type of instrument absent clear and express statutory authorization.  See, e.g., Credit Corp. v.
Wilson, 12 N.C. App. 481, 483, 183 S.E. 2d 859, 860 (1971), aff'd 281 N.C. 140, 187 S.E.2d 752
(1972)(guaranty of payment on promissory note)(stating that "sound public policy continues to
bar the enforcement of such provisions unless the same are clearly and expressly authorized by
statute.").  The only collection fee recovery provisions specifically authorized by statute are
provisions authorizing recovery of reasonable attorneys fees found in any "note or other evidence
of indebtedness." See N.C.G.S. § 6-21.2.[5]

In conclusion, it is my informal opinion that N.C.G.S. § 58-70-115(2) prohibits collection
agencies from collecting or attempting to collect from debtors their fees for services rendered,
even if the contract creating the debt contains a provision authorizing the recovery of such fees.
However, collection agencies may collect or attempt to collect reasonable attorneys fees from
debtors pursuant to a provision in a note or other evidence of indebtedness to the extent
authorized by N.C.G.S. § 6-21.2.

---

[4]        Although these decisions involved challenges to the imposition of attorneys fees, the rationale
applies equally to the imposition of any other collection fees.  See 17A Am Jur 2d Contracts § 402 (stating that "As
a general rule, a provision or stipulation in a note or other contract for the payment of money to pay the costs of
collection includes reasonable attorney's fees in case suit is instituted).

[5]        Reasonable attorney's fees under N.C.G.S. § 6-21.2.(2) are construed to mean no more than 15%
of the outstanding balance owing on the note or on other evidence of indebtedness.

Etta P. Maynard
October 26, 2010
Page 4


     Since this letter has not been reviewed or approved in accordance with procedures for issuing an Attorney General's advisory opinion, it is only an advisory letter.




                    Very truly yours,


                    Anne Goco Kirby
                    Assistant Attorney General


cc: Stewart Johnson,
      General Counsel

FILED

2015 Jun-15  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA



**JOHN W. SUTHERS**
Attorney General

**CYNTHIA H. COFFMAN**
Chief Deputy Attorney General

**DANIEL D. DOMENICO**
Solicitor General

**STATE OF COLORADO
DEPARTMENT OF LAW**

OFFICE OF THE ATTORNEY GENERAL

**STATE SERVICES BUILDING**
1525 Sherman Street - 7th Floor
Denver, Colorado  80203
Phone (303) 866-4500
Fax (303) 866-5474

December 27, 2006

Advisory Opinion - Administrator, Colorado Collection Agency Board

Payment "Convenience Fees"

Some collection agencies are charging fees when consumers make payments by credit card, telephone, or electronic check, check-by-phone or debit card.  The purpose of this advisory opinion is to inform collection agencies subject to the Colorado Fair Debt Collection Practices Act (CFDCPA) that such payment "convenience fees" are permitted only in limited circumstances.

CFDCPA section 12-14-108(1)(a), prohibiting unfair practices, states:

(1) A debt collector or collection agency shall not use unfair or unconscionable means to collect or attempt to collect any debt, including, but not limited to, the following conduct:

(a) The collection of any amount, including any interest, fee, charge, or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law;....

A payment convenience fee is a fee incidental to the principal obligation.  Consequently, a collection agency may not demand, collect, or attempt to collect a payment convenience fee for any particular payment method unless the underlying agreement creating the debt expressly provides for such fees, or if they are expressly permitted by law.  A creditor's contract or agreement with the consumer for a payment convenience fee must be specific and clear enough to notify the consumer of the fee.[1]

There does not appear to be any Colorado law that expressly permits the addition of payment convenience fees.  In fact, other Colorado laws prohibit the payment of such fees.  For

---

[1]  Note that Rule 2.03 of the Rules of the Administrator prohibits a licensee from suggesting that its clients add collection costs to existing debts, and that if a licensee recovers collection costs, it may only retain those costs as its fee unless it has another written arrangement with its clients.  The Rules of the Administrator, Colorado Collection Agency Board, are available at http://www.ago.state.co.us/CADC/PDF/cabrules.pdf.

Page 2

example, merchants may not impose surcharges for accepting payment by credit card pursuant to section 5-2-212(1), C.R.S.  In addition, payment convenience fees are not included in the list of permitted additional charges for consumer credit transactions in section 5-2-202, C.R.S.[2]

There may be policy arguments that payment convenience fees should be allowed if they are voluntary, do not exceed the collection agency's actual costs, benefit the consumer, and if the collection agency allows other payment methods that do not involve a fee.  Payment convenience fees can also be subject to abuse, such as if a collection agency demands immediate payment by a single payment method that includes a fee.  However, section 12-14-108(1)(a), C.R.S. does not permit such fees based on the voluntariness of the fee or the availability of other payment options.  Rather, the payment method fee must be expressly included in the agreement created the debt or expressly permitted by law.

Collection agencies are reminded that if the underlying agreement creating the debt expressly authorizes a payment method fee and the consumer's authorization to pay the debt is obtained by telephone, the agency must also comply with Administrator's Rule 2.14, Payment Authorization by Telephone.  That rule requires licensed collection agencies to obtain either advance written authorization for the payment, record or tape the verbal authorization if permitted by law, or transfer the call to a manager or second collector to verify the verbal payment authorization.  In addition, it is advisable to remind the consumer at that time that the underlying agreement authorized a payment method fee and the amount that will be charged.

The Administrator's authority to issue advisory opinions derives from sections 12-14-103(1), 12-14-113(5), 12-14-117(1), and 24-1-113(4)(a), C.R.S.


_/s/ Laura E. Udis_
LAURA E. UDIS
Administrator
Collection Agency Board
(303) 866-5706
(303) 866-5474 (FAX)

---

[2] For consumer credit and lending transactions, see "Fees for Electronic Debits and Payments, Dec. 2, 2002, Advisory Opinion of the Administrator of the Uniform Consumer Credit Code, available at http://www.ago.state.co.us/UCCC/AdminOpin.cfm



# *Office of the Attorney General*

| | | |
|---|---|---|
| **Governor**<br>Dave Freudenthal | **Administration**<br>123 State Capitol<br>Cheyenne, Wyoming  82002 | **Chief Deputy Attorney General**<br>Elizabeth C. Gagen |
| **Attorney General**<br>Bruce A. Salzburg | 307-777-7841 Telephone<br>307-777-6869 Fax | **Deputy Attorney General**<br>Michael L. Hubbard |

March 15, 2010

▬▬▬▬▬▬▬▬▬▬▬▬▬

Rocklon L. Edmonds, Chairman
Wyoming Collection Agency Board
Herschler Building, 3rd Floor East Wing
122 West 25th Street
Cheyenne, WY 82002

Re: Convenience Fees

Dear Mr. Edmonds:

You have requested an opinion regarding whether collection agencies operating in Wyoming are authorized to charge a "convenience fee" to Wyoming debtors.  It is my understanding that a "convenience fee" is a fee charged to debtors to make payments via a credit card.

Before beginning our analysis, it is necessary to comment on a formal opinion that this Office issued in 1999. *See* Attorney General Formal Opinion No. 99-010 (attached). In that opinion, we opined that a collection agency collecting a debt arising out of a consumer credit transaction is not authorized to collect any fees or charges unless the fees or charges are authorized by the Wyoming Uniform Consumer Credit Code ("Code"), WYO. STAT. ANN. §§ 40-14-101 through 702. Attorney General Formal Opinion No. 99-010, pp. 59-62.  The Code governs debts that arise from consumer credit transactions, specifically, consumer credit sales (WYO. STAT. ANN. § 40-14-204), consumer leases (WYO. STAT. ANN. § 40-14-206) and consumer loans (WYO. STAT. ANN. § 40-14-304).

Mr. Rocklon L. Edmonds
March 15, 2010
Page 2 of 4

In the Code, the Legislature identified six specific charges or fees a creditor may assess as part of a consumer credit transaction: application fees, service or finance charges, specified additional charges, delinquency charges, deferral charges and limited collection charges. Attorney General Formal Opinion No. 99-010, pp. 60-61. Pursuant to our analysis in the formal opinion, convenience fees do not appear to fit within one of the enumerated categories of authorized charges. Convenience fees are not application fees, finance charges, specified additional charges, delinquency charges, deferral charges or limited collection charges. Accordingly, it does not appear that a collection agency operating in Wyoming is authorized to charge a convenience fee to a Wyoming debtor if the debt arose from a consumer credit transaction.

With that being said, the balance of our opinion will address debts arising from transactions not subject to the Code and whether convenience fees are authorized in those situations. Collection agencies licensed in Wyoming are governed by WYO. STAT. ANN. §§ 33-11-101 through 116 (hereinafter referred to as "the Act"). The Act does not set forth specific fees that a collection agency is authorized to charge a debtor. Rather, the Legislature granted the Collection Agency Board the authority to "make reasonable rules and regulations for the administration of this act, and for prescribing acceptable professional standards of conduct of licensees." WYO. STAT. ANN. § 33-11-106.

Pursuant to its statutory authority, the Board promulgated rules which provide, in part, that:

> [n]o licensee shall collect or sue, either as an assignee or as agent for any creditor, for more than the actual amount due or claimed to be due on any claim or claims, plus legal interest and court costs; provided, when suit is brought upon a note or notes providing for an attorney fee, such attorney fee may be added if the licensee is represented by a duly licensed attorney, in which case the attorney fee shall be paid to such attorney and no part thereof shall be retained by the licensee. (Emphasis added).

Chapter 3, Section 3, Collection Agency Board Rules, *Operation - Litigation and Fees.* In addition, the Board, in its rules, adopted the Fair Debt Collection

Mr. Rocklon L. Edmonds
March 15, 2010
Page 3 of 4

Practices Act ("FDCPA") as issued and amended as of October 13, 2006. Chapter 4, Section 6, Collection Agency Board Rules, *General Conduct – Fair Debt Collection Practices Act.*

The FDCPA provides, in part, that:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)   The collection of any amount (including any interest, fee, charge, or expense *incidental* to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. (Italics and underlining added).

15 U.S.C.A. § 1692f.   Consequently, a collection agency may not demand, or attempt to collect any interest, fee, charge or expense incidental to the principal obligation unless the underlying agreement creating the debt expressly provides for such amount, or if it is otherwise expressly permitted by law. "Incidental" is not defined in the FDCPA, however, Webster's New College Dictionary defines "incidental" as "happening as a result of or in connection with something more important; . . . secondary or minor, but usually associated *[incidental* expenses*]*. . . miscellaneous or minor items or expenses[.] Webster's New College Dictionary 721 (2005) (italics in original).

A convenience fee is incidental to the principal obligation because a convenience fee is incurred only when a debtor is making a payment on his principal obligation. A convenience fee is associated with or is incurred in connection with the principal obligation. As a result, for a collection agency operating in Wyoming to be authorized to charge a convenience fee to Wyoming debtors, the fee must be permitted by law or expressly authorized by the agreement creating the debt.

Mr. Rocklon L. Edmonds
March 15, 2010
Page 4 of 4

No Wyoming law appears to expressly permit Wyoming collection agencies to demand or attempt to collect convenience fees. The Board's rules provide that a collection agency may only collect the principal debt, legal interest and court costs. Furthermore, convenience fees are not authorized in the Act.

Consequently, since a convenience fee is not authorized by Wyoming law, a convenience fee may only be charged to a debtor if the debt arose from a non-consumer credit transaction and if the underlying agreement creating the debt expressly provides for such fees.

If we can be of further assistance, please contact us.

Sincerely,

Bruce A. Salzburg
Attorney General

Michael L. Hubbard
Deputy Attorney General

Ryan Schelhaas
Senior Assistant Attorney General

Enclosure

March 23, 2000

**FORMAL OPINION NO. 99-010**

To:            The Honorable Rocklon L. Edmonds
               Chairman, Wyoming Collection Agency Board

From:          Gay Woodhouse
               Attorney General

               Rowena L. Heckert
               Deputy Attorney General

               Drake D. Hill
               Senior Assistant Attorney General

               P. Olen Snider, Jr.
               Assistant Attorney General

### Issues

By letter dated August 27, 1998, you requested an opinion regarding the application of WYO. STAT. § 40-14-101 through 40-14-702, the Wyoming Uniform Consumer Credit Code (the "Code"), to certain practices of collection agencies governed by WYO. STAT. § 33-11-101 through 33-11-116, the Wyoming Collection Agency Act (the "Act"). The Collection Agency Board (the "Board") has promulgated regulations to aid in the administration of the Act (the "Regulations"). Your letter poses three specific questions:

QUESTION NO. 1.   In collecting on a debt arising out of a consumer credit transaction, may a collection agency collect from the consumer any portion of the commission or other fee charged by the collection agency to the creditor for its services in collection of that debt?

ANSWER:           No. Even if the debt agreement provides that the creditor may collect its costs of collection (including any commission or fee charged by the collection agency), neither the creditor nor the collection agency may collect any default charges unless they are specifically allowed under the Code.

QUESTION NO. 2.   In collecting on a debt arising out of consumer credit transaction, may a collection agency collect from the consumer any fees that are

59

permitted to be charged to the consumer under the debt agreement, even if the creditor has not assessed the fees?

ANSWER:        No. Generally, unless the collection agency agreement specifically provides otherwise, the creditor must determine the amount of the debt to be collected, not the agent. The creditor, however, may assess any charge that is allowed under the contract and also allowed under the Code and other applicable law.

QUESTION NO. 3. Is Section 11(a) of Chapter 4 of the Regulations in conflict with the Code?

ANSWER:        No. Section 11(a) of Chapter 4 of the Regulations is drawn nearly verbatim from the federal Fair Debt Collection Practices Act and should be interpreted consistently with its federal counterpart.

## Discussion

### QUESTION NO. 1

You first inquire whether a collection agency may collect from a consumer its commission or other fee charged by the collection agency to the creditor. Because the Code restrictions on default charges are generally the same for all consumer credit transactions, this opinion addresses default charges in connection with all three types of consumer credit transactions.

Your inquiry raises issues of statutory interpretation. A Wyoming statute must be construed to give effect to the Legislature's intent in enacting the statute. *Parker Land & Cattle Co. v. Wyo. Game & Fish Comm'n,* 845 P.2d 1040, 1042, 1044 (Wyo. 1993). One looks first to the plain language of the statute. *Chevron, U.S.A., Inc. v. State,* 918 P.2d 980, 984 (Wyo. 1996). Should the statute's plain language be ambiguous, general rules of statutory construction must be used to ascertain legislative intent. *Parker,* 845 P.2d at 1044. Courts find a statute to be ambiguous if the statutory language permits more than one plausible construction. *Pinther v. State Dept. of Admin. & Inf.,* 866 P.2d 1300, 1303 (Wyo. 1994); *Cf. Enron Oil & Gas v. Dept. of Revenue,* 820 P.2d 977, 982 (Wyo. 1991) (differing interpretations must be credible).

The Code applies only to "consumer credit transactions," which term is not defined specifically. Given the Code's structure and the language used in WYO. STAT. § 40-14-120, a consumer credit transaction is one involving a consumer credit sale, a consumer lease or a consumer loan.

In the Code, the Legislature identified six specific charges a creditor may assess: application fees (WYO. STAT. § 40-14-309(b)), service or finance charges (WYO. STAT. § 40-14-212, 310, 348, 360 & 363), specified additional charges (WYO. STAT. § 40-14-213, 311), delinquency charges (WYO. STAT. § 40-14-214, 312), deferral charges (WYO.

STAT. § 40-14-215, 313), and limited collection charges (WYO. STAT. 40-14-236, 244, 247, 248-249, 334-336, 338, 340, 353, 504 & 505). Under the Code a creditor is allowed to impose a fee only if it is within one of these six categories. Conversely, if a fee is not within a permitted category, then the creditor may not require the consumer to pay it. This conclusion follows from the rule of statutory interpretation that, generally, where a statute enumerates the subjects or things on which it is to operate, it is construed as excluding from its effect all those not expressly mentioned. *City of Cheyenne v. Huitt*, 844 P.2d 1102, 1104 (Wyo. 1993). By enumerating these specific allowable charges, the Legislature excluded all others.

The answer to your inquiry hinges on whether a collection agency's commission is within one of the six categories of allowable charges under the Code. Clearly the commission is not an application fee or a service or finance charge. Neither is it among the specified additional charges allowed under the Code. It then must be a default charge to be allowable. The Code specifies that "the agreement with respect to a consumer credit transaction may not provide for charges as a result of default by the consumer other than those authorized by" the Code. (WYO. STAT. § 40-14-248, 336).

The Code authorizes a creditor to assess a particular default charge only if it is within any of three categories: delinquency charges, deferral charges and limited collection charges. Delinquency charges are those that a creditor assesses for payments that are more than ten days past-due. (Wyo Stat. § 40-14-214(a), 312(a)). Deferral charges are those that a creditor assesses to allow the consumer to pay a scheduled installment at a later date. (WYO. STAT. § 40-14-215(a), 313(a)).

The Code allows limited collection charges of varying kinds, which may be imposed on a consumer depending on the type of consumer credit transaction involved. In a consumer credit sale, a consumer lease or a general consumer loan, a creditor may collect sums advanced to protect the collateral securing the transaction (WYO. STAT. § 40-14-219, 317(a)), sums paid to outside legal counsel for reasonable, post-default attorney's fees (WYO. STAT. § 40-14-247, 335), and sums paid as reasonable expenses incurred in realizing on a security interest (WYO. STAT. § 40-14-248, 336). In a supervised loan (a special kind of consumer loan), the same charges may be collected, except that attorney's fees are not allowed on loans over $1,000 (WYO. STAT. § 40-14-353). In a pawn transaction and a post-dated check or similar arrangement (both being special kinds of consumer loans), the creditor may collect no charges, default or otherwise, other than its finance charge (WYO. STAT. § 40-14-360(a), 363(a)).

The collection agency's commission is neither a delinquency charge nor a deferral charge. It is also not attorney's fees or expenses incurred in realizing on a security interest or in protecting collateral. Because the collection agency's commission is not an allowed collection charge, it is also not an allowed default charge. As such, the collection agency's commission may not be claimed or collected from the consumer.

This reasoning is not limited to a collection agency's commissions. It also applies to any other default charge that is not specifically allowed under the Code. Perhaps the most common default charge arises in collection of so-called "bad" checks. If the check

is tendered as payment under a consumer credit transaction, the creditor may not collect the statutory damages provided in WYO. STAT. § 1-1-115. This is because they are default charges, i.e., imposed on the consumer due to its failure to pay its debt when due, and are not specifically allowed under the Code. When statutes that relate to the same subject are in conflict, they must be harmonized, when possible. In such circumstances, the statutes should be interpreted and construed so that the statutes are given as full effect as possible, giving effect to every word, clause and sentence, see *Chevron*, 918 P.2d at 984; *State Dept. of Revenue & Tax'n v. Pacificorp*, 872 P.2d 1163, 1166 (Wyo. 1994), and as part of a general and uniform system of jurisprudence, see *Pinther*, 866 P.2d at 1303; *Parker*, 845 P.2d at 1044. The Wyoming Supreme Court has favored harmonizing conflicting statutes by giving effect to the more specific statute. *Stauffer Chem. Co. v. Curry*, 778 P.2d 1083, 1093 (Wyo. 1989); *Gerstell v. State* ex rel. *Dept. of Revenue & Tax'n*, 769 P.2d 389, 394 (Wyo. 1989). Given the Code's listing of allowable default charges, it is much more specific and will control over WYO. STAT. § 1-1-115.

### QUESTION NO. 2

You secondly inquire whether a collection agency may, on behalf of the creditor, add a charge that is expressly permitted under the debt agreement when the creditor has failed to do so. The Code does not govern a creditor's relationship with its chosen collection agent; that relationship is instead governed by general principles of agency law. WYO. STAT. § 40-14-103. An "agency" relationship is created when one person manifests his consent to another that the other is to act on his behalf and subject to his control, and the other person consents so to act. Restatement (Second) of Agency § 1 (1958). When the right of control with respect to the other's physical conduct is missing, the person is an independent contractor. *Id.* § 2. It has been noted that "most of the persons known as agents, that is, collection agencies [among others,] are independent contractors ... since they are employed to perform services [but] are not subject to the control or right to control in the performance of the services." *See id.* § 14N, comment a. However, they may fall within the category of agents. Every collection agency operates under some form of agreement or understanding with the creditor.

As agents, any authority that a collection agency has to augment a consumer's debt must be found in the agreement between the creditor and the collection agency. *See id.* § 7, comments b & c. The agreement itself may not have to be in writing to establish the agency relationship or the agent's authority, but if not, it must be found in the conduct of the parties. It is difficult to imagine, however, that a creditor in a consumer credit transaction would delegate to the collection agent any authority over such an important prerogative of the creditor unless it did so expressly and in writing, especially given the detail and complexity in calculating installment payments and interest charges.

Thus, absent authority to augment the creditor's determination of the amount due on a consumer debt, the collection agency may not add charges that the creditor has not imposed. This is not to say that a collection agency is prohibited from pointing out to the creditor that it may be entitled to impose a particular charge. But the collection agency

may not, on its own and without the creditor's consent or ratification, impose charges that the creditor has chosen not to impose, whether consciously or due to oversight.

There is a context where a collection agency might have implied authority to calculate the amount due. When a consumer purchases goods or services by check issued as payment for a cash sale of goods and the check is returned unpaid, the seller may be entitled to certain civil damages specified by statute. (WYO. STAT. § 1-1-115). Calculating the correct amount of damages due under the statute should be a ministerial, mathematical process. In such cases, the collection agency might have the implied authority to collect more than the face amount of the check.

Agencies, however, should tread carefully in exercising such authority. In *Johnson v. Statewide Collections, Inc.*, 778 P.2d 93 (Wyo. 1989), a collection agency was collecting on a "bad" check. The Code was not involved in this case as the check was issued as payment for a cash sale of goods. Consequently the only question was whether the charge was "permitted by law." Under the "bad" check statute, the holder of the check was specifically authorized to impose the surcharge. In computing the amount due under WYO. STAT. § 1-1-115, the collection agency incorrectly doubled the statutory surcharge. The collection agency admitted the error, but claimed that it was an inadvertent and bona fide error. The Court determined that the collection agency had failed to prove this defense and therefore ruled that, by adding amounts not authorized by agreement or statute, the collection agency had violated the federal Fair Debt Collection Practices Act ("FDCPA"). Clearly where a collection agency acts on implied authority to calculate the amount of the creditor's claim, it must do so carefully and correctly.

Federal consumer protection law further supports the conclusion that a collection agency generally may not add to the debt. It does so by requiring the agent to verify the amount of a consumer debt with the creditor, not determining it on its own. Under the FDCPA, a debtor is entitled to dispute the amount of debt owed. If the amount is disputed, the collection agency must "obtain verification of the debt" and, until the debt is so verified, must cease all collection efforts. 15 U.S.C. § 1692g(b).

The courts do not appear to have addressed from whom the verification must be obtained, only that the debt collector must obtain it from someone. For example, in *Statewide, supra*, the Wyoming Supreme Court held that "[t]he burden is on the debt collector to demand adequate verification so that it can comply with [15 U.S.C. § 1692g]. The failure to do so by [the debt collector], in this instance, subjects it to the sanctions provided under 15 U.S.C. § 1692k."(*Statewide, supra* at 100-01). The Court ruled that the collection agency was liable for failing to obtain verification from the creditor, even though it had requested it. The Court specifically noted that obtaining a copy of the "bad" check is not sufficient verification. It follows that a collection agency may not add fees that the creditor cannot verify as part of the amount due under the debt.

QUESTION NO. 3.

Your final inquiry is whether Section 11(a) of Chapter 4 of the Board's Regulations conflicts with the Code. Whether a conflict exists will depend on how one interprets Section 11(a). If Section 11(a) would allow a collection agency to collect a fee only if it is allowed under the Code, then there is no conflict. As noted above, courts favor harmonizing conflicting provisions by giving effect to the more specific provision. Given the Code's specific listing of allowable charges, it is much more specific and will control over Section 11(a), but this applies only if the provisions are in actual conflict.

Section 11(a) is taken nearly verbatim from section 1692f(1) of the FDCPA. It provides that a collection agency may not use unfair or unconscionable means to collect or attempt to collect any debt. Rules and Regulations of the Collection Agency Board ch. 4, § 11 (effective June 26, 1997). Among the proscribed activities is the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Generally, when a state administrative agency adopts a rule that is identical to a federal statute, judicial interpretations of the federal statute provide persuasive authority for interpreting the analogous state provision. *Cf.* 2B N.J. Singer, *Statutes & Statutory Construction* § 52.02 (5th ed. 1992 & Cum. Supp. 1999). One federal district court perfectly summarized the operation of section 1691(f)(1):

> [T]he agreement creating the debt need not expressly authorize [a] fee if state law affirmatively permits [the] fee even if not specified in the agreement. However, the agreement must expressly authorize the fee if state law permits such a fee only if specified in the agreement. And no such fee may be collected even if provided in the agreement if state law prohibits [the] fee in addition to the principal obligation *because a contract can never impose charges that are prohibited by state law.* *West v. Costen,* 558 F.Supp. 564, 582 (W.D.Va. 1983) (italics added).

The Board's interpretation and implementation of Section 11(a) should be consistent with the court's cogent summary cited above. Under this interpretation, there can be no conflict with the Code.

## CONCLUSION

A collection agency, in collecting on a debt arising out of a consumer credit transaction, may not collect from a consumer any portion of its commission or other fees for collection of the debt.

Generally, unless the collection agency agreement specifically provides otherwise, the creditor must determine the amount of the debt to be collected, not the collection agent. The creditor, however, may assess any charge that is allowed under the contract and also allowed under the Code and other applicable law.

Section 11(a) of Chapter 4 of the Regulations is drawn nearly verbatim from the federal Fair Debt Collection Practices Act and should be interpreted consistently with its federal counterpart. Thus, there is no conflict between the regulation and the Code.

FILED

2014 Dec-05  PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CARMEN WOODS, CAROLYN          )
COLEMAN, FRANCE CHAMBERS,      )
JUSTIN COOPER, JEFFREY DIBBLE, )
DEBBIE GLOVER, JALITA FLOOD,   )
CORA JACKSON, SHIRLEY RAY      )
CYNTHIA PAUL, ASHLEY SHERRIN,  )
STEPHEN POLLITT, JAMEISHIA     )
TRIPP, BARBARA TURNER,         )
BERNADETTE LOFTON, PORTER      )
CONLEY, JOHN SELF, APRIL       )
LINDBLOM, ESMERALDA            )
GONZALEZ, and TIMMY            )
FONTENOT,                      )
                               )
        Plaintiffs,            )
                               )
vs.                            )          CASE No. _____
                               )
SANTANDER CONSUMER USA, INC.,  )
OCWEN LOAN SERVICING, LLC,     )
OCWEN FIN. CORP., WESTERN      )
UNION BUSINESS SOLUTIONS       )
(USA) LLC,                     )
                               )
        Defendants.            )

**FIRST AMENDED COMPLAINT**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring claims against all of the defendants for themselves and a class or classes of similarly situated individuals under the Fair Debt Collection Practices Act ("FDCPA") and analogous state laws of California and Texas. Plaintiffs also bring individual claims against Santander Consumer USA for violations of the Telephone Consumer Protection Act ("TCPA").

**THE PARTIES**

1. Plaintiff Carmen Woods is an adult resident citizen of Jefferson County, Alabama. On May 1, 2007, she purchased a 2007 Nissan Altima from Jim Burke Automotive. This vehicle was financed through a loan serviced that at some point was by Santander.

2.  Plaintiff France Chambers is an adult resident citizen of Shelby County, Alabama. On October 21, 2008, she purchased a 2007 Nissan Maxima from Jim Burke automotive. This vehicle was financed through a loan that at some point was serviced by Santander.

3. Plaintiff Justin Cooper is an adult resident citizen of Russell County, Alabama. On June 14, 2007, he purchased a vehicle from Payless Car Sales. This vehicle was financed through a loan that at some point was serviced by Santander.

4. Plaintiff Jeffrey Dibble is an adult resident citizen of Shelby County, Alabama. On May 20, 2007, Mr. Dibble purchased a 2005 Mitsubishi Eclipse from Premier Chevrolet. This vehicle was financed through a loan that at some point was serviced by Santander.

5. Plaintiff Debbie Glover is an adult resident citizen of Montgomery County, Alabama. In February of 2008, she purchased a 2006 Buick Lacrosse from Tameron Honda. This vehicle was financed through a loan that at some point was serviced by Santander.

6. Plaintiff Jalita Flood is an adult resident citizen of Mobile County, Alabama. On October 12, 2007, she purchased a 2005 Nissan Altima from McConnell Automotive. This vehicle was financed through a loan that at some point was serviced by Santander.

7. Plaintiff Cora Jackson is an adult resident citizen of Shelby County, Alabama. In 2006, she purchased a 2005 Nissan Murano from Magee Dealership. This vehicle was financed through a loan that at some point was serviced by Santander.

8.  Plaintiff Cynthia Paul is an adult resident citizen of Montgomery County, Alabama. On March 22, 2008, she purchased a 2007 GMC Envoy. This vehicle was financed through a loan that at some point was serviced by Santander.

9. Plaintiff Stephen Pollitt is an adult resident citizen of Montgomery County, Alabama. In 2007, he purchased a vehicle from McGee Pontiac. This vehicle was financed through a loan that at some point was serviced by Santander.

10. Plaintiff Shirley Ray is an adult resident citizen of Barbour County, Alabama. On September 1, 2007, she purchased a 2007 Chevrolet Cobalt from C&H Auto Sales. This vehicle was financed through a loan that at some point was serviced by Santander.

11. Plaintiff Ashley Sherrin is an adult resident citizen of Baldwin County, Alabama. On July 19, 2006, she purchased a 2006 Kia Rio from McCray Kia. This vehicle was financed through a loan that at some point was serviced by Santander.

12. Plaintiff Jameishia Tripp is an adult resident citizen of Walker County, Alabama. In September of 2007, she purchased a 2005 Scion TC from Honda of Jasper. This vehicle was financed through a loan that at some point was serviced by Santander.

13. Plaintiff Brenda Watson is an adult resident citizen of Mobile County, Alabama. On March 19, 2008, she purchased a 2006 Hummer H3 from Capital Auto Company. This vehicle was financed through a loan that at some point was serviced by Santander.

14. Plaintiff Bernadette Lofton is an adult resident citizen of Mobile County, Alabama. On August 31, 2006, she purchased a 2003 Dodge Grand Caravan from Tameron Eastern Shore. This vehicle was financed through a loan that at some point was serviced by Santander.

15. Plaintiff Porter Conley is an adult resident citizen of Barbour County, Alabama. In July of 2007, he purchased a 2007 Dodge Ram from Hughes Johnson Chrysler Dodge Jeep. This vehicle was financed through a loan that at some point was serviced by Santander.

16.  Plaintiff Timmy Fontenot is an adult resident citizen of Harris County, Texas. In 2006 he purchased a 2004 Saab 93 from Carmax in Houston, Texas. This vehicle was financed through a loan that at some point was serviced by Santander. In addition, Mr. Fontenot has a home mortgage serviced by Ocwen.

17. Plaintiff John Self is an adult resident citizen of Denton County, Texas. He purchased a home in 2006 that was financed through a loan that at some point was serviced by Ocwen.

18.  Plaintiff Esmeralda Gonzalez is an adult resident citizen of Los Angeles County, California. In 2007, she took out a mortgage that at some point was serviced by Ocwen.

19. Plaintiff April Lindblom is an adult resident citizen of Madera County, California. She purchased a 2006 Jeep Liberty from Michael Auto. This vehicle was financed through a loan that at some point was serviced by Santander.

21.  Defendant Ocwen Loan Servicing, LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Florida.

22. Defendant Ocwen Financial Corporation is a Delaware corporation with its principal place of business in Florida.

23. Defendant Western Union Business Solutions (USA) LLC is a Delaware corporation with its principal place of business in Englewood, Colorado.

24. Defendant Santander Consumer USA, Inc. is an Illinois corporation with its principal place of business in Dallas, Texas.

**JURISDICTION AND VENUE**

25. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because some of each Plaintiffs' claims arise under federal law, specifically the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.

26. Jurisdiction is proper in this Court under 28 U.S.C. §1332 (d) because those claims that do not arise under federal law are part of a class action in which the amount in controversy exceeds the sum of $5,000,000 and the class contains citizens of different states than the Defendants.

27. Venue is proper in this Court under 28 U.S.C. § 1391 (b)(2) because a substantial part of the events giving rise to Plaintiffs' claims took place in the Northern District of Alabama.

28.  Joinder of all claims against all defendants is proper under Rule 20, Fed. R. Civ. Proc., because all of the illegal charges and fees were made through defendant Western Union's Speedpay service.  Hence, all claims against all defendants arise out of the same "series of transactions or occurrences," and there are questions of "law and fact common to all plaintiffs" that will arise in this action.

## FACTUAL BACKGROUND

29. All of the Plaintiffs in this action are consumers who purchased vehicles, and in some cases homes. Each of these acquisitions were financed through secured consumer loans.

30. As they attempted to pay back these loans, the Plaintiffs eventually fell behind and went into default. The servicing rights to the auto loans were acquired by Defendant Santander Consumer USA ("Santander") after the Plaintiffs fell into default. Plaintiffs' mortgage loans were acquired by Defendant Ocwen Loan Servicing, LLC or Defendant Ocwen Financial Corporation (collectively, "Ocwen") after the Plaintiffs fell into default.

31. The Plaintiffs often attempted to pay these debts online or over the telephone. When they did so, Ocwen and Santander accepted their payments through the Speedpay service they used in partnership with Defendant Western Union.

32. Acting in concert with Western Union, Ocwen and Santander charged Plaintiff a fee for paying online and over the telephone. This fee was not authorized in any of the contracts between Plaintiffs and their original lenders. A portion of the fee was kept by Western Union, and a portion was remitted to Santander or Ocwen, as applicable.

### COUNT I: VIOLATION OF THE FDCPA BY WESTERN UNION

33. This nationwide class count is brought by all Plaintiffs against Defendant Western Union.

34. This action is maintainable as a nationwide class action pursuant to 15 U.S.C. 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. All of the named Plaintiffs seek to represent the following class:

> All individuals in the United States who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with a loan being serviced by a debt collector as defined by the FDCPA.

35. Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. Western Union partners with many different companies to offer the Speedpay service, including the other two defendants. Ocwen is one of the three largest mortgage servicing companies in the country, and Santander's website states that it has over 2,000,000 accounts. Each of these consumers who pays over the phone uses Western Union's Speedpay system, as do thousands if not millions of consumers paying other debt collectors.

36. Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate the FDCPA.

37. Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

38. Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

39. Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Western Union to partner with other businesses to charge illegal fees. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

40. The FDCPA makes it an illegal, "unfair practice" for a debt collector to undertake "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1).

41. Because the fees charged by Western Union are not authorized by the contract or any provision of law, their collection clearly violates 15 U.S.C. §1692f. See Quinteros v. MBI Assocs.,

999 F. Supp. 2d 434 (E.D.N.Y. 2014). The <u>Quinteros</u> court found that a five dollar processing fee violated the FDCPA:

> What matters is § 1692f(1)'s plain instruction that the collection of any amount incidental to the principal obligation, unless otherwise authorized by agreement between the parties or permitted by law, violates the FDCPA. Courts have interpreted the FDCPA broadly, and it would be anomalous to conclude "any amount" does not encompass the processing fees at issue here. <u>See, e.g., Pipiles v. Credit Bureau of Lockport, Inc.</u>, 886 F.2d 22, 27 (2d Cir. 1989) ("It is clear that Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them.")

<u>Id</u>. at 438.

42. The states of North Carolina, Wyoming, and Colorado have issued administrative opinions that interpret virtually identical language in state law to make the kind of fees charged by the Defendants illegal. (Ex. A – Opinion of the N.C. Dep't of Ins.; Ex. B. – Advisory Op. of Admin., Colo. Collection Agency Bd.). Indeed, the Attorney General of Wyoming opined that the fees violate that state's law precisely because they violate the FDCPA. (Ex. C., Letter from Atty. Gen. Bruce Salzburg to Rocklon Edmonds).

## COUNT II: VIOLATION OF THE FDCPA BY SANTANDER

43. Plaintiffs Carmen Woods, Carolyn Coleman, France Chambers, Justin Cooper, Jeffrey Dibble, Debbie Glover, Jalita Flood, Cora Jackson, Shirley Ray, Cynthia Paul, Ashley Sherrin, Stephen Pollitt, Jameishia Tripp, Barbara Turner, Bernadette Lofton, Porter Conley, April Lindblom and Timmy Fontenot bring this nationwide class count against Defendant Santander.

44. This action is maintainable as a nationwide class action pursuant to 15 U.S.C. 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. The Plaintiffs named in Paragraph 43 seek to represent the following class:

> All individuals in the United States who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection

with any loan being service by Santander, and as to which Santander obtained those servicing rights at a point in time when the loan was in default.

45. Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. Santander's own website states that it services over 2,000,000 accounts. A significant percentage of those accounts, or the servicing rights to them, were acquired from other lenders while the loan was in default. Each time a consumer pays online or over the telephone, the Western Union Speedpay service is used. Thousands of customers pay in this fashion each month.

46. Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate the FDCPA.

47. Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

48. Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

49. Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Santander in charging illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

50. The FDCPA makes it an illegal, "unfair practice" for a debt collector to undertake "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1).

51. Because the fees charged by Santander are not authorized by the contract or any provision of law, their collection clearly violates 15 U.S.C. §1692f. See Quinteros v. MBI Assocs., 999 F. Supp. 2d 434 (E.D.N.Y. 2014).

## COUNT III: VIOLATION OF THE FDCPA BY OCWEN

52. Plaintiffs Timmy Fontenot, Esmeralda Gonzalez, and John Self bring this nationwide class count against Ocwen.

53. This action is maintainable as a nationwide class action pursuant to 15 U.S.C. § 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. The Plaintiffs named in Paragraph 52 seek to represent the following class:

> All individuals in the United States who, during the applicable limitations period paid a convenience fee through Western Union's Speedpay service in connection with any loan being serviced by Ocwen, and as to which Ocwen obtained those servicing rights at a point in time when the loan was in default.

54. Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. Ocwen is one of the three largest non-bank mortgage servicing companies in the nation. At a minimum, it services hundreds of thousands of loans, many of which are paid online through Western Union's Speedpay service.

55. Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate the FDCPA.

56. Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

57. Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

58. Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Ocwen in charging illegal fees whenever customers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

59. The FDCPA makes it an illegal, "unfair practice" for a debt collector to undertake "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1).

60. Because the fees charged by Ocwen are not authorized by the contract or any provision of law, their collection clearly violates 15 U.S.C. §1692f. See Quinteros v. MBI Assocs., 999 F. Supp. 2d 434 (E.D.N.Y. 2014).

**COUNT IV: VIOLATION OF CALIFORNIA LAW BY WESTERN UNION**

61. Plaintiffs April Lindblom and Esmeralda Gonzalez bring this statewide class action count.

62. This action is maintainable as a statewide class action pursuant to Cal. Civ. Code § 1788.17, 15 U.S.C. § 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. The Plaintiffs named in Paragraph 61 seek to represent the following class:

> All individuals in the state of California who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with any consumer loan governed by the Rosenthal Fair Debt Collection Practices Act.

63.  Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. Western Union partners with many different companies to offer the Speedpay service, including the other two defendants. Ocwen is one of the three largest mortgage servicing companies in the country, and Santander's website states that it has over 2,000,000 accounts. Many of the individuals paying through Speedpay live in California, which has the largest population of any state.

64. Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate the Rosenthal FDCPA.

65. Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

66 Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

67. Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Western Union in partnering with debt collectors to charge illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

68. Because Western Union charged fees that violate 15 U.S.C. 1692f(1), they also violated Cal. Civ. Code § 1788.17, which prohibits any entity covered by California's analogous state statute (the Rosenthal FDCPA) from violating the FDCPA.

## COUNT V: VIOLATION OF CALIFORNIA LAW BY SANTANDER

69. This action is maintainable as a statewide class action pursuant to Cal. Civ. Code § 1788.17, 15 U.S.C. § 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. Plaintiff April Lindblom seeks to represent the following class:

> All individuals in the state of California who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with an automobile loan serviced by Santander.

70. Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. Santander has over 2,000,000 customer accounts in total, and California has more of these accounts than any other state.

71. Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate the Rosenthal FDCPA.

72. Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

73 Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

74. Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Santander to collect illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

75. Because Santander charged fees that violate 15 U.S.C. 1692f(1), they also violated Cal. Civ. Code § 1788.17, which prohibits any entity covered by California's analogous state statute (the Rosenthal FDCPA) from violating the FDCPA.

**COUNT VI: VIOLATION OF CALIFORNIA LAW BY OCWEN**

76. This action is maintainable as a statewide class action pursuant to Cal. Civ. Code § 1788.17, 15 U.S.C. § 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. Plaintiff Esmeralda Gonzalez seeks to represent the following class:

> All individuals in the state of California who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with a mortgage loan serviced by Ocwen.

77. Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable. Ocwen is one of the three largest mortgage servicing companies in the nation and state of California has more mortgages than any other state.

78.  Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate the Rosenthal FDCPA.

79. Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

80. Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

81. Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Ocwen to collect illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

82. Because Ocwen charged fees that violate 15 U.S.C. 1692f(1), they also violated Cal. Civ. Code § 1788.17, which prohibits any entity covered by California's analogous state statute (the Rosenthal FDCPA) from violating the FDCPA.

## COUNT VII: VIOLATION OF TEXAS LAW BY WESTERN UNION

83. This action is maintainable as a statewide class action pursuant to Cal. Civ. Code § 1788.17, 15 U.S.C. § 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs John Self and Timmy Fontenot seek to represent the following class:

> All individuals in the state of Texas who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with any consumer loan governed by Chapter 392 of the Texas Finance Code.

84.  Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable.

85. Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate Chapter 392 of the Texas Finance Code.

86. Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

87. Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

88. Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Western Union in partnering with debt collectors to charge illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class

action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

89. The fees charged by Western Union violate Tex. Fin. Code 392.303(a)(2) which prohibits debt collectors from "collecting or attempting to collect interest or a charge fee or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."

## COUNT VIII: VIOLATION OF TEXAS LAW BY SANTANDER

90. This action is maintainable as a statewide class action pursuant to Cal. Civ. Code § 1788.17, 15 U.S.C. § 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. Plaintiff Timmy Fontenot seeks to represent the following class:

> All individuals in the state of Texas who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with an automobile loan serviced by Santander.

91. Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable.

92. Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate Chapter 392 of the Texas Finance Code.

93. Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

94. Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class

members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

95. Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Santander in charging illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

96. The fees charged by Santander violate Tex. Fin. Code 392.303(a)(2) which prohibits debt collectors from "collecting or attempting to collect interest or a charge fee or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."

## COUNT IX: VIOLATION OF TEXAS LAW BY OCWEN

97. This action is maintainable as a statewide class action pursuant to Cal. Civ. Code § 1788.17, 15 U.S.C. § 1692k(a)(2)(b) and Rule 23 of the Federal Rules of Civil Procedure. Plaintiff John Self seeks to represent the following class:

> All individuals in the state of Texas who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with a mortgage loan serviced by Ocwen.

98. Pursuant to Rule 23(a)(1), the class is so numerous that joinder of all class members is impracticable.

99. Pursuant to Rule 23(a)(2), this case is predominated by one question of law and fact that is common to all members of the class: does charging a fee, not authorized by the contract or any provision of existing law, violate Chapter 392 of the Texas Finance Code.

93. Pursuant to Rule 23(a)(3), the claims of the named plaintiffs are typical of those of the class.

94. Pursuant to Rule 32(a)(4), the named plaintiffs will fairly and adequately represent the interests of the class. The named plaintiffs have no interests adverse to the interests of absent class members. The named plaintiffs have hired experienced class action plaintiff lawyers as class counsel, who will diligently and competently represent the interests of the class.

95. Pursuant to Rule 23(b), questions of law and fact common to all class members predominate over any questions affecting only individual class members. The claims of the named plaintiffs, like those of all the class members, arise out of a common course of conduct by Ocwen in charging illegal fees whenever consumers paid online or over the telephone. Any questions individual to the class members, such as how many times they were charged such fees, can be answered by the Defendants' own records. For this reason, a class action is far superior to other available methods of adjudicating this controversy. Individual lawsuits would be inefficient and duplicative by comparison.

96. The fees charged by Ocwen violate Tex. Fin. Code 392.303(a)(2) which prohibits debt collectors from "collecting or attempting to collect interest or a charge fee or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."

**COUNT IX: VIOLATIONS OF THE TCPA BY SANTANDER**

97. Plaintiffs Carmen Woods, Carolyn Coleman, France Chambers, Justin Cooper, Jeffrey Dibble, Debbie Glover, Jalita Flood, Cora Jackson, Shirley Ray, Stephen Pollitt, Jameishia Tripp, Barbara Turner, Bernadette Lofton, Porter Conley, April Lindblom, and Timmy Fontenot bring this count on behalf of themselves as individuals.

98. All of the plaintiffs named in Paragraph 97 had car loans held and/or serviced by Defendant Santander Consumer USA, Inc. ("Santander"). Santander regularly called plaintiffs' cellular telephones.

99. Santander made these calls with an automatic telephone dialing system called the ASPECT telephony system.

100. On multiple occasions Santander used an auto-dialer or pre-recorded voice to call plaintiff Carmen Woods on her cellular telephone number, 205-305-0424, without her express consent.

101. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff France Chambers on her cellular telephone number, 205-427-9859, without her express consent.

102. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Justin Cooper on his cellular telephone number, 706-289-7839, without his express consent.

103. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Jeffrey Dibble on his cellular telephone number, 205-299-2216, without his express consent.

104. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Debbie Glover on her cellular telephone number, 334-324-4947, without her express consent.

105. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Jalita Flood on her cellular telephone number, 251-643-2259, without her express consent.

106. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Cora Jackson on her cellular telephone number, 334-354-6651, without her express consent.

107. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Cynthia Paul on her cellular telephone number, 334-312-0699, without her express consent.

108. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Stephen Pollitt on his cellular telephone number, 334-399-8734, without his express consent.

109. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Shirley Ray on her cellular telephone number, 334-344-9624, without her express consent.

110. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Ashley Sherrin on her cellular telephone number, 251-752-0437, without her express consent.

111. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Jameishia Tripp on her cellular telephone number, 205-435-0064, without her express consent.

112. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Barbara Turner on her cellular telephone number, 251-714-5225, without her express consent.

113. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Bernadette Lofton on her cellular telephone number, 251-751-6131, without her express consent.

114. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Porter Conley on his cellular telephone number, 334-367-9331, without his express consent.

115. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff April Lindblom on her cellular telephone number, 559-664-2066, without her express consent.

116. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Timmy Fontenot on his cellular telephone number, 281-723-2577, without his express consent.

117. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff John Self on his cellular telephone number, 972-743-0496, without his express consent.

118. The date and time of each call made by Santander using its auto-dialer or pre-recorded voice is recorded in Santander's own internal records. The identification of each call alleged to violate the TCPA to each respective number is easily ascertainable in Santander's own records.

119. None of the plaintiffs ever provided Santander with permission to contact their cellular telephones with automatic dialers or pre-recorded voice messages.

120. Santander's calls thus violated 47 U.S.C. § 227(b)(1)(iii), which prohibits anyone from using an auto-dialer or pre-recorded voice to call a cellular telephone without the called party's consent.

121. Santander's violation of the TCPA entitles the plaintiffs to statutory damages of $500 per violation.

122. Santander knowingly or willfully violated the TCPA.

123. Santander's knowing or willful violations of the TCPA entitle the plaintiffs to treble statutory damages of $1500 per violation.

## PRAYER FOR RELIEF

Plaintiffs pray for the following relief:

(A) following appropriate discovery, an order certifying this cause as a nationwide class action pursuant to Fed. R. Civ. P. 23, with notice as applicable to the absent class members;

(B) following appropriate discovery, an order certifying the above-described statewide subclasses in California and Texas, with notice as applicable to the absent class members;

(C) an order appointing D. Frank Davis and John E. Norris as class counsel for the nationwide class and statewide subclasses;

(D) a declaratory ruling that the Defendants have engaged in the practices alleged herein in violation of federal law, California law, and Texas law

(E)  appropriate injunctive relief requiring Defendants to stop engaging in these illegal practices;

(F) upon a jury verdict, an award of compensatory and statutory damages under the

TCPA, the FDCPA, and California and Texas law;

(G) an award of attorneys' fees and costs as authorized by the FDCPA, California law,

and Texas law;

(H) such further and different relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiffs demand trial by struck jury of all issues.

/s/ John E. Norris_____
John E. Norris
One of the Attorneys for Plaintiffs

**OF COUNSEL:**
D. Frank Davis (DAV009)
John E. Norris (NOR041)
Wesley W. Barnett (BAR141)
Courtney L. Peinhardt (PEI001)
Dargan Ware (WAR089)
Davis & Norris, LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com
courtney@davisnorris.com
dware@davisnorris.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the above and foregoing document by Electronic Filing, or, if the party does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 5th day of December, 2014:

R. Frank Springfield
BURR & FORMAN LLP
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203

/s/ John E. Norris_____
John E. Norris
One of the Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CARMEN WOODS, CAROLYN            )
COLEMAN, FRANCE CHAMBERS,        )
JUSTIN COOPER, JEFFREY DIBBLE,   )
DEBBIE GLOVER, JALITA FLOOD,     )
CORA JACKSON, SHIRLEY RAY        )
ROBERT MEANS, CYNTHIA PAUL,      )
STEPHEN POLLITT, FELICIA         )
SANDERSON, ASHLEY SHERRIN,       )
JAMEISHIA TRIPP, BARBARA         )
TURNER, BRENDA WATSON,           )
BERNADETTE LOFTON, PORTER        )
CONLEY, TURQUOISE WILLIAMS,      )
and KARIN McLELLAN,              )
                                 )
        Plaintiffs,              )
                                 )
vs.                              )        CASE No. _____
                                 )
SANTANDER CONSUMER USA, INC.,    )
                                 )
        Defendant.               )

## COMPLAINT

Plaintiffs bring this lawsuit against Santander Consumer USA for violations of the

Telephone Consumer Protection Act ("TCPA").

## THE PARTIES

1. Plaintiff Carmen Woods is an adult resident citizen of Jefferson County, Alabama. On

May 1, 2007, she purchased a 2007 Nissan Altima from Jim Burke Automotive. This vehicle was

financed through Santander or its predecessor in interest.

2.  Plaintiff France Chambers is an adult resident citizen of Shelby County, Alabama. On

October 21, 2008, she purchased a 2007 Nissan Maxima from Jim Burke automotive. This vehicle

was financed through Santander or its predecessor in interest.

3. Plaintiff Justin Cooper is an adult resident citizen of Russell County, Alabama. On June 14, 2007, he purchased a vehicle from Payless Car Sales. This vehicle was financed through Santander or its predecessor in interest.

4. Plaintiff Jeffrey Dibble is an adult resident citizen of Shelby County, Alabama. On May 20, 2007, Mr. Dibble purchased a 2005 Mitsubishi Eclipse from Premier Chevrolet. This vehicle was financed through Santander or its predecessor in interest.

5. Plaintiff Debbie Glover is an adult resident citizen of Montgomery County, Alabama. In February of 2008, she purchased a 2006 Buick Lacrosse from Tameron Honda. This vehicle was financed through Santander or its predecessor in interest.

6. Plaintiff Jalita Flood is an adult resident citizen of Mobile County, Alabama. On October 12, 2007, she purchased a 2005 Nissan Altima from McConnell Automotive. This vehicle was financed through Santander or its predecessor in interest.

7. Plaintiff Cora Jackson is an adult resident citizen of Shelby County, Alabama. In 2006, she purchased a 2005 Nissan Murano from Magee Dealership. This vehicle was financed through Santander or its predecessor in interest.

8. Plaintiff Robert Means is an adult resident citizen of Madison County, Alabama. On November 10, 2006, he purchased a 2202 Ford F-150 from Bill Heard Chevrolet. This vehicle was financed through Santander or its predecessor in interest.

9. Plaintiff Cynthia Paul is an adult resident citizen of Montgomery County, Alabama. On March 22, 2008, she purchased a 2007 GMC Envoy. This vehicle was financed through Santander or its predecessor in interest.

10. Plaintiff Stephen Pollitt is an adult resident citizen of Montgomery County, Alabama. In 2007, he purchased a vehicle from McGee Pontiac. This vehicle was financed through Santander or its predecessor in interest.

11. Plaintiff Shirley Ray is an adult resident citizen of Barbour County, Alabama. On September 1, 2007, she purchased a 2007 Chevrolet Cobalt from C&H Auto Sales. This vehicle was financed through Santander or its predecessor in interest.

12. Plaintiff Felicia Sanderson is an adult resident citizen of Jefferson County, Alabama. On February 5, 2008, she purchased a 2008 Suzuki Forenza from Birmingham Suzuki. This vehicle was financed through Santander or its predecessor in interest.

13. Plaintiff Ashley Sherrin is an adult resident citizen of Baldwin County, Alabama. On July 19, 2006, she purchased a 2006 Kia Rio from McCray Kia. This vehicle was financed through Santander or its predecessor in interest.

14. Plaintiff Jameishia Tripp is an adult resident citizen of Walker County, Alabama. In September of 2007, she purchased a 2005 Scion TC from Honda of Jasper. This vehicle was financed through Santander or its predecessor in interest.

15. Plaintiff Barbara Turner is an adult resident citizen of Monroe County, Alabama. In August of 2010 she purchased a 2010 Dodge Charger from Baldwin County Chrysler. This vehicle was financed through Santander or its predecessor in interest.

16. Plaintiff Brenda Watson is an adult resident citizen of Mobile County, Alabama. On March 19, 2008, she purchased a 2006 Hummer H3 from Capital Auto Company. This vehicle was financed through Santander or its predecessor in interest.

17. Plaintiff Bernadette Lofton is an adult resident citizen of Mobile County, Alabama. On August 31, 2006, she purchased a 2003 Dodge Grand Caravan from Tameron Eastern Shore. This vehicle was financed through Santander or its predecessor in interest.

18. Plaintiff Porter Conley is an adult resident citizen of Barbour County, Alabama. In July of 2007, he purchased a 2007 Dodge Ram from Hughes Johnson Chrysler Dodge Jeep. This vehicle was financed through Santander or its predecessor in interest.

19. Plaintiff Turquoise Williams is an adult resident citizen of Walker County, Alabama. On February 16, 2010, she purchased a 2009 Chevrolet Cobalt from Buyer's Way. This vehicle was financed through Santander or its predecessor in interest.

20. Plaintiff Karin McLellan is adult resident citizen of Palm Beach County, Florida. On February 16, 2005, she purchased a 2004 Chevrolet Malibu. This vehicle was finance through Santander or its predecessor in interest.

21. Defendant Santander Consumer USA, Inc. is an Illinois corporation with its principal place of business in Dallas, Texas.

**JURISDICTION AND VENUE**

22. Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because Plaintiffs' claims arise under federal law, specifically the Telephone Consumer Protection Act, 47 U.S.C. § 227.

23. Jurisdiction is proper in this Court under 28 U.S.C. § 1332. Complete diversity exists in this case. All plaintiffs are citizens of Alabama or Florida. Defendant is a citizen of Illinois and Texas.

24. The amount in controversy in this case exceeds $75,000.00, exclusive of interests and costs, because of the high number of violations of the TCPA, each of which triggers $500.00 to $1500.00 in statutory damages.

25. Venue is proper in this Court under 28 U.S.C. § 1391 (b)(2) because a substantial part of the events giving rise to Plaintiffs' claims took place in the Northern District of Alabama.

## FACTUAL ALLEGATIONS

26. All of the plaintiffs had car loans held and/or serviced by Defendant Santander Consumer USA, Inc. ("Santander"). Santander regularly called plaintiffs' cellular telephones.

27. Santander made these calls with an automatic telephone dialing system called the ASPECT telephony system.

28. On multiple occasions Santander used an auto-dialer or pre-recorded voice to call plaintiff Carmen Woods on her cellular telephone number, 205-305-0424, without her express consent.

29. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff France Chambers on her cellular telephone number, 205-427-9859, without her express consent.

30. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Justin Cooper on his cellular telephone number, 706-289-7839, without his express consent.

31. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Jeffrey Dibble on his cellular telephone number, 205-299-2216, without his express consent.

32. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Debbie Glover on her cellular telephone number, 334-324-4947, without her express consent.

33.  On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Jalita Flood on her cellular telephone number, 251-643-2259, without her express consent.

34.  On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Cora Jackson on her cellular telephone number, 334-354-6651, without her express consent.

35.  On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Robert Means on his cellular telephone number, 256-585-8016, without his express consent.

36.  On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Cynthia Paul on her cellular telephone number, 334-312-0699, without her express consent.

37.  On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Stephen Pollitt on his cellular telephone number, 334-399-8734, without his express consent.

38.  On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Shirley Ray on her cellular telephone number, 334-344-9624, without her express consent.

39.  On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Felicia Sanderson on her cellular telephone number, 205-514-3597, without her express consent.

40.  On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Ashley Sherrin on her cellular telephone number, 251-752-0437, without her express consent.

41. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Jameishia Tripp on her cellular telephone number, 205-435-0064, without her express consent.

42. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Barbara Turner on her cellular telephone number, 251-714-5225, without her express consent.

43. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Brenda Watson on her cellular telephone number, 251-623-1045, without her express consent.

44. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Bernadette Lofton on her cellular telephone number, 251-751-6131, without her express consent.

45. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Porter Conley on his cellular telephone number, 334-367-9331, without his express consent.

46. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Turquoise Williams on her cellular telephone number, 205-360-5148, without her express consent.

47. On multiple occasions, Santander used an auto-dialer or pre-recorded voice to call plaintiff Karin McLellan on her cellular telephone number, 561-215-4787, without her express consent.

**CLAIM FOR RELIEF**

48. Plaintiffs re-allege the preceding paragraphs and factual allegations as if fully set forth herein.

49. None of the plaintiffs ever provided Santander with permission to contact their cellular telephones with automatic dialers or pre-recorded voice messages.

50. Santander's calls thus violated 47 U.S.C. § 227(b)(1)(iii), which prohibits anyone from using an auto-dialer or pre-recorded voice to call a cellular telephone without the called party's consent.

51. Santander's violation of the TCPA entitles the plaintiffs to statutory damages of $500 per violation.

52. Santander knowingly or willfully violated the TCPA.

53. Santander's knowing or willful violations of the TCPA entitle the plaintiffs to treble statutory damages of $1500 per violation.

**PRAYER FOR RELIEF**

Plaintiffs pray for the following relief:

(A) a declaratory ruling that Santander has engaged in the practices alleged herein in violation of federal law;

(B) after a jury trial, and award of damages for the plaintiffs for violations of the TCPA, including up to treble damages; and

(C) any other relief this Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiffs demand trial by struck jury of all issues.

/s/ John E. Norris_____
John E. Norris
One of the Attorneys for Plaintiffs

**OF COUNSEL:**
D. Frank Davis (DAV009)
John E. Norris (NOR041)
Wesley W. Barnett (BAR141)
Courtney L. Peinhardt (PEI001)
Dargan Ware (WAR089)
Davis & Norris, LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com
courtney@davisnorris.com
dware@davisnorris.com

## REQUEST FOR SERVICE BY CERTIFIED MAIL

Plaintiffs hereby request service upon the following named defendant through its registered agent for service by certified mail pursuant to the Federal and Alabama Rules of Civil Procedure.

C T CORPORATION SYSTEM
2 NORTH JACKSON ST., SUITE 605
MONTGOMERY, AL 36104

/s/ John E. Norris_____
Of Counsel

**U.S. District Court**
**Northern District of Alabama (Southern)**
**CIVIL DOCKET FOR CASE #: 2:14-cv-02104-MHH**

Woods et al v. Santander Consumer USA Inc
Assigned to: Judge Madeline Hughes Haikala
Cause: 28:1332 Diversity-Account Receivable

Date Filed: 10/30/2014
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**Carmen Woods**

represented by **Courtney L Peinhardt**
DAVIS & NORRIS LLP
2154 Highland Avenue South
Birmngham, AL 35205
205-930-9900
Fax: 205-930-9989
Email: courtney@davisnorris.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D Frank Davis**
DAVIS & NORRIS LLP
2151 Highland Avenue, South, Suite 100
Birmingham, AL 35205
205-930-9900
Fax: 205-930-9989
Email: fdavis@davisnorris.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
DAVIS & NORRIS, LLP
2154 Highland Avenue
Birmingham, AL 35205
930-9900
Fax: 930-9989
Email: dware@davisnorris.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
DAVIS & NORRIS LLP
2151 Highland Avenue South
Birmingham, AL 35205
205-930-9900
Fax: 205-930-9989
Email: jnorris@davisnorris.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
DAVIS & NORRIS LLP
2154 Highland Avenue South
Birmingham, AL 35205
205-930-9900

Fax: 205-930-9989
Email: wbarnett@davisnorris.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Carolyn Coleman**                              represented by  **Courtney L Peinhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D Frank Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**France Chambers**                              represented by  **Courtney L Peinhardt**
*TERMINATED: 06/23/2015*                                        (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D Frank Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Justin Cooper**                                    represented by   **Courtney L Peinhardt**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **D Frank Davis**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Dargan Maner Ware**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **John E Norris**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Wesley W Barnett**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jeffrey Dibble**                                   represented by   **Courtney L Peinhardt**
*TERMINATED: 06/23/2015*                                             (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **D Frank Davis**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Dargan Maner Ware**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **John E Norris**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Wesley W Barnett**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Debbie Glover**                                    represented by   **Courtney L Peinhardt**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**D Frank Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jalita Flood**                                    represented by  **Courtney L Peinhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D Frank Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cora Jackson**                                    represented by  **Courtney L Peinhardt**
*TERMINATED: 06/23/2015*                                          (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D Frank Davis**
(See above for address)

*LEAD ATTORNEY*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Shirley Ray**                          represented by    **Courtney L Peinhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D Frank Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Robert Means**                        represented by    **Courtney L Peinhardt**
*TERMINATED: 12/09/2014*                                  (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Cynthia Paul**                                   represented by   **Courtney L Peinhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D Frank Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stephen Pollitt**                                represented by   **Courtney L Peinhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D Frank Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Felicia Sanderson**                                  represented by   **Courtney L Peinhardt**
*TERMINATED: 12/09/2014*                                             (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Dargan Maner Ware**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **John E Norris**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Wesley W Barnett**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Ashley Sherrin**                                     represented by   **Courtney L Peinhardt**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **D Frank Davis**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Dargan Maner Ware**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **John E Norris**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

                                                                     **Wesley W Barnett**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*
                                                                     *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Jameishia Tripp**                                    represented by   **Courtney L Peinhardt**
                                                                     (See above for address)
                                                                     *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**D Frank Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Barbara Turner**                    represented by **Courtney L Peinhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D Frank Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brenda Watson**                    represented by **Courtney L Peinhardt**
*TERMINATED: 12/09/2014*                              (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)

*LEAD ATTORNEY*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bernadette Lofton**                    represented by    **Courtney L Peinhardt**
*TERMINATED: 06/23/2015*                                   (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **D Frank Davis**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Dargan Maner Ware**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John E Norris**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Wesley W Barnett**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Porter Conley**                        represented by    **Courtney L Peinhardt**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **D Frank Davis**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **Dargan Maner Ware**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

                                                            **John E Norris**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Turquoise Williams**
*TERMINATED: 12/09/2014*

represented by   **Courtney L Peinhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Karin McLellan**
*TERMINATED: 12/09/2014*

represented by   **Courtney L Peinhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Self**
*TERMINATED: 06/22/2015*

represented by   **Courtney L Peinhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**April Lindblom**
*TERMINATED: 06/22/2015*

represented by **Courtney L Peinhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D Frank Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Esmeralda Gonzalez**
*TERMINATED: 06/22/2015*

represented by **Courtney L Peinhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D Frank Davis**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Timmy Fontenot**
*TERMINATED: 06/22/2015*

represented by   **Courtney L Peinhardt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**D Frank Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dargan Maner Ware**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John E Norris**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley W Barnett**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**Santander Consumer USA Inc**

represented by   **S Greg Burge**
BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, AL 35203
205-251-3000
Fax: 205-458-5100
Email: gburge@burr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

BURR & FORMAN LLP
511 Union Street
Suite 2300
Nashville, TN 37219
615-724-3216
Fax: 615-724-3316
Email: zmiller@burr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**R Frank Springfield**
BURR & FORMAN LLP
420 North 20th Street
Suite 3100
Birmingham, AL 35203
205-251-3000
Fax: 205-458-5100
Email: fspringf@burr.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ocwen Loan Servicing LLC**                    represented by   **Michael R Pennington**
BRADLEY ARANT BOULT CUMMINGS
LLP
1819 5th Avenue North
P O Box 830709
Birmingham, AL 35283-0709
205-521-8000
Fax: 205-521-8800
Email: mpennington@babc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard Aaron Chastain**
BRADLEY ARANT BOULT CUMMINGS
LLP
1819 Fifth Avenue North
Birmingham, AL 35203
205-521-8771
Fax: 205-488-6771
Email: achastain@babc.com
*ATTORNEY TO BE NOTICED*

**Robert J Campbell**
BRADLEY ARANT BOULT CUMMINGS
LLP
1819 Fifth Avenue North
Birmingham, AL 35203-2119
205-521-8000
Fax: 205-521-8800
Email: rjcampbell@babc.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ocwen Financial Corporation**                    represented by   **Michael R Pennington**

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard Aaron Chastain**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert J Campbell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Western Union Business Solutions (USA)**          represented by   **Daniel R Taylor , Jr.**
**LLC**                                                             KILPATRICK TOWNSEND & STOCKTON
                                                                    LLP
                                                                    1001 West Fourth Street
                                                                    Winston Salem, NC 27101
                                                                    336-607-7300
                                                                    Fax: 336-607-7500
                                                                    Email: dantaylor@kilpatricktownsend.com
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Joseph S Dowdy**
                                                                    KILPATRICK TOWNSEND & STOCKTON
                                                                    LLP
                                                                    4208 Sixth Forks Rd Suite 1400
                                                                    Raleigh, NC 27609
                                                                    919-420-1700
                                                                    Fax: 919-420-1800
                                                                    Email: jdowdy@kilpatricktownsend.com
                                                                    *LEAD ATTORNEY*
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Susan H Boyles**
                                                                    KILPATRICK TOWNSEND & STOCKTON
                                                                    LLP
                                                                    1001 West Fourth Street
                                                                    Winston Salem, NC 27101
                                                                    336-607-7300
                                                                    Fax: 336-607-7500
                                                                    Email: sboyles@kilpatricktownsend.com
                                                                    *LEAD ATTORNEY*
                                                                    *PRO HAC VICE*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **John W Scott**
                                                                    SCOTT DUKES & GEISLER PC
                                                                    211 22nd Street North
                                                                    Birmingham, AL 35203
                                                                    205-251-2300
                                                                    Fax: 205-251-6773
                                                                    Email: jscott@scottdukeslaw.com
                                                                    *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/30/2014 | 1 | COMPLAINT against Santander Consumer USA Inc, filed by France Chambers, Jeffrey Dibble, Jameishia Tripp, Debbie Glover, Porter Conley, Carmen Woods, Robert Means, Justin Cooper, Turquoise Williams, Carolyn Coleman, Cora Jackson, Felicia Sanderson, Cynthia Paul, Shirley Ray, Brenda Watson, Stephen Pollitt, Karin McLellan, Ashley Sherrin, Barbara Turner, Bernadette Lofton, Jalita Flood.(KEK) (Entered: 10/30/2014) |
| 10/30/2014 | 2 | Request for service by certified mail filed by France Chambers, Carolyn Coleman, Porter Conley, Justin Cooper, Jeffrey Dibble, Jalita Flood, Debbie Glover, Cora Jackson, Bernadette Lofton, Karin McLellan, Robert Means, Cynthia Paul, Stephen Pollitt, Shirley Ray, Felicia Sanderson, Ashley Sherrin, Jameishia Tripp, Barbara Turner, Brenda Watson, Turquoise Williams, Carmen Woods. (KEK) (Entered: 10/30/2014) |
| 10/30/2014 | 3 | NOTICE regarding consent in a civil action to a Magistrate Judge. (KEK) (Entered: 10/30/2014) |
| 10/30/2014 | | Filing Fee: Filing fee $ 400, receipt_number 1126-2277381 (ALND B4601057062). related document 1 COMPLAINT against Santander Consumer USA Inc, filed by France Chambers, Jeffrey Dibble, Jameishia Tripp, Debbie Glover, Porter Conley, Carmen Woods, Robert Means, Justin Cooper, Turquoise Williams, Carolyn Coleman, Cora Jackson, Felicia Sanderson, Cynthia Paul, Shirley Ray, Brenda Watson, Stephen Pollitt, Karin McLellan, Ashley Sherrin, Barbara Turner, Bernadette Lofton, Jalita Flood.(KEK). (Barnett, Wesley) Modified on 10/31/2014 (KEK). (Entered: 10/30/2014) |
| 10/31/2014 | 4 | Summons Issued as to Santander Consumer USA Inc. Sent via certified mail.(KEK) (Entered: 10/31/2014) |
| 11/06/2014 | 5 | SUMMONS Returned Executed by France Chambers, Jeffrey Dibble, Jameishia Tripp, Debbie Glover, Porter Conley, Carmen Woods, Robert Means, Justin Cooper, Turquoise Williams, Carolyn Coleman, Cora Jackson, Felicia Sanderson, Cynthia Paul, Shirley Ray, Brenda Watson, Stephen Pollitt, Karin McLellan, Ashley Sherrin, Barbara Turner, Bernadette Lofton, Jalita Flood. Santander Consumer USA Inc served on 11/3/2014, answer due 11/24/2014. (KEK) (Entered: 11/06/2014) |
| 11/12/2014 | 6 | MOTION for Extension of Time to File Answer re 1 Complaint, *(Unopposed)* by Santander Consumer USA Inc. (Springfield, R) (Entered: 11/12/2014) |
| 11/13/2014 | 7 | TEXT ORDER: Defendant has filed an unopposed motion to extend its time to file an answer to the complaint. (Doc. 6 ). The Court GRANTS the motion. The defendant shall file a responsive pleading on or before December 15, 2014. Signed by Judge Madeline Hughes Haikala on 11/13/2014. (KEK) (Entered: 11/13/2014) |
| 11/13/2014 | 8 | INITIAL ORDER. Signed by Judge Madeline Hughes Haikala on 11/13/2014. (KEK, ) (Entered: 11/13/2014) |
| 12/05/2014 | 9 | NOTICE of Voluntary Dismissal by Karin McLellan, Robert Means, Felicia Sanderson, Brenda Watson, Turquoise Williams (Barnett, Wesley) (Entered: 12/05/2014) |
| 12/05/2014 | 10 | AMENDED COMPLAINT against All Defendants, filed by France Chambers, Jeffrey Dibble, Jameishia Tripp, Debbie Glover, Porter Conley, Carmen Woods, Justin Cooper, Carolyn Coleman, Cora Jackson, Cynthia Paul, Shirley Ray, Stephen Pollitt, Ashley Sherrin, Bernadette Lofton, Barbara Turner, Jalita Flood. (Attachments: # 1 Appendix Summons, # 2 Appendix Summons, # 3 Appendix Summons)(Barnett, Wesley) (Entered: 12/05/2014) |
| 12/09/2014 | | Felicia Sanderson, Brenda Watson, Turquoise Williams, Karin McLellan and Robert Means terminated per Notice of dismissal (Doc 9 ). (KEK) (Entered: 12/09/2014) |
| 12/09/2014 | 11 | Summons Issued as to Ocwen Financial Corporation, Ocwen Loan Servicing LLC, Santander Consumer USA Inc, Western Union Business Solutions (USA) LLC. (KEK) (Entered: |

| | | 12/09/2014) |
|---|---|---|
| 12/12/2014 | 12 | SUMMONS Returned Executed by France Chambers, Jeffrey Dibble, Jameishia Tripp, Debbie Glover, Porter Conley, John Self, Timmy Fontenot, Carmen Woods, Justin Cooper, Carolyn Coleman, Cora Jackson, Cynthia Paul, Shirley Ray, Esmeralda Gonzalez, Stephen Pollitt, Ashley Sherrin, Barbara Turner, April Lindblom, Bernadette Lofton, Jalita Flood. Ocwen Financial Corporation served on 12/11/2014, answer due 1/1/2015; Ocwen Loan Servicing LLC served on 12/11/2014, answer due 1/1/2015. (KEK) (Entered: 12/12/2014) |
| 12/15/2014 | 13 | SUMMONS Returned Executed by France Chambers, Jeffrey Dibble, Jameishia Tripp, Debbie Glover, Porter Conley, John Self, Timmy Fontenot, Carmen Woods, Justin Cooper, Carolyn Coleman, Cora Jackson, Cynthia Paul, Shirley Ray, Esmeralda Gonzalez, Stephen Pollitt, Ashley Sherrin, Barbara Turner, April Lindblom, Bernadette Lofton, Jalita Flood. Santander Consumer USA Inc served on 12/11/2014, answer due 1/1/2015; Western Union Business Solutions (USA) LLC served on 12/11/2014, answer due 1/1/2015. (KEK) (Entered: 12/15/2014) |
| 12/16/2014 | 14 | MOTION for Extension of Time to File Answer re 10 Amended Complaint, *(Unopposed)* by Santander Consumer USA Inc. (Springfield, R) (Entered: 12/16/2014) |
| 12/18/2014 | 15 | TEXT ORDER: The defendant, Santander Consumer USA, Inc., has filed an unopposed motion for an extension of time to respond to the amended complaint. (Doc. 14 ). For good cause shown, the Court GRANTS the motion. Santander Consumer USA shall file a responsive pleading on or before January 16, 2015. Signed by Judge Madeline Hughes Haikala on 12/18/2014. (KEK) (Entered: 12/18/2014) |
| 12/23/2014 | 16 | Joint MOTION for Extension of Time *by DEFENDANTS* by Ocwen Financial Corporation, Ocwen Loan Servicing LLC. (Pennington, Michael) (Entered: 12/23/2014) |
| 01/08/2015 | 17 | TEXT ORDER: Defendants Ocwen Financial Corporation and Ocwen Loan Servicing LLC have filed an unopposed motion for an extension of time to respond to the plaintiffs' complaint. (Doc. 16 ). The Court GRANTS the motion. The defendants Ocwen Financial Corporation and Ocwen Loan Servicing LLC shall respond to the complaint on or before February 2, 2015. Signed by Judge Madeline Hughes Haikala on 1/8/2015. (KEK) (Entered: 01/08/2015) |
| 01/08/2015 | 18 | TEXT ORDER: The Court's January 8, 2015 Order granting the defendants' motion for an extension of time applies to all defendants named in this lawsuit. (Docs. 16, 17). The defendants shall respond to the complaint on or before February 2, 2015. Signed by Judge Madeline Hughes Haikala on 1/8/2015. (KEK) (Entered: 01/08/2015) |
| 01/20/2015 | 19 | NOTICE of Appearance by John W Scott on behalf of Western Union Business Solutions (USA) LLC (Scott, John) (Entered: 01/20/2015) |
| 01/27/2015 | 20 | MOTION for Leave to Appear Pro Hac Vice by Western Union Business Solutions (USA) LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Scott, John) (Entered: 01/27/2015) |
| 01/27/2015 | | PHV Fee paid: $ 50, receipt number 1126-2328547 (ALND B4601059357). (Scott, John) Modified on 1/28/2015 (KEK). (Entered: 01/27/2015) |
| 01/27/2015 | 21 | TEXT ORDER: The Court GRANTS Western Union Business Solution's motion for leave for Daniel R. Taylor, Susan H. Boyles, and Joseph S. Dowdy to appear, pro hac vice, as counsel. Signed by Judge Madeline Hughes Haikala on 1/27/2015. (KEK) (Entered: 01/27/2015) |
| 01/28/2015 | | PHV Fee paid: $ 50, receipt number 1126-2328917 (ALND B4601059362). (Scott, John) Modified on 1/28/2015 (KEK). (Entered: 01/28/2015) |
| 01/28/2015 | | PHV Fee paid: $ 50, receipt number 1126-2328919 (ALND B4601059363). (Scott, John) Modified on 1/28/2015 (KEK). (Entered: 01/28/2015) |
| 02/02/2015 | 22 | Corporate Disclosure Statement by Ocwen Financial Corporation, Ocwen Loan Servicing LLC. filed by Ocwen Financial Corporation, Ocwen Loan Servicing LLC (Campbell, Robert) (Entered: 02/02/2015) |

| 02/02/2015 | 23 | MOTION to Sever *Due to Misjoinder* by Ocwen Financial Corporation, Ocwen Loan Servicing LLC. (Campbell, Robert) (Entered: 02/02/2015) |
|---|---|---|
| 02/02/2015 | 24 | Corporate Disclosure Statement by Santander Consumer USA Inc. filed by Santander Consumer USA Inc (Miller, Zachary) (Entered: 02/02/2015) |
| 02/02/2015 | 25 | MOTION to Dismiss *Plaintiffs' Amended Complaint Pursuant to Rule 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Rule 12(e)* by Western Union Business Solutions (USA) LLC. (Scott, John) (Entered: 02/02/2015) |
| 02/02/2015 | 26 | Brief re 25 MOTION to Dismiss *Plaintiffs' Amended Complaint Pursuant to Rule 12(b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Rule 12(e)* . (Attachments: # 1 Appendix Addendum of Unpublished Cases, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(Scott, John) (Entered: 02/02/2015) |
| 02/02/2015 | 27 | TEXT ORDER: Defendants Ocwen Financial Corporation and Ocwen Loan Servicing LLC have filed a motion to sever. (Doc. 23 ). The plaintiffs may file a response on or before February 16, 2015. The Court SETS this matter for a hearing Friday February 20, 2015 at 3:00 PM in the Hugo L. Black U.S. Courthouse, Courtroom 7B, Birmingham, AL before Judge Madeline Hughes Haikala. Signed by Judge Madeline Hughes Haikala on 2/2/2015. (KEK) (Entered: 02/02/2015) |
| 02/02/2015 | 28 | NOTICE of Voluntary Dismissal by France Chambers, Jeffrey Dibble, Cora Jackson, Bernadette Lofton, John Self, Carmen Woods (Ware, Dargan) (Entered: 02/02/2015) |
| 02/02/2015 | 29 | MOTION to Dismiss by Ocwen Financial Corporation, Ocwen Loan Servicing LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Campbell, Robert) (Entered: 02/02/2015) |
| 02/02/2015 | 30 | MOTION to Dismiss for Lack of Jurisdiction *the Claims of Out-of-State Plaintiffs Timmy Fontenot and April Lindblom* by Santander Consumer USA Inc. (Attachments: # 1 Exhibit A) (Miller, Zachary) (Entered: 02/02/2015) |
| 02/02/2015 | 31 | MOTION to Dismiss *or, in the Alternative, For a More Definite Statement and Incorporated Memorandum of Law* by Santander Consumer USA Inc. (Miller, Zachary) (Entered: 02/02/2015) |
| 02/02/2015 | 32 | MOTION to Sever *and Incorporated Memorandum of Law* by Santander Consumer USA Inc. (Miller, Zachary) (Entered: 02/02/2015) |
| 02/03/2015 | 33 | Joint MOTION to Continue *Rule 26(f) Conference (Unopposed)* by Santander Consumer USA Inc. (Miller, Zachary) (Entered: 02/03/2015) |
| 02/03/2015 | 34 | Corporate Disclosure Statement by Western Union Business Solutions (USA) LLC. filed by Western Union Business Solutions (USA) LLC (Scott, John) (Entered: 02/03/2015) |
| 02/13/2015 | 35 | First MOTION to Amend/Correct *Complaint* by France Chambers, Carolyn Coleman, Porter Conley, Justin Cooper, Jeffrey Dibble, Jalita Flood, Timmy Fontenot, Debbie Glover, Esmeralda Gonzalez. (Attachments: # 1 Appendix Proposed Amended Complaint)(Barnett, Wesley) (Entered: 02/13/2015) |
| 02/13/2015 | 36 | Brief re 35 First MOTION to Amend/Correct *Complaint* filed by France Chambers, Carolyn Coleman, Porter Conley, Justin Cooper, Jeffrey Dibble, Jalita Flood, Timmy Fontenot, Debbie Glover, Esmeralda Gonzalez, April Lindblom, Cynthia Paul, Stephen Pollitt, Shirley Ray, John Self. (Barnett, Wesley) (Entered: 02/13/2015) |
| 02/17/2015 | 37 | TEXT ORDER: The Court CANCELS the hearing currently set for February 20, 2015, and RESCHEDULES it for Friday February 27, 2015 at 3:30 PM in the Hugo L. Black U.S. Courthouse, Courtroom 7B, Birmingham, Alabama before Judge Madeline Hughes Haikala. Signed by Judge Madeline Hughes Haikala on 2/17/2015. (KEK) (Entered: 02/17/2015) |
| 02/17/2015 | 38 | Joint MOTION to Stay *Proceedings for 35 days in Light of Upcoming Mediation* by Ocwen |

| | | Financial Corporation, Ocwen Loan Servicing LLC. (Pennington, Michael) (Entered: 02/17/2015) |
|---|---|---|
| 02/19/2015 | 39 | **TEXT ORDER**: The parties have filed a joint motion to stay proceedings for thirty-five days in light of an upcoming mediation between the plaintiffs and defendant Santander. (Doc. 38 ). For good cause shown, the Court GRANTS the motion and STAYS all trial proceedings until March 24, 2015. The Court CANCELS the hearing currently set for February 27, 2015. On or before March 24, 2015, the plaintiffs and Santander shall let the Court know whether the mediation was successful. Upon receipt of a written report about the success or the mediation, the Court will enter an order setting a deadline for the plaintiffs to amend their complaint and for the defendants to respond to the anticipated second amended complaint. (Doc. 38 , pp. 4-5). Signed by Judge Madeline Hughes Haikala on 2/19/2015. (AVC) (Entered: 02/19/2015) |
| 03/24/2015 | 40 | NOTICE by Carmen Woods *of mediation results* (Ware, Dargan) (Entered: 03/24/2015) |
| 05/14/2015 | 41 | **TEXT ORDER**: The parties have informed the Court that they did not settle this case at mediation. (Doc. 40). There are a number of pending motions to dismiss and motions to sever. (Docs. 23, 25, 29, 30, 31, 32). The plaintiffs have filed a motion for leave to file a second amended complaint. (Doc. 35). Because the proposed second amended complaint, (Doc. 35-1), is similar in many respects to the first amended complaint, (Doc. 10), the Court SETS the pending motions, including the motions to dismiss and the motion for leave to amend, for a hearing at 3:30 PM on Thursday, May 28, 2015 in the Hugo L. Black U.S. Courthouse, Courtroom 7B, Birmingham, Alabama. Signed by Judge Madeline Hughes Haikala on 5/14/2015. (AVC) (Entered: 05/14/2015) |
| 05/21/2015 | 42 | Joint MOTION to Continue *Hearing Date* by Santander Consumer USA Inc. (Springfield, R) (Entered: 05/21/2015) |
| 05/22/2015 | 43 | TEXT ORDER: The parties have filed a joint motion to continue the hearing date. (Doc. 42 ). The Court GRANTS the motion. The RESCHEDULES the hearing, currently set for May 28, 2015, to Monday, June 8, 2015 at 3:30 PM. Signed by Judge Madeline Hughes Haikala on 5/22/2015. (KEK) (Entered: 05/22/2015) |
| 06/02/2015 | 44 | MOTION to Stay re 33 Joint MOTION to Continue *Rule 26(f) Conference (Unopposed) , Renewed, to Temporarily Stay Discovery and the Rule 26(f) Requirements of the Federal and Local Rules* by Ocwen Financial Corporation, Ocwen Loan Servicing LLC, Santander Consumer USA Inc, Western Union Business Solutions (USA) LLC. (Attachments: # 1 Exhibit A - 05/29/15 Email)(Campbell, Robert) (Entered: 06/02/2015) |
| 06/03/2015 | 45 | RESPONSE to Motion re 35 First MOTION to Amend/Correct *Complaint* filed by Ocwen Loan Servicing LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Campbell, Robert) (Entered: 06/03/2015) |
| 06/04/2015 | 46 | RESPONSE to Motion re 44 MOTION to Stay re 33 Joint MOTION to Continue *Rule 26(f) Conference (Unopposed) , Renewed, to Temporarily Stay Discovery and the Rule 26(f) Requirements of the Federal and Local Rules* filed by France Chambers, Carolyn Coleman, Porter Conley, Justin Cooper, Jeffrey Dibble, Jalita Flood, Timmy Fontenot, Debbie Glover, Esmeralda Gonzalez, Cora Jackson, April Lindblom, Bernadette Lofton, Karin McLellan, Robert Means, Cynthia Paul, Stephen Pollitt, Shirley Ray, Felicia Sanderson, John Self, Ashley Sherrin, Jameishia Tripp, Barbara Turner, Brenda Watson, Turquoise Williams, Carmen Woods. (Barnett, Wesley) (Entered: 06/04/2015) |
| 06/05/2015 | 47 | MOTION for Leave to Appear Pro Hac Vice *of Nicholas Richard Klaiber* by Santander Consumer USA Inc. (Attachments: # 1 Exhibit A)(Springfield, R) (Entered: 06/05/2015) |
| 06/05/2015 | | PHV Fee paid: $ 50, receipt number 1126-2411246 (ALND B4601062844). (Springfield, R) Modified on 6/5/2015 (KEK). (Entered: 06/05/2015) |
| 06/05/2015 | 48 | RESPONSE in Opposition re 35 First MOTION to Amend/Correct *Complaint* filed by Santander Consumer USA Inc. (Springfield, R) (Entered: 06/05/2015) |

| 06/08/2015 | 49 | TEXT ORDER: Santander Consumer USA, Inc. has filed a motion for leave for Mr. Nicholas Rechtman to appear pro hac vice. The Court GRANTS the motion. Signed by Judge Madeline Hughes Haikala on 6/8/2015. (KEK) (Entered: 06/08/2015) |
|---|---|---|
| 06/08/2015 | | Minute Entry for proceedings held before Judge Madeline Hughes Haikala: Motion Hearing held on 6/8/2015 re 29 MOTION to Dismiss filed by Ocwen Loan Servicing LLC, Ocwen Financial Corporation, 32 MOTION to Sever *and Incorporated Memorandum of Law* filed by Santander Consumer USA Inc, 25 MOTION to Dismiss *Plaintiffs' Amended Complaint Pursuant to Rule 12 (b)(6), or in the Alternative, Motion for a More Definite Statement Pursuant to Rule 12(e)* filed by Western Union Business Solutions (USA) LLC, 23 MOTION to Sever *Due to Misjoinder* filed by Ocwen Loan Servicing LLC, Ocwen Financial Corporation, 31 MOTION to Dismiss *or, in the Alternative, For a More Definite Statement and Incorporated Memorandum of Law* filed by Santander Consumer USA Inc, 30 MOTION to Dismiss for Lack of Jurisdiction *the Claims of Out-of-State Plaintiffs Timmy Fontenot and April Lindblom* filed by Santander Consumer USA Inc. (Court Reporter Chanetta Sinkfield.) (TLM, ) (Entered: 06/08/2015) |
| 06/15/2015 | 50 | AMENDED COMPLAINT against All Defendants, filed by France Chambers, Jeffrey Dibble, Jameishia Tripp, Debbie Glover, Porter Conley, John Self, Timmy Fontenot, Carmen Woods, Robert Means, Justin Cooper, Turquoise Williams, Carolyn Coleman, Cora Jackson, Felicia Sanderson, Cynthia Paul, Shirley Ray, Esmeralda Gonzalez, Brenda Watson, Stephen Pollitt, Ashley Sherrin, Karin McLellan, Barbara Turner, April Lindblom, Bernadette Lofton, Jalita Flood. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Barnett, Wesley) (Entered: 06/15/2015) |
| 06/17/2015 | 51 | NOTICE of Appearance by Richard Aaron Chastain on behalf of Ocwen Financial Corporation, Ocwen Loan Servicing LLC (Chastain, Richard) (Entered: 06/17/2015) |
| 06/22/2015 | 52 | Transcript of Proceedings held on 6/8/2015, before Judge Madeline Hughes Haikala. Court Reporter/Transcriber Chanetta Sinkfield, Telephone number 205-278-2061. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE: The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. (A copy can be obtained at http://www.alnd.uscourts.gov/local/court% 20forms/transcripts/Transcript% 20Redaction%20Policy.pdf) See Transcript Redaction Policy Redaction Request due 7/13/2015. Redacted Transcript Deadline set for 7/23/2015. Release of Transcript Restriction set for 9/20/2015. (Attachments: # 1 Certificate) (KEK) (Entered: 06/22/2015) |
| 06/22/2015 | 53 | ORDER - The Court DISMISSES without prejudice the claims asserted by Ms. Gonzalez and Mr. Self against Ocwen and Western Union. the Court TRANSFERS Ms. Lindbloms claims to the United States District Court for the Eastern District of California, and the Court TRANSFERS Mr. Fontenots claims to the United States District Court for the Southern District of Texas. The Court DENIES without prejudice Ocwens motion to sever due to misjoinder, (Doc. 23 ), and Santanders motion to sever. (Doc. 32 ). The Court DENIES as moot Western Unions 12 (b)(6) motion to dismiss or, alternatively, for a more definite statement. (Doc. 25 ). The Court DENIES Santanders 12(b)(6) motion to dismiss or, alternatively, for a more definite statement. (Doc. 31 ). The Court DENIES as moot plaintiffs motion to amend/correct complaint. (Doc. 35 ). The Court GRANTS the joint motion to continue the Rule 26(f) conference, (Doc. 33 ), and the motion to temporarily stay discovery. (Doc. 44 ). The Court directs the Clerk to please TERM Docs. 23, 25, 29, 30, 31, 32, 33, 35 & 44. The Court will issue a separate order requiring briefing on the plaintiffs theory of recovery under the FDCPA. Signed by Judge Madeline Hughes Haikala on 6/22/2015. (KEK) (Entered: 06/22/2015) |

## Transaction Receipt

06/30/2015 10:06:09

| PACER Login: | jd9260:4268362:4268475 | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 2:14-cv-02104-MHH |
| Billable Pages: | 20 | Cost: | 2.00 |