UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL LINDBLOM,<br><br>     Plaintiff,<br><br>     v.<br><br>SANTANDER CONSUMER USA, INC., AND WESTERN UNION BUSINESS SOLUTIONS (USA), LLC,<br><br>     Defendants. | 1:15-cv-990-LJO-BAM<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION TO DISMISS (Doc. 31) |

## I. INTRODUCTION

Plaintiff April Lindblom ("Plaintiff") brings this proposed class action against Defendants Santander Consumer USA, Inc. ("Santander") and Western Union Business Solutions (USA), LLC ("Western Union") (collectively, "Defendants") for alleged violations of the federal Fair Debt Collection Practices Act ("the FDCPA"), 15 U.S.C. §§ 1692 et seq., and California's Rosenthal Fair Debt Collection Practices Act ("the Rosenthal Act"), California Civil Code §§ 1788 et seq., associated with the fees Western Union charged borrowers to make payments on loans by phone or internet.[1] Doc. 27, First Amended Complaint ("FAC"), at ¶ 2. Western Union moves to dismiss Plaintiff's sole Rosenthal Act claim, asserting that the Rosenthal Act does not apply to Western Union, which, in any event, lawfully charged the fees. *See* Doc. 32 at 2.

The Court finds it appropriate to rule on the motion without oral argument. *See* Local Rule 230(g); Doc. 36. For the following reasons, the Court GRANTS the motion.

---

[1] Plaintiff brings another claim against Santander only, which the Court need not discuss to resolve Western Union's motion to dismiss.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

The facts of this case are few and straightforward. Plaintiff purchased a car, which she financed with a loan that Santander eventually began to service. FAC at ¶¶ 1-2. Plaintiff made payments on the loan by phone and online through Western Union's "Speedpay" service. *Id.* at ¶ 12. To do so, Plaintiff was required to pay a fee to Western Union. *Id.* at ¶ 14. Western Union remitted most of that fee to Santander. *Id.* at ¶¶ 2, 14.

Plaintiff alleges that, in doing so, Defendants created a "partnership," the purpose of which is to help Santander increase its profits by charging the customer the Speedpay fee and splitting the proceeds. *Id.* at ¶ 13. Plaintiff asserts this fee-sharing agreement violated the FDCPA and the Rosenthal Act. *See id.* at ¶¶ 2, 12, 13, 24, 27. Specifically, Plaintiff asserts that Western Union violated § 1692f(1) of the FDCPA and, in turn, violated § 1788.17 of the Rosenthal Act, "which prohibits any entity covered by the Rosenthal [Act] from violation the [FDCPA]." *Id.* at ¶ 27. Plaintiff also alleges Defendants' fee-charging-and-splitting arrangement independently violated the Rosenthal Act. *Id.* at ¶ 28.

On behalf of a putative class, Plaintiff brings one claim against Western Union for violation of the Rosenthal Act. *See* FAC at 9-11. Western Union moves to dismiss the claim on two primary grounds: (1) the Rosenthal Act does not apply to Western Union because Plaintiff has not plausibly alleged Western Union is a "debt collector"; and (2) the Speedpay fees were permissible under the Rosenthal Act. Doc. 32 at 10, 22.

## III. STANDARD OF DECISION

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss

---

[2] The background facts are derived from the complaint. The Court accepts the factual allegations as true for purposes of this motion.  *Lazy Y. Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the Plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions . . . amount[ing] to nothing more than a 'formulaic recitation of the elements' . . . are not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, the Plaintiffs should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. DISCUSSION

The Rosenthal Act "prohibit[s] debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." Cal. Civ. Code § 1788.1. To state a claim under the

1  Rosenthal Act, the plaintiff must establish that (1) he/she is a "consumer" (2) who was the object of a

2  collection activity arising from a "debt"; (3) the defendant is a "debt collector"; and (4) the defendant

3  violated a provision of the FDCPA. *Flores v. Collection Consultants of Calif.*, No. SACV 14-771-DOC

4  (RNBx), 2015 WL 4254032, at *4 (C.D. Cal. Mar. 20, 2015) (citations omitted).

5        Whether an entity qualifies as a "debt collector" under the Rosenthal Act "depends on the

6  interplay of several definitions found in [California Civil Code] section 1788.2." *Gouskos v. Aptos*

7  *Village Garage, Inc.*, 94 Cal. App. 4th 754, 759 (2001). Section 1788.2(c) provides in full:

8      The term "debt collector" means any person who, in the ordinary course of business, regularly,
   on behalf of himself or herself or others, engages in debt collection. The term includes any

9      person who composes and sells, or offers to compose and sell, forms, letters, *and other collection
   media* used or intended to be used for debt collection, but does not include an attorney or

10      counselor at law.

11  (Emphasis added). "Debt collection," in turn, is defined as "any act or practice in connection with the

12  collection of consumer debts." § 1788.2(b).

13        Plaintiff contends that Western Union's Speedpay service is a "collection medium" used or

14  intended to be used for debt collection under § 1788.2(c) and qualifies as an "act or practice [used] in

15  connection with the collection of consumer debts" under § 1788.2(b). Doc. 34 at 3, 7, 12-14. To support

16  these contentions, Plaintiff interprets "media" in § 1788.2(c) to be the plural of "medium," and points to

17  three dictionary definitions of "medium"[3]; Plaintiff provides no other support for her position. *See id.*

18        The resolution of Western Union's motion to dismiss therefore turns on whether its Speedpay

19  service constitutes a form of "collection media," as that term is used in § 1788.2(c). The parties do not

20  provide—and, despite extensive research, the Court cannot find—any case that has meaningfully

21  addressed the issue of what constitutes "collection media" under § 1788.2(c).

22        Any statutory analysis begins with the statute's plain language. *Gwaltney of Smithfield, Ltd. v.*

23  *Chesapeake Bay Found., Inc*., 484 U.S. 49, 56, (1987) ("It is well settled that the starting point for

24  _____

25  [3] Plaintiff cites to Dictionary.com's definition of "medium" ("an intervening agency, means, or instrument by which
   something is conveyed or accomplished"), Merriam-Webster's ("a means of effecting or conveying something"), and the
   Oxford English Dictionary's ("an agency or means of doing something"). Doc. 34 at 13.

1  interpreting a statute is the language of the statute itself."). The Court's interpretation of a statute

2  "begins with the statutory text, and ends there as well if the text is unambiguous." *McDonald v. Sun Oil*

3  *Co.*, 548 F.3d 774, 780 (9th Cir. 2008) (citation and quotation marks omitted).

4       When read in isolation, the term "collection media" in § 1788.2(c) does not have a clear and

5  unambiguous meaning. Plaintiff is of course correct that "media" is the plural of "medium." But, as the

6  dictionaries Plaintiff cites establishes, "media" also refers to methods of communication.[4]

7       "Canons of statutory construction help give meaning to a statute's words." *The Wilderness Soc'y*

8  *v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003). As Western Union suggests, the

9  *ejusdem generis* canon of statutory interpretation is apt here. *See Zumbrun Law Firm v. Calif.*

10  *Legislature*, 165 Cal. App. 4th 1603, 1619 (2008) ("*Ejusdem generis* is an aid to be used if the language

11  is ambiguous."). That canon provides that "when a general word or phrase follows a list of specifics, the

12  general word or phrase will be interpreted to include only items of the same type as those listed."

13  *Ejusdem generis*, Black's Law Dictionary (8th ed. 2004). *Ejusdem generis* "simply means that if a

14  statute contains a list of specified items followed by more general words, the general words are limited

15  to those items that are similar to those specifically listed." *Clark v. Superior Court*, 50 Cal. 4th 605, 614

16  (2010). The rationale underlying the *ejusdem generis* canon is that, "if the Legislature intends a general

17  word to be used in its unrestricted sense, it does not also offer as examples peculiar things or classes of

18  things since those descriptions then would be surplusage." *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal.

19  4th 116, 141 (2000).

20       Applying the *ejusdem generis* canon here, "other collection media," as used in § 1788.2(c), must

21  be interpreted in light of the specific words that immediately precede it, *i.e.*, "forms" and "letters." *See* §

22  _____

23  [4] *See* "*Media*," Dictionary.com, http://dictionary.reference.com/browse/media?s=t (defining "media" as "the means of communication, as radio and television, newspapers, and magazines, that reach or influence people widely"); "*Media*," Merriam-Webster.com, http://www.merriam-webster.com/dictionary/medium (defining "media" as "a channel or system of

24  communication, information, or entertainment"); "*Media*," Oxford English Dictionary (defining "media," in part, as "[t]he main means of mass communication, esp. newspapers, radio, and television, regarded collectively"); *see also* "*Media*," OxfordDictionaries.com, http://www.oxforddictionaries.com/us/definition/american_english/medium (defining "media" as

25  "[a] means by which something is communicated or expressed").

1788.2(c). Read in that context, "collection media" most reasonably refers to written means of communication used to collect debt. This interpretation is further supported by § 1788.2(c)'s definition of debt collectors as including those who "*compose* and sell . . . or offer to *compose* and sell. . . forms, letters, and other collection media." (Emphasis added.) Although one may certainly "compose" a letter or form used in debt collection, it is a stretch, at best, to argue that Western Union "composed" the Speedpay service.

That § 1788.2(c) provides a debtor collector only "*includes* any person who composes and sells . . . forms, letters, and other collection media" (or offers to do so) means that list is illustrative, not exhaustive. *See Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156, 2160 (2012) ("First, the definition is introduced with the verb 'includes,' which indicates that the examples enumerated in the text are illustrative, not exhaustive."); *Boyle v. United States*, 556 U.S. 938, 944, 994 n.2 (2009) (holding statute defining "enterprise" that "includes" certain entities did "not purport to set out an exhaustive definition of the term 'enterprise'"); *United States v. Huber*, 603 F.2d 387, 394 (2d Cir. 1979) ("The definition of 'enterprise' is a list beginning with the word 'includes.' This indicates that the list is not exhaustive but merely illustrative."). Accordingly, Western Union potentially could be a debt collector under § 1788.2(c) even though the Speedpay service does not qualify as a form of "collection media."

But the Court reiterates and emphasizes that Plaintiff has provided no other argument to support her contention that Western Union is a debt collector under the Rosenthal Act. Plaintiff simply argues that Western Union is a debt collector because the Speedpay service is a "medium" that was used "in connection with the collection of consumer debts." *See* Doc. 34 at 12-13. The Court further reiterates and emphasizes that Plaintiff has provided no authority to support this contention beyond pointing to a few dictionary definitions of the word "media." *See id.* Plaintiff has provided no authority to support her position, and the Court cannot find any that remotely supports it in the text, legislative history, or case law interpreting the Rosenthal Act.

Given that absence of authority, the Court declines to adopt Plaintiff's overly strict, literal interpretation of "collection media" as used in § 1788.2(c).[5] If the Court were to accept Plaintiff's interpretation, the list of what could be considered "collection media" and thus who could be considered a "debt collector" under the Rosenthal Act would be expanded significantly. The logical extension of Plaintiff's position is that anyone who provides (or assists in providing) the means for a debtor to pay his or her debt to a creditor could face liability as a debt collector under the Rosenthal Act. It is not the role of this federal district court to extend the reach of state law, particularly without any applicable authority. Accordingly, Western Union's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Western Union's motion to dismiss (Doc. 31) is GRANTED WITHOUT LEAVE TO AMEND. Western Union is DISMISSED from this suit with prejudice.

IT IS SO ORDERED.

Dated:  __December 10, 2015__          ____/s/ Lawrence J. O'Neill____
                                                          UNITED STATES DISTRICT JUDGE

---

[5] Because Plaintiff asserts that "the definitions of 'debt collector' under the Rosenthal Act and the federal FDCPA are completely different, and so cases interpreting the federal act are neither controlling nor persuasive on this issue," Doc. 34 at 14-15, the Court need not address any FDCPA cases or whether Western Union qualifies as a debt collector under the FDCPA.

7