# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **APRIL LINDBLOM,** | **1:15-cv-990-LJO-BAM** |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. 53)** |
| **v.** | |
| **SANTANDER CONSUMER USA, INC.,** | |
| **Defendant.** | |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of Chief Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

1

## II. INTRODUCTION

Plaintiff April Lindblom brings this proposed class action against Defendant Santander

Consumer USA, Inc. ("Santander") for alleged violations of the federal Fair Debt Collection Practices

Act ("the FDCPA"), 15 U.S.C. §§ 1692 et seq., and California's Rosenthal Fair Debt Collection

Practices Act ("the Rosenthal Act" or "the Act")), California Civil Code §§ 1788 et seq., associated with

the fees former Defendant Western Union[1] charged borrowers when making payments on loans to

Santander by phone or internet.[2] Doc. 27, First Amended Complaint ("FAC"), at ¶ 2. Santander moves

for judgment on the pleadings on Plaintiff's Rosenthal Act claim on the ground that Plaintiff does not

state a claim because Santander's conduct did not violate the Act. *See* Doc. 53 at 1-2.

The Court finds it appropriate to rule on the motion without oral argument. *See* Local Rule

230(g); Doc. 36. For the following reasons, the Court DENIES the motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

The facts of this case are few and straightforward. Plaintiff purchased a car, which she financed

with a loan that Santander eventually began to service. FAC at ¶¶ 1-2. Plaintiff made payments on the

loan by phone and online through Western Union's "Speedpay" service. *Id.* at ¶ 12. To do so, Plaintiff

was required to pay a fee to Western Union. *Id.* at ¶ 14. Plaintiff alleges Western Union then remitted

most of the Speedpay fee it collected to Santander. *Id.* at ¶¶ 2, 14.

Plaintiff alleges that, in doing so, Defendants created a "partnership," the purpose of which is to

help Santander increase its profits by charging the customer the Speedpay fee and splitting the proceeds.

*Id.* at ¶ 13. Plaintiff asserts this fee-sharing agreement violated the FDCPA and the Rosenthal Act. *See*

---

[1] The Court dismissed Western Union from this case with prejudice. *See* Doc. 43; *Lindblom v. Santander Consumer USA, Inc.*, No. 15-cv-990-LJO-BAM, 2015 WL 9481547 (E.D. Cal. Dec. 10, 2015).

[2] Plaintiff also asserts a claim against Santander under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227 et seq., which Santander does not challenge.

[3] The background facts are derived from the complaint, which the Court accepts as true for purposes of this motion. *See Lazy Y. Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

*id.* at ¶¶ 2, 12, 13, 24, 27. Specifically, Plaintiff asserts that Santander violated § 1692f(1) of the FDCPA and, in turn, violated § 1788.17 of the Rosenthal Act, "which prohibits any entity covered by the Rosenthal [Act] from violating the [FDCPA]." *Id.* at ¶ 27. Plaintiff also alleges Defendants' fee-charging-and-splitting arrangement independently violated the Rosenthal Act "each and every time Western Union charged the Speedpay fee . . . and shared or 'kicked back' a portion of that fee to any entity defined as a debt collector by the Rosenthal [Act]." *Id.* at ¶ 28.

On behalf of a putative class, Plaintiff brings, among others, a claim against Santander for violation of the Rosenthal Act, premised on Santander's alleged violation of § 1692f(1). *See* FAC at 9-11. Santander moves for judgment on the claim, arguing that Plaintiff's allegations, even if true, do not provide any basis to subject Santander to liability under the Rosenthal Act. Doc. 53-1 at 2. Specifically, Santander argues it is not liable under the Rosenthal Act because (1) the Act does not apply because the Speedpay fee is not a "debt" under the Act and (2) the alleged fee-sharing arrangement does not violate § 1692f(1). *Id.* at 5-12.

### III. STANDARD OF DECISION

Federal Rule of Civil Procedure 12(c) permits a party to seek judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." "A motion for judgment on the pleadings should be granted where it appears the moving party is entitled to judgment as a matter of law." *Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003). A "judgment on the pleadings is appropriate when, even if all allegations in the complaint are true, the moving party is entitled to judgment as a matter of law." *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir.1993).

"A judgment on the pleadings is a decision on the merits." *3550 Stevens Creek Assocs. v. Barclays Bank of California*, 915 F.2d 1355, 1356 (9th Cir.1990). A Fed. R. Civ. P. 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam). "[T]he central issue is whether, in light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417,420 (5th Cir. 2001). "[A]ll allegations of fact of the

opposing party are accepted as true." *Austad v. United States*, 386 F.2d 147, 149 (9th Cir. 1967). Thus, a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is "functionally identical" to a motion to dismiss under Rule 12(b)(6). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

Like a Rule 12(b)(6) motion to dismiss, a Rule 12(c) motion challenges the legal sufficiency of an opposing party's pleadings. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and quotations omitted). "While a complaint . . . does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitations of the elements of a cause of action will not do." *Id.* at 1964.

## IV. DISCUSSION

### A. Legal Background.

The Rosenthal Act "prohibit[s] debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." Cal. Civ. Code § 1788.1. To state a claim under the Rosenthal Act, the plaintiff must establish that (1) he/she is a "consumer," (2) who was the object of a collection activity arising from a "debt"; (3) the defendant is a "debt collector"; and (4) the defendant violated a provision of the FDCPA. *Flores v. Collection Consultants of Calif.*, No. SACV 14-771-DOC (RNBx), 2015 WL 4254032, at *4 (C.D. Cal. Mar. 20, 2015) (citations omitted). Santander contends Plaintiff cannot satisfy the second and fourth elements of a Rosenthal Act claim.

The parties dispute who bears the burden of proof on Plaintiff's Rosenthal Act claim. Plaintiff contends Santander bears the burden of establishing that the Speedpay fee is legal, whereas Santander argues Plaintiff bears the burden of establishing that the fee is not legal. *See* Doc. 53-1 at 7; Doc. 56 at

1    12. It appears that, under California law, Plaintiff bears "the burden to demonstrate why the [Speedpay]

2    fee is illegal," and Santander does not have to "'justify that it is legal for it to charge a fee for [the]

3    service.'" *Dey v. Continental Cent. Credit*, 170 Cal. App. 4th at 727 (quoting *Berryman v. Merit Prop.*

4    *Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1560 (2007)). At least two district courts within the Ninth Circuit

5    applying California law have so held in cases where the plaintiff alleged that a defendant's collection fee

6    violated § 1692f(1). *See Durham v. Continental Cent. Credit*, No. 07cv1763 BTM (WMc), 2009 WL

7    3416114, at *2 (S.D. Cal. Oct. 20, 2009) (citing *Berryman*, 152 Cal. App. 4th at 1560); *Beeks v. ALS*

8    *Lien Servs.*, No. 12-2411 FMO (PJWx), 2014 WL 7785745, at *10 (C.D. Cal. Feb. 18, 2014) (relying on

9    *Dey*, 170 Cal. App. 4th at 721, and *Berryman*, 152 Cal. App. 4th at 1560). The Court concludes these

10   courts decided the issue correctly,[4] and Plaintiff has provided no argument otherwise beyond arguing,

11   without any meaningful explanation, that *Dey* "has no applicability here." Doc. 56 at 12. Ultimately,

12   however, who bears the burden of proof is not particularly important because the resolution of

13   Santander's motion hinges on the Court's interpretation and application of § 1692f(1) to optional,

14   voluntarily paid debt collection fees—an issue no appellate court has addressed and on which district

15   courts are split.

16          **B. Whether the Speedpay Fee Is a "Debt."**

17          Santander contends Plaintiff cannot establish the second element of a Rosenthal Act claim

18   because the Speedpay fee is not a "debt" under the Act. *See* Doc. 53-1 at 5. Santander argues that

19   "[p]aying the Speedpay fee is no different from purchasing a good or service from a retailer and paying

20   for it at the point of sale." *Id.* (citing *Gouskos v. Aptos Vill. Garage, Inc.*, 94 Cal. App. 4th 754 (2001)).

21   *Gouskos*—the only authority Santander cites—does not support its position.

22          In *Gouskos*, the court held that the defendant was not a "debt collector" under the Rosenthal Act

23   because there was no underlying debt. *Id.* at 759-60. In that case, the plaintiffs sought repairs on their car

24   ─────────────────────

25   [4] The Court notes that some courts applying California law—but not mentioning *Dey* or *Berryman*—have held that debt collector-defendants bear the burden of establishing a collection fee does not violate § 1692f(1). *See, e.g.*, *Del Campo v. Am. Corrective Counsel Serv., Inc.*, 718 F. Supp. 2d 1116, 1133 (N.D. Cal. June 3, 2010) (collecting cases).

1   from the defendant. *Id.* at 757. The defendant performed the required work on the car and sent the

2   plaintiffs the bill, which the plaintiffs could not afford to pay, so the defendant retained possession of the

3   car. *Id.* at 758. For months, the parties unsuccessfully attempted to resolve the plaintiffs' outstanding

4   bill, which caused the defendant to put a lien on the car and eventually sell it in a lien sale. *Id.* The

5   plaintiffs brought, among others, a claim against the defendant for violation of the Rosenthal Act. *Id.* at

6   757.[5]

7        The Court of Appeal agreed with the trial court that the defendant was not a "debt collector"

8   under the Rosenthal Act and sustained the trial court's directed verdict for the defendant on the claim.

9   *Id.* at 759. The court observed that the Rosenthal Act only applies to transactions where the consumer

10  acquires goods or services on credit. *Id.* The plaintiffs, however, did not acquire anything from the

11  defendant because they never regained possession of their car. *Id.* at 760. Accordingly, the Rosenthal

12  Act could not apply because there was no debt created between the plaintiffs and the defendant, who

13  was not a debt collector. *Id.*

14       The same cannot be said about this case. There is no dispute that there is a debt between Plaintiff

15  and Santander or that Santander is a debt collector here. The issue is not whether the Speedpay fee is a

16  "debt" under the Rosenthal Act; the issue is whether under § 1692f(1) Santander may lawfully receive a

17  portion of the Speedpay fee when collected in connection with Plaintiff's debt payments to Santander.

18       **C. Whether the Speedpay Fee Violates § 1692f(1).**

19       Section 1692f provides in relevant part:

20       A debt collector may not use unfair or unconscionable means to collect or attempt to collect
         any debt. Without limiting the general application of the foregoing, the following conduct is
21       a violation of this section:

22       (1) The collection of any amount (including any interest, fee, charge, or expense incidental to
         the principal obligation) unless such amount is expressly authorized by the agreement
23       creating the debt or permitted by law.

24  _____

25  [5] The basis for the plaintiffs' Rosenthal Act claim is not clear; however, as discussed below, the court easily resolved the
    claim with limited analysis.

1

2

3        The Federal Trade Commission has interpreted the FDCPA to provide that, in the absence of a

4  controlling agreement, a debt collector may not collect any amount if either "(A) state law expressly

5  prohibits collection of the amount or (B) the contract does not provide for collection of the amount and

6  state law is silent." *FTC Staff Commentary on the FDCPA*, 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988).

7  Though the Ninth Circuit has not addressed the issue, three federal Courts of Appeals agree with this

8  interpretation. *See Shula v. Lawent*, 359 F.3d 489, 492-93 (7th Cir. 2004); *Pollice v. Nat'l Tax Funding,*

9  *L.P.*, 225 F.3d 379, 407-08 (3d Cir. 2000); *Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999).

        A number of district courts have addressed situations that are analogous to the one presented

10 here, with generally consistent results. In *Shami v. Nat'l Enter. Sys.*, No. 09-cv-722 (RRM) (VVP), 2010

11 WL 3824151, at *1 (E.D.N.Y. Sept. 23, 2010), the defendant-debt collector sent the plaintiff a collection

12 letter that stated, among other things, that he had the option to pay his debt by phone or online, but that

13 transaction fees would be charged if he did so. The plaintiff alleged this letter violated § 1692f(1)

14 because it was an attempt to collect an amount not authorized by the parties' contract or permitted by

15 applicable New York law. *Id.*

        The court, noting an apparent split in district court authority, found that the plaintiff had stated a

16 claim under § 1692f(1) and denied the defendant's motion to dismiss. *Id.* at *3-4. The court noted that

17 other courts had found similar fees to be permissible under the FDCPA because they were collected

18 entirely by third parties. *Id.* at *3 (discussing *Lewis v. ACB Bus. Servs., Inc.*, 911 F. Supp. 290 (S.D.

19 Ohio 1996) and *Lee v. Main Accts, Inc.*, 125 F.3d 855 (6th Cir. 1997)). The court further noted,

20 however, that another court had found that the plaintiff stated a claim against the defendant-debt

21 collector under § 1692f(1) for sending the plaintiff a collection letter that offered the option of paying

22 the debt by phone or telephone for a fee, which the court held was "incidental" to the debt. *Id.*

23 (discussing *Longo v. Law Office of Gerald E. Moore & Assocs., P.C.*, No 04 C 5759 (N.D. Ill. Feb. 3,

24 2005)).

25

1    The court agreed with the *Longo* court's interpreting § 1692f(1) to prohibit "the collection of *any*

2    fee in excess of the underlying debt unless authorized by prior agreement or state law," and concluded

3    that, at the pleading stage, it was indeterminable whether the subject transaction fees were an "attempt to

4    pass the costs of third-party charges to Plaintiff or . . . a method of obtaining increased compensation

5    through the impermissible collection of service charges in addition to the underlying debt." *Id.* at *4

6    (emphasis in original). Subsequently, however, the court granted summary judgment to the defendant

7    because the evidence revealed that the defendant had not collected any portion of the collection fees. *See*

8    *Shami v. Nat'l Enterprise Sys.*, 914 F. Supp. 2d 353, 358-59 (E.D.N.Y. 2012).

9    A number of district courts have agreed with *Shami*'s analysis. For example, *Quinteros v. MBI*

10   *Assocs., Inc.*, 999 F. Supp. 2d 434 (E.D.N.Y. 2014), is materially identical to *Shami* and explicitly

11   followed its analysis. In that case, the plaintiff alleged the defendant-debt collector's sending her a debt

12   collection notice that provided a $5.00 processing fee for any payment made over the phone violated §

13   1692f(1). *Id.* at 435. The defendant moved to dismissing, arguing that it was neither "unfair" nor

14   "unconscionable," and thus not a violation of § 1692f(1), to charge debtors a processing fee when they

15   voluntarily pay their debt over the phone. *Id.* at 438.

16   The court rejected this argument on the ground that it "cut[] against the plain language of §

17   1692f(1)." *Id.* According to the court, § 1692f(1)'s "plain instruction [provides] that the collection of

18   any amount incidental to the principal obligation, unless otherwise authorized by agreement between the

19   parties or permitted by law, violated the FDCPA." *Id.* The court reasoned "it would be anomalous to

20   conclude 'any amount' does not encompass the processing fees at issue." *Id.* at 438. The court therefore

21   found the plaintiff had stated a claim under § 1692f(1) because the $5.00 processing fee was

22   "incidental" to the principal obligation and the defendant did not argue the fee was otherwise

23   permissible under the parties' agreement or New York law. *Id.* at 439 (citing *Shami*, 2010 WL 3824151,

24   at *2-4).

25   *Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568 (E.D.N.Y. 2015), is materially

1   indistinguishable from *Quinteros*. As the court observed, both cases "involved the same defendant and

2   the exact same claim raised." *Id.* at 580. The court denied the defendant's cross-motion for summary

3   judgment on the plaintiff's § 1692f(1) claim, reasoning that the subject $5.00 processing fee was an

4   "amount" under § 1692f(1) and, because it was undisputed the fee was neither contractually nor

5   statutorily permissible, the defendant's "[c]ollection of this fee . . . [was] deemed a violation of §

6   1692f[(1)]." *Id.* at 582. Accordingly, the court granted the plaintiff's cross-motion for summary

7   judgment on her § 1692f(1) claim. *Id.* at 583.

8          In *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1019 (E.D. Mo. July 17, 2015), the court

9   explicitly concurred with *Shami*, *Quinteros*, and *Campbell*. As in those cases, *Weast* concerned whether

10  the defendant-debt collector's charging and collecting a $3.00 "convenience fee" when the plaintiff-

11  debtor paid her debt violated § 1692f(1). The court, like the courts in *Shami*, *Quinteros*, and *Campbell*,

12  denied the defendant's motion to dismiss, finding that the plaintiff had stated a claim that the

13  convenience fee violated § 1692f(1). *Id.* at 1021; *see also Muhammad v. PNC Bank, N.A.*, No. 2:15-cv-

14  16190, 2016 WL 815289, at *3 (S.D. W. Va. Feb. 29, 2016) (following *Quinteros*).

15         Another court followed the lead of these courts approximately one month ago. *See Wittman v.*

16  *CB1, Inc.*, CV 15-105-BLG-SPW-CSO, 2016 WL 1411348 (D. Mont. Apr. 8, 2016). In that case, the

17  court considered whether the defendant's charging a 2.5% surcharge on any payment made by debit or

18  credit card violated § 1692f(1) as a prohibited "incidental" fee. *Id.* at *1. The court, following "[t]he

19  majority of courts [that] have found that similar transaction fees are incidental to the principal

20  obligation," concluded that it did. *Id.* at *4. The court noted that the only court to conclude otherwise

21  was the Central District of California in *Flores*, 2015 WL 4254032.

22         *Flores*, similar to the cases discussed above and this one, involved whether the defendant's

23  charging $5.00 transaction fee for debt payments optionally and voluntarily made by credit card violated

24  § 1692f(1). *Id.* at *8. The court concluded that it did not, reasoning that its

25

9

1
2
3

conclusion is in line with the intentions of the statute. Section 1692f seeks to prevent unfair or unconscionable methods of collecting a debt. Plaintiff has made no argument that this practice was inherently unfair or unconscionable . . . . Discouraging debt collectors from offering the additional option for a method of payment does not further the purposes of the FDCPA, and it would seem unfair or inconvenient to many debtors to be deprived of the opportunity to pay by credit card as a result of ban on an opt-in fee to cover costs.

4

*Id.* at \*10.

5
6

        The problem with this analysis is that it assumes courts have discretion to determine whether

7

charging a debtor an unauthorized fee is "unfair or unconscionable." Contrary to the *Lopez* court's

8

suggestion, the Court need not assess whether Santander's alleged collection of the Speedpay fee is

9

"unfair" or "unconscionable" because Congress has already made that determination. As the court in

10

*Quinteros* explained:

11
12
13
14

        Regardless of the exact meaning of "unfair or unconscionable," the FDCPA explicitly prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C § 1692f(1) (emphasis added). Therefore, it is immaterial that a five-dollar transactional fee was not among the particular, admittedly more egregious examples listed in the legislative history accompanying passage of the FDCPA. What matters is § 1692f(1)'s plain instruction that the collection of any amount incidental to the principal obligation, unless otherwise authorized by agreement between the parties or permitted by law, violates the FDCPA.

15

*Quinteros*, 999 F. Supp. 2d at 438.

16
17
18
19

        The Court further disagrees with the *Lopez* court's determination that the at-issue fee could not violate § 1692f(1) because it was not "incidental" to the plaintiff's debt. 2015 WL 4254032, at \*10. Whether a fee is "incidental to the principal obligation" is not dispositive. As the *Campbell* court observed:

20
21
22
23

        By its terms, § 1692f(1) prohibits the collection of *any* amount which is not expressly authorized by the agreement creating the debt or permitted by law, *including* any interest, fee, charge, or expense incidental to the principal obligation. Accordingly, there is no need to consider whether the $5.00 processing fee is "incidental to the principal obligation." The $5.00 is an "amount," and it is undisputed that the processing fee was neither contractually authorized nor permitted by statute.

24

98 F. Supp. 3d at 582 (emphasis in original). The Court therefore need not determine whether the

25

Speedpay fee is "incidental" to Plaintiff's debt. "The only inquiry under § 1692f(1) is whether the

10

1    amount collected was expressly authorized by the agreement creating the debt or permitted by law."

2    *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011).

3         Thus, "whether [the Speedpay] charges are permissible within the meaning of the FDCPA turns

4    on California law" because neither party suggests there is a controlling agreement between the parties.

5    *See Dey*, 170 Cal. App. 4th at 727 (citation, quotation marks, and emphasis omitted); *see also Riding v.*

6    *Cach LLC*, 992 F. Supp. 2d 987, 997-98 (C.D. Cal. 2014) ("Under § 1692f(1), where parties have not

7    expressly agreed on charges to be collected with respect to a debt, state law determines whether

8    additional charges are permitted."). Santander does not point to any California law that permits the fee,

9    but argues an opinion of the California Attorney General concerning credit card issuers supports its

10   contention that the fee was permissible. *See* Doc. 53-1 at 19 (citing 85 Cal. Op. Att'y Gen. 215, 2002

11   WL 31440180 (2002)). Specifically, Santander quotes the following from the opinion to support its

12   position:

13        Charging a fee for a special payment option that may benefit the cardholder, where *the fee is set
          forth in the credit card agreement and* the cardholder is free to choose or reject the option, would
14        not come within the provisions of the Act or its federal counterpart which are directed at "unfair
          or deceptive" collection practices, particularly where the fee covers an additional cost incurred
15        by the creditor.

16   85 Cal. Op. Att'y Gen. 215, 2002 WL 31440180, at *4 (emphasis added). Santander curiously omits

17   from its brief the italicized portion. *See* Doc. 53-1 at 10. The opinion notes that because "a creditor is

18   prohibited by federal law from charging a fee that is not 'expressly authorized by the agreement creating

19   the debt or permitted by law' . . . [c]harging a fee that is *expressly authorized by the credit card*

20   *agreement* would be in compliance with the federal law and therefore permissible under [the Rosenthal

21   Act]." *Id.* at *3 (quoting § 1692f(1) (emphasis added)). The opinion concludes that "[a] financial

22   institution that issues credit cards may charge a cardholder a service fee . . . *if charging the fee is*

23   *authorized in the credit card agreement.*" *Id.* at *4 (emphasis added). Simply put, the opinion provides

24   no support for Santander's position that the Speedpay fee was permissible under California law. If

25   anything, the opinion directly undermines Santander's position.

11

1       At this stage of the litigation, the Court must assume the truth of Plaintiff's allegations.

2   Following the lead of the overwhelming majority of other courts, the Court finds that Plaintiff has

3   plausibly alleged Santander's collecting a portion of the Speedpay fee violated § 1692f(1). However, the

4   Court agrees with Plaintiff that, like in *Shami*, if it turns out Santander did not collect any portion of the

5   Speedpay fee, her § 1692f(1) claim fails. *See* Doc. 56 at 9-10; *Wittman*, 2016 WL 1411348, at \*4

6   ("[M]any of the courts that found similar fees were incidental to the principal obligation did note that the

7   permissibility of the fee under the FDCPA ultimately turns on whether or not the debt collector retains

8   any portion of the fee."). The Court expects Plaintiff will honor that representation to Santander and the

9   Court.

10                            **V. <u>CONCLUSION AND ORDER</u>**

11      For the foregoing reasons, Santander's motion for judgment on the pleadings is DENIED.

12

13
    IT IS SO ORDERED.

14
        Dated:    **May 9, 2016**              _____/s/ Lawrence J. O'Neill_____
15                                             UNITED STATES CHIEF DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25