Davis & Norris, LLP
John E. Norris
2154 Highland Avenue South
Birmingham, Alabama 35205
Telephone: 205.930.9900
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| **APRIL LINDBLOM**, individually and on behalf of all others similarly situated, | Case No. 1:15-CV-00990-LJO-BAM |
| **Plaintiff**, | **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| v. | **Hon. Barbara A. McAuliffe** |
| **SANTANDER CONSUMER USA, INC.,** | |
| **Defendant.** | |

PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION

1

# TABLE OF CONTENTS

2

3

I.    INTRODUCTION ................................................................................................1

4

II.   FACTUAL BACKGROUND ...........................................................................2

5

6

A.   Facts Common to all Members of the Class ................................................2

7

B.   Facts Applicable to Plaintiff April Lindblom ...............................................3

8

C.   The Proposed Class .......................................................................................3

9

III.  The Proposed Class Meets all Requirements of Rule 23 ................................4

10

11

A.   The Ninth Circuit has Rejected a Separate Administrative Feasibility
     Prerequisite ..................................................................................................5

12

13

B.   The Class Satisfies Rule 23(a)'s Four Requirements ...................................6

14

i.   The Class is sufficiently numerous ...............................................7

15

16

ii.  Classwide resolution will provide uniform answers to common
     questions of both law and fact ......................................................8

17

18

iii. Plaintiff's April Lindblom's claims are typical ............................9

19

iv.  Plaintiff and her counsel will fairly and adequately represent the
     interests of the Class .....................................................................10

20

21

C.   The Class Satisfies the Requirements of Rules 23(b)(2) and (b)(3) ...........11

22

i.   Rule 23(b)(2) is satisfied ..............................................................11

23

ii.  Rule 23(b)(3) is also satisfied.......................................................12

24

25

1.   Issues common to all members of the Class predominate over
     individualized issues. ...................................................................13

26

27

2.    A class action represents the superior means of adjudicating this controversy ............................................................................ 14

IV.   CONCLUSION ............................................................................................ 16

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

Amchem Prods. Inc. v. Windsor, 521 U.S. 591 (1997)................................................12

4

5

Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184 (2013) ......................5

6

Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1123 (9th Cir. 2017) ................4, 5, 6

7

Carnegie v. Household Int'l, Inc., 376 F.3d 656 (7th Cir. 2004) .................................15

8

Criddell v. Premier Healthcare Services, LLC, No. CV 16-5842-R, 2017 WL 2079653 at *2
    (C.D. Cal. Feb. 9, 2017) ...................................................................................7

9

10

EEOC v. Kovacevic 5" Farms, No. CV-F-06-165, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19,
    2007).................................................................................................................7

11

12

Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974) ....................................................15

13

Ellis v. Costco Wholesale Corp., 657 F.3d 970 (9th Cir. 2011) .....................................5

14

15

Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147 (1982)....................................9

16

Greko v. Diesel U.S.A., Inc., 277 F.R.D. 419, 425 (N.D. Cal. 2011) ............................7

17

Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998)................................9, 10, 12

18

Hanon v. Dataproducts Corp., 976 F.2d 497 (9th Cir. 1992) ........................................9

19

Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (9th Cir. 1964)...................7

20

Holloway v. Full Spectrum Lending,
    No. 06-5975, 2007 WL 7698843 (C.D. Cal. Jun. 26, 2007) ...............................14

21

22

In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454 (9th Cir.), as amended (2000)..........10

23

Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581 (9th Cir. 2012) ..................... 12-13

24

McCluskey v. Trustees of Red Dot Corp. Emp. Stock Ownership Plan & Trust,
    268 F.R.D. 670 (W.D. Wash. 2010)....................................................................7

25

26

Murray v. Fin. Visions, Inc., No. 07-2578, 2008 WL 4850328 (D. Ariz. Nov. 7, 2008) ............12

27

Murray v. GMAC Mortg. Corp., 434 F.3d 948 (7th Cir. 2006) ..................................................14

Parra v. Bashas', Inc., 536 F.3d 975 (9th Cir. 2008) ................................................................7, 8

Rannis v. Recchia, 280 Fed. Appx 646, 651 (9th Cir. 2010) .......................................................7

Santoro v. Aargon Agency, Inc., 252 F.R.D. 675 (D. Nev. 2008) ................................................15

Schwartz v. Harp, 108 F.R.D. 279 (C.D. Cal.1985)......................................................................9

Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301 (9th Cir. 1990) ....................15

Valentino v. Carter-Wallace, Inc., 97 F.3d 1227 (9th Cir. 1996)................................................13

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011) ................................................5, 8, 13

Walters v. Reno, 145 F.3d 1032 (9th Cir. 1998).........................................................................11

Williams v. Mohawk Indus., Inc., 568 F.3d 1350 (11th Cir. 2009).......................................15-16

Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168 (9th Cir. 2010)....................13, 14, 15

Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180,
    opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001) ................................15

**Statutes and Rules**

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq........................................................1

Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 et seq .................... passim

Fed. R. Civ. P. 23............................................................................................................. passim

**Other Authorities**

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002)...............................7

William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2011) ...........................................15

1    **I.    INTRODUCTION**

2        Plaintiff April Lindblom submits this brief in support of her motion for class certification

3    of their claims brought on their behalf and on behalf of a class of similarly-situated individuals

4    arising under the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil

5    Code § 1788 et seq.

6        Rule 23 of the Federal Rules of Civil Procedure allows for the certification of a class when

7    specified prerequisites have been met. The proposed class in this case meets each of these

8    prerequisites. Santander has engaged in a uniform course of conduct with respect to hundreds of

9    thousands of customers in California. From those customers, it has collected millions in unlawful

10   "convenience fees," which it has charged for paying over the phone or online. These fees are

11   neither allowed by state law nor authorized under the retail installment sales contracts between

12   Santander and the members of the Class.

13       As the Court wrote in its order (Doc. 71) denying defendant Santander Consumer USA's

14   motion for judgment on the pleadings (Doc. 53), the facts of this case are "few and

15   straightforward." The Lindbloms borrowed money from Santander, an automobile finance

16   company, to purchase an automobile. (Ex. E). On a number of occasions, the Lindbloms made

17   payments on this lone over the internet, an occasionally over the telephone. (Ex. D). Santander

18   often encouraged such forms of payment to allow customers to pay immediately and avoid late

19   charges. In order to make these payments, however, the Lindbloms and similarly-situated class

20   members were charged a fee of $10.95 per transaction, ostensibly by a third-party payment

21   processor, former defendant Western Union, for their payment processing service known as

22   Speedpay.

23       The Speedpay fees that Santander collected are unlawful with respect to each member of

24   the Class because they violate the Rosenthal Fair Debt Collection Practices Act ("Rosenthal

25   FDCPA"). Cal. Civ. Code §§ 1788 et seq. The Rosenthal FDCPA requires every covered entity,

26   including Santander, to comply with the provision of the Federal Fair Debt Collection Practices

27

Act ("FDCPA"). The FDCPA, in turn, prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Santander moved for judgment on the pleadings (Doc. 53), arguing that charging such a fee does not violate the FDCPA, and hence does not violate the Rosenthal Act. The Court denied Santander's motion (Doc. 71) based on plaintiffs' allegation that Santander itself retained part of the fee, which distinguishes this case from those holding that a pure third-party fee wholly retained by the third party does not violate the Rosenthal Act.  The Court held:

> Following the lead of the overwhelming majority of other courts, the Court finds that Plaintiff has plausibly alleged Santander's collecting a portion of the Speedpay fee violated § 1692f(1). However, the Court agrees with Plaintiff that, like in Shami, if it turns out Santander did not collect any portion of the Speedpay fee, her § 1692f(1) claim fails. See Doc. 56 at 9-10; Wittman, 2016 WL 1411348, at *4 ("[M]any of the courts that found similar fees were incidental to the principal obligation did note that the permissibility of the fee under the FDCPA ultimately turns on whether or not the debt collector retains any portion of the fee."). The Court expects Plaintiff will honor that representation to Santander and the Court.

(Doc. 71, at 12).

After discovery, plaintiffs are now in a position to honor their representation to Santander and the Court.  For a few months at the beginning of the class period, Western Union remitted most of the fee back to Santander, with Western Union retaining, on a sliding scale based on monthly volume, only from 50¢ to $2.30 of the $10.95 fee. (Ex. B at 36-37). For most of the class period, however, from May 13, 2014 to present, the contract between Santander and Western Union lets Santander retain all but 10¢ of the $10.95 fee for credit card and bank ACH transactions.  (Ex. B at 41-42; Ex. I). This means that for each $10.95 fee charged to plaintiff and the class members for credit card and bank ACH transactions, Santander keeps all but a dime, or **over 99 percent** of the fee. (Ex. B at 41-42). In the case of pinless debit car Speedpay transactions, Santander remits $2.00 back to Western Union, retaining **over 80 percent** of the fee. (Id.)

1    This case involves the straightforward application of Rule 23 to a single legal claim

2 concerning Santander's uniform illegal conduct that affects each member of the class uniformly.

3 In these circumstances, the Court should certify a class pursuant to Rule 23(b)(3), because it is

4 certainly the case that "questions of law or fact common to class members predominate over any

5 questions affecting only individual members, and that a class action is superior to other available

6 methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. Proc. 23(b)(3).

7    **II.    FACTUAL BACKGROUND**

8        **A.    Common Facts Applicable to All Members of the Classes.**

9        Defendant Santander is one of the largest automobile financing companies in the country,

10 especially among subprime loans. Santander's website states that it has "more than two million

11 customers"    and    a    portfolio    of    more    than    $40    billion.    Overview,

12 www.santanderconsumerusa.com/about/overview (last accessed October 10, 2017). Santander

13 allows these customers to pay by phone and over the internet, charging a fee, typically of $10.95,

14 for doing so. (Ex. A).

15       Between the beginning of the class period (December 5, 2013) and May 5, 2014, the division

16 of the Speedpay fees between Santander and Western Union was governed by Amendment No. 7

17 to the Speedpay Master Services Agreement. (Ex. J). Under that agreement, Western Union would

18 remit between $0.50 and $2.30 of the $10.95 fee to Santander, depending on the volume of fees

19 paid in that particular month. (Ex. J). As Wayne Nightengale, defendant's rule 30(b)(6)

20 representative testified:

21

22    Q.    (By Mr. Norris)  And so for – as an example, SPI, Speedpay, Inc. [a
     Western Union subsidiary that operated the Speedpay service], if there was a
23   month where it – where there were credit card payments under the Speedpay fee
     of somewhere between 1 and 500 in that particular month, then SPI would bill
24   $2.30 per transaction to Santander.  All right?

25    A.    Yes.

26

27

Plaintiff's Motion for Class Certification         3

Q.    And Santander would then have an obligation under this agreement to pay 2.30 per transaction to SPI?

A.    Yes.

Q.    All right.  The remainder of the $10.95 fee in this scenario that we were just now talking about that was remitted to Santander would be retained by Santander, correct?

A.    Yes.

(Ex. B at 37).

This arrangement changed shortly after the beginning of the class period. Beginning on May 5, 2014 to the present, the Speedpay fee division was governed by Amendment No. 8 to the Speedpay Master Services Agreement.  (Tab. 1, Nightengale Depo. Ex. 9).  Under that agreement, for credit card and bank ACH transactions, the fee retained by Western Union/SPI was drastically reduced to $0.10 per transaction, with Santander retaining $10.85 of each fee charged. (Id.). On pinless debit customer payments, Western Union gets $2.00 and Santander keeps $8.95.  Santander testified through its Rule 30(b)(6) representative as follows:

Q.    All right.  And so for the period of May 13, 2014, to the present, if you look at – on page 239, again, Paragraph 5, the – if the customer pays using credit card or a bank ACH, then the amount that SPI bills and later gets from Santander per transaction is 10 cents.  All right?

A.    In certain states, yes.

Q.    And one of those states would be California?

A.    Yes.

Q.    Okay.  So in California as of today every time – at the end of all of the transactions the billing and all of that stuff, that when – and everything settles, Santander collects a $10.95 fee on credit card and bank ACH transactions and remits 10 – and 10 cents of that back to Western Union, correct?

A.    That's the only portion that is sent to Western Union, Speedpay.

Q.    And the remaining $10.85 is retained by Santander on a per-transaction basis currently in California?

1

A.     Yes.

2

Q.     Okay.  Now, it's different if you're using an online pinless debit
customer payment.  In that circumstance at the end of the day after all the billing

3

and the transactions have settled, Santander remits $2 of the $10.95 fee per
transaction to Speedpay, Inc.?

4

5

A.     Correct.

6

Q.     And retains the rest of the $10.95 fee?

7

A.     Yes.

8

(Ex. B at 41-43).

9

More than a quarter million of the customer accounts that have been charged these fees by

10

Santander are those of customers residing in California. (Ex. C). Each of these customers paid at

11

least one unlawful fee to Santander for paying online or over the phone. During the class period,

12

Santander has profited from over $21 million in Speedpay fees, equating to approximately

13

2,000,000 individual fees charged to over 258,000 Santander customers.

14

These convenience fees that Santander imposed and collected were never expressly

15

authorized by the contracts that class members signed. Defendant not only imposed and collected

16

arbitrary fees from Plaintiffs and members of the Class but also frequently, persistently, and

17

intentionally violated the Rosenthal FDCPA. Furthermore, Santander never disclosed to customers

18

who paid the fee that it retained any portion thereof, much less that it retained all but a dime.

19

Santander maintains records for all members of this class. As shown in the following section,

20

these records have been produced with respect to the named Plaintiffs and demonstrate that both

21

the fact of paying the fees and the number of fees paid are easily discernible from the payment

22

histories of class members. (See, e.g., Ex. D). These records are maintained uniformly by

23

Santander and similar documents have been produced in numerous disputes throughout the

24

country.

25

26

27

**B.    Facts Applicable to Plaintiff April Lindblom.**

Plaintiffs April and Timothy Lindblom[1] are unsophisticated consumers who purchased a 2006 Jeep Liberty from Michael Automotive Center on March 11, 2007. (Ex. E, SCUSA-Lindblom 000006). The Lindbloms purchased this vehicle with a loan from Drive Financial Services, which ultimately, through a merger, was renamed Santander Consumer USA, defendant in this case. The purchase of the vehicle with this loan was a consumer credit transaction, as that term is defined in the Rosenthal FDCPA. See Cal. Civ. Code § 1788.2.

The Lindbloms made payments on the loan and owned the car until Santander repossessed it in 2014, after the Lindbloms had made over 65 of what was originally scheduled to be 59 monthly payments. (Ex. D). During the life of the loan, like thousands of other Santander customers, April Lindblom was regularly charged a fee for paying online or over the phone. The payment history reveals that such a fee was charged on more than 40 occasions. (Ex. D; See Ex. F. April. Lindblom Deposition Excerpt 111.) On approximately two occasions, the fee was waived. (Ex. D; see also Ex. G, April  Lindblom Deposition Excerpt 79-82). April Lindblom testified that Santander pressured her to pay over the phone and online on specific dates to avoid repossession. (Ex. H, A, Lindblom Deposition Excerpt 56-57).

Nothing in the Lindbloms' loan contract authorized or mentioned the $10.95 fee. There is no evidence that any loan contract between Santander and any member of the putative class authorizes or mentions the Speedpay fee. Counsel's law firm has reviewed hundreds of Santander loan agreements and has never seen one with such an authorization. Santander has never produced any loan contracts for any of its customers that authorize or mention the speedpay fee.

Each of the more than forty times Ms. Lindblom paid this fee, Plaintiff paid and lost money above and beyond what she legally owed pursuant to her contract with Santander, just like thousands of other customers. Santander, on the other hand, profited each time. As explained above, the fee charged by Santander far exceeded any pass-through costs Santander paid to

---

[1] Only April Lindblom moves the Court to certify her as class representative.

Western Union, and Santander retained the entire fee charged except for a single dime. (Ex. B at 41-42).

###    C.    The Proposed Class.

Plaintiff April Lindblom seeks certification of a single statewide California class:

> All individuals in the state of California, who, during the applicable limitations period[2], paid a convenience fee through Western Union's Speedpay service in connection with any consumer loan held and/or serviced by Santander. All employees of the Court and Plaintiff's counsel are excluded from this class.

As demonstrated below, the proposed Class meets each of Rule 23's prerequisites, and this motion should be granted.

## III.    The Proposed Class Meets all Requirements of Rule 23.

This court should certify the proposed Class because it satisfies each of the requirements set forth in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and satisfies at least one of the requirements found in Rule 23(b). See Fed. R. Civ. Proc. 23(a),(b). In this case, Plaintiffs seek certification under Rule 23(b)(2) and 23(b)(3). In order to certify a class under Rule 23(b)(2), Plaintiffs must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate . . . " Fed. R. Civ. Proc. 23(b)(2). Under Rule 23(b)(3), common questions of law or fact must predominate over questions affecting only individual members, and the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. 23(b)(3).

In addition to the requirements spelled out in Rule 23, some courts have required that "class representatives must demonstrate that there is an 'administratively feasible' means of identifying absent class members." Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1123 (9th Cir. 2017). In Briseno, the Ninth Circuit explicitly rejected the idea of an additional requirement of this sort,

---

[2] This action was originally filed in the Northern District of Alabama on October 30, 2014. Therefore, since the Rosenthal FDCPA has a one-year statute of limitations, the beginning date of the class is October 30, 2013.

noting that "Rule 23's enumerated criteria already address the policy concerns that have motivated some courts to adopt a separate administrative feasibility requirement." Id. The proposed class definition sets objective criteria for determining membership and, as will be shown below, presents no problems of administrative feasibility.

The Court, in determining class certification, should not inquire into the merits of Plaintiffs' claims. See Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1194-95 (2013). Indeed, because "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage[,]" "a district court has no authority to conduct a preliminary inquiry into the merits of a suit at class certification unless it is necessary to determine the propriety of certification . . . ." Id. (citing Wal-Mart v. Dukes, 131 S. Ct. 2541, 2552, n. 6 (2011) (internal citations omitted). In other words, "Rule 23 does not authorize a preliminary inquiry into the merits of the suit for purposes other than determining whether certification was proper." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 983, n.8 (9th Cir. 2011).

The proposed Class satisfies Rule 23's requirements. To protect the rights of those who have no wherewithal, power, knowledge, or practical means of individually adjudicating their claims, this Court should grant Plaintiff's motion for class certification.

A.      **The Ninth Circuit Has Rejected a Separate Administrative Feasibility Prerequisite.**

The Ninth Circuit recently determined that "the language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification." Briseno, 844 F.3d at 1126. The Court of Appeals called such a requirement "unnecessary" because the "enumerated criteria" of Rule 23 already ensure that a certified class must be manageable as a class. Id. at 1127. In rejecting the Third Circuit's "ascertainability" criterion, which calls for an independent feasibility prerequisite, the Court stated that Rule 23 specifically requires that the court balance any difficulties in managing a class action with the benefits of class adjudication, whereas an

independent requirement would require the court to evaluate those difficulties in a vacuum. Id. at 1128.

The proposed class presents none of the manageability difficulties addressed in Briseno. The definition is both objective and precise because liability will track Santander's common conduct toward all class members. Santander had a standard policy of imposing and collecting convenience fees from its customers and retaining all but a dime of those fees for its own profit. The only questions for determining class membership are whether the debtor lives in California, and whether he or she paid the convenience fee during the relevant period.

These questions can be answered at a glance with Santander's own records. These records contain the timing and amounts of convenience fees paid, the identities and residential addresses of the debtors who paid such fees, the nature of the properties securing the debts, the terms of each debtors' contract, and the timing and history of each debtors' loan payments. Identification and management of the class is entirely feasible for the Court and the parties.

**B.      The Class Satisfies Rule 23(a)'s Four Requirements.**

The Court should find that Rule 23(a)'s four requirements are satisfied because the proposed Class (1) is sufficiently numerous, (2) raises common questions of law and fact, (3) features a proposed representative whose claims are typical of those of each member of the Class, and (4) is adequately represented by the named Plaintiff and counsel. Fed. R. Civ. P. 23(a). The Class consists of thousands of similarly situated persons whose common experiences relating to Santander's convenience fees can be uniformly and collectively resolved through a single action. As these common issues directly track Plaintiff April Lindblom's own facts and claims, her class certification motion should be granted.

**i.   The Class is sufficiently numerous.**

For a class to be certified, it must satisfy Rule 23's requirement that "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."

1    Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964). "There is no

2    magic number for numerosity …" Criddell v. Premier Healthcare Services, LLC, No. CV 16-5842-

3    R, 2017 WL 2079653 at *2 (C.D. Cal. Feb. 9, 2017). However, "[i]n general, courts find the

4    requirement satisfied when a class includes at least 40 members." Rannis v. Recchia, 280 Fed.

5    Appx 646, 651 (9th Cir. 2010) (citing EEOC v. Kovacevic 5" Farms, No. CV-F-06-165, 2007 WL

6    1174444, at *21 (E.D. Cal. Apr. 19, 2007). The class members are also "geographically dispersed

7    throughout California, which favors class treatment." Greko v. Diesel U.S.A., Inc., 277 F.R.D. 419,

8    425 (N.D. Cal. 2011).

9         The numerosity of the proposed class cannot seriously be questioned. In discovery,

10    Santander produced a spreadsheet showing that over 258,000 customers had paid the convenience

11    fees at issue between December 5, 2013 and October 6, 2016. (Ex. C). See Alba Conte & Herbert

12    Newberg, Newberg on Class Actions § 3:5, 243–46 (4th ed. 2002) ("Class actions under the

13    amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . .

14    In such cases, the impracticability of bringing all class members before the court has been obvious,

15    and the Rule 23(a)(1) requirement has been easily met."). Likewise, the impracticability of the

16    joinder of over a quarter of million plaintiffs is obvious on its face. Accordingly, joinder is

17    impracticable and the numerosity requirement is met.

18         **ii.  Classwide resolution will provide uniform answers to common questions
19         of both law and fact.**

20         The proposed Class meet the commonality requirement because Plaintiff seeks common

21    answers to questions of law and fact that will determine Defendant's liability to her as well as

22    every other member of each of the proposed Class. These common answers turn on the existence

23    and lawfulness Santander's standardized practice of imposing and collecting convenience fees that

24    are not specifically allowed by the underlying loan. The answers will be the same for all members

25    of the Class, ensuring that all will enjoy uniform rights to recovery.

26

27

Plaintiff's Motion for Class Certification

1    Rule 23 requires that all Classes show that "there are questions of law or fact common to

2    the class." Fed. R. Civ. P. 23(a)(2). This rule is "construed permissively." Parra v. Bashas', Inc.,

3    536 F.3d 975, 978 (9th Cir. 2008). Commonality may be demonstrated when the claims of all class

4    members "depend upon a common contention," and "even a single common question will do."

5    Dukes, 131 S.Ct. at 2545, 2556; see also Parra, 536 F.3d at 978 ("[t]he existence of shared legal

6    issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled

7    with disparate legal remedies within the class").

8    The common contention must be of such a nature that it is capable of class-wide resolution,

9    and that the "determination of its truth or falsity will resolve an issue that is central to the validity

10   of each one of the claims in one stroke." Dukes, 131 S.Ct. at 2545. Moreover, the permissive

11   standard of commonality provides that "[w]here the circumstances of each particular class member

12   vary but retain a common core of factual or legal issues with the rest of the class, commonality

13   exists." Parra, 536 F.3d at 978-79.

14   The claims of Plaintiff and the members of the Class are based upon the same common

15   contention: that Defendant violated the law by imposing and collecting convenience fees from

16   Plaintiff and the members of the Class which were not authorized by the underlying contracts.

17   Defendant collected these fees systematically, and its conduct affected Plaintiff and the members

18   of the Class in the exact same manner, by subjecting them to paying additional, wrongfully-

19   imposed charges in excess of what they lawfully owed. This unlawful conduct will be proved

20   through generalized evidence, such as Santander's contracts with Western Union allowing it to

21   retain the vast majority of the fees collected, and the testimony of Santander executive Wayne

22   Nightengale that only a dime per transaction was paid to Western Union. This evidence applies

23   equally to Plaintiff and other members of the Class.

24   Defendant's conduct gives rise to several common questions of law and fact, and these

25   questions have common answers. Such common questions include whether Defendant

26   systematically imposed fees upon its customers; whether those fees violate the Rosenthal FDCPA;

27

and whether Plaintiff and the members of the Class are entitled to additional statutory damages as a result of Santander's willful and knowing conduct. The answers to all of these questions depend on Defendant's standardized course of conduct. Defendant's own records show the frequency of the fees charged, for example. (See Ex. C). In addition, as the Court discussed in its order on Santander's Motion for Judgment on the Pleadings, whether the fees violate the Rosenthal FDCPA depends in large part on whether the fee is "passed through" to a third party, or whether Santander retains it in part or in full. (Doc. 71 at 7-9). This question has a common, classwide answer, which is that Santander retains all but a dime of the fee. (Ex. B at 41-42).

The existence of these common questions and answers make it clear that Plaintiff has established the commonality requirement.

### iii. Plaintiff April Lindblom's claims are typical.

Rule 23(a)(3) provides that a representative party's claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Under the Rule's permissive standards, the representative claims need only be "reasonably co-extensive" with those of the class—not "substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citing Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal.1985)). Typicality tends to merge with commonality. Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982).

No unique factual circumstances materially distinguish Plaintiff April Lindblom's claims from those held by other members of the Class. Like everyone else included in the definitions of the Class, Plaintiff paid convenience fees in order to make routine payments on her loan, serviced or held by Santander. (Ex. D). These fees were all collected and retained (but for a dime) by Defendant Santander. (Ex. B at 41-42).

1
2
3
4
5
6
7

Like everyone else included in the definition of the Class, these convenience fees were not specifically enumerated in the contract underlying Plaintiff's consumer debt nor expressly permitted by law. Plaintiff suffered the same injury as all members of the Class in that she paid and lost money to Santander in excess of what she lawfully owed. Because Plaintiff has suffered the same injuries as all members of each of the Class, and because these injuries all result from Santander's uniform conduct, her claims will rise or fall in tandem with those of the other members of the Class. Her claims are typical.

8

### iv.  Plaintiff and her counsel will fairly and adequately represent the Class.

9
10
11
12
13
14
15
16
17
18

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether a plaintiff satisfies the adequacy factor, courts ask: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir.), as amended (2000) (citing Hanlon, 150 F.3d at 1020). "[T]he class representative must not have interests antagonistic to the unnamed class members, and [] the representative must be able to prosecute the action vigorously through qualified counsel." Id. (citation and quotation omitted). It is persuasive evidence that proposed class counsel have been found adequate in prior cases. See id.

19
20
21
22
23
24
25
26
27

Plaintiff's interests are aligned with those of the Class members, and she is committed to prosecuting her claims on a representative basis. April Lindblom has been an active participant in this case, having reviewed filings, participated in the creation of discovery responses, secured and produced documents, and sat for a deposition. Like other members of the Class, her interests lie in ensuring that Defendant's unlawful conduct does not continue in the future and that she and other members of the class recover the relief to which they are entitled. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

1   Plaintiff's counsel are well-respected members of the legal community who have extensive
2   experience in class actions of similar size, scope, and complexity as this case. (<u>See</u> Ex. H, Davis
3   Decl. ¶¶ 3-4, 6-11) Counsel have regularly engaged in complex litigation involving consumer
4   finance issues, have vigorously and competently litigated this case from its outset to the present
5   juncture, have the resources necessary to continue the litigation, and have frequently been
6   appointed lead class counsel by courts throughout the country. (<u>Id</u>.)

7   Plaintiff and her counsel have and will continue to adequately represent the Class, and
8   Rule 23's adequacy requirement is met.

9   **C.     The Class Satisfies the Requirements of Rules 23(b)(2) and (b)(3).**

10   The prerequisites of Rule 23(a) are satisfied; and those of Rules 23(b)(2) and (b)(3) are as
11   well.

12   **i.   Rule 23(b)(2) is satisfied.**

13   Rule 23(b)(2) provides that the party opposing certification must have "acted or refused to
14   act on grounds generally applicable to the class," thereby making injunctive relief appropriate.
15   Fed. R. Civ. P. 23(b)(2). "It is sufficient if class members complain of a pattern or practice that is
16   generally applicable to the class as a whole. Even if some class members have not been injured by
17   the challenged practice, a class may nevertheless be appropriate." <u>Walters v. Reno</u>, 145 F.3d 1032,
18   1047 (9th Cir. 1998).

19   Defendant Santander acted on grounds generally applicable to the Class as a whole.
20   Defendant imposed and collected identical convenience fees from all members of the class, all
21   without authority under the law or under the agreements originally creating the consumer debts.
22   Santander then retained all but a dime of those fees for its own profit. (Ex. B at 41-42). Defendant's
23   conduct did not vary significantly from Class member to Class member, and therefore final
24   injunctive relief is appropriate to protect Plaintiff and the other members of the Class from such
25   conduct in the future. Thus, Rule 23(b)(2) is satisfied.

26   **ii.   Rule 23(b)(3) is also satisfied.**

27

Plaintiff also seeks certification of the Class under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022.

Where a proposed class meets Rule 23(b)(3)'s requirements, the class action mechanism has a "practical utility . . . achiev[ing] economies of time, effort, and expense." Murray v. Fin. Visions, Inc., No. 07-2578, 2008 WL 4850328 at *4 (D. Ariz. Nov. 7, 2008); see also Fed. R. Civ. P. 23(b)(3) advisory committee's note. A case such as this—where individual recoveries for the members of the Class would be relatively small and likely not pursued absent classwide litigation—exemplifies the class action's practical utility. See Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). This Court should therefore find the requirements of Rule 23(b)(3) satisfied.

**1.    Issues common to all members of the class predominate over individualized issues.**

The predominance requirement is satisfied because the key questions at issue in this case stem from a uniform course of conduct by Santander. Defendant imposed these fees for paying online and over the phone on all Class members in a uniform fashion. Therefore, no uniquely individual concerns are at stake. The predominant questions in this litigation is whether the fees Santander charged (and retained all but a dime of) violate the Rosenthal FDCPA. This question must necessarily lead to the same answer for all members of the class. Although predominance is a more demanding standard than commonality, the predominance requirement is satisfied when a

proposed class is "sufficiently cohesive to warrant adjudication by representation." <u>Amchem</u>, 521 U.S. at 622. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." <u>Mazza v. Am. Honda Motor Co., Inc.</u>, 666 F.3d 581, 589 (9th Cir. 2012).

Here, Plaintiff has presented a single clear and unified theory of liability. Her contention that, because Santander retains all but a dime of the fee charged, it violates the Rosenthal FDCPA applies to every claim by every member of the Class. This common question predominates over the only issue affecting individual Class members, which is the number of times the fee was paid.

The answers to these questions are subject to common proof found within Defendant's own records. <u>See</u> <u>Dukes</u>, 131 S. Ct. at 2551 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."). For example, the question of whether Santander charged the fee is answered by the "Payment Channels" page of Santander's handbook. (Ex. A, Lindblom 000230). Whether an individual paid the fee can be determined from that individual's payment history. (<u>See, e.g.</u>, Ex. D). The contract between Santander and Western Union demonstrates that, on a classwide basis, Santander retained all but a dime of the fees that customers paid. (Ex. B at 41-42).

Nothing in this case will require individual proof such that class treatment would be inappropriate, and resolution of the common issues will "help achieve judicial economy." <u>See</u> <u>Valentino v. Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234 (9th Cir. 1996). Therefore, the predominance requirement of Rule 23(b)(3) is met.

> **2.     A class action represents the superior means of adjudicating this controversy.**

The proposed Class also meet Rule 23(b)(3)'s second requirement—that class resolution be "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." Id. at 1175. Moreover, the class action mechanism is superior to individual actions in consumer cases with thousands of members as "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." Holloway v. Full Spectrum Lending, No. 06-5975, 2007 WL 7698843 at *9 (C.D. Cal. Jun. 26, 2007) (citing Murray v. GMAC Mortg. Corp., 434 F.3d 948, 953 (7th Cir. 2006)).

In assessing superiority, courts examine a non-exclusive list of factors including (1) whether any related litigation has already commenced, (2) the desirability of the chosen forum, (3) the class members' interests in pursuing individual litigation, and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D); Wolin, 617 F.3d at 1175. As to the first and second factors, Plaintiff is unaware of any related litigation among class members or any difficulties as to the forum.. The third and fourth factors also weigh in favor of certification, as debtors pursuing small claims share a strong interest in combining litigation into a single action and manageability concerns are not so great as to outweigh the advantages of a class action.

In this case, each debtor paid, at most, an extra few hundred dollars in increments of $10.95. (See Ex. A, Ex. C). But in the aggregate, Santander's California customers paid, and Santander enriched itself by, millions of dollars in illegal fees. (See Ex. C, showing over 258,000 accounts charged at least one fee of $10.95). Such claims would be cost prohibitive and simply insufficient to justify the risk and cost of litigation against a large corporation such as Santander. Members of

the Class are therefore best served by pooling their resources into a single proceeding, making a class action the superior method of resolving the controversy. Therefore, this case is an ideal candidate for class treatment.

A class action would be particularly well suited for the fair and efficient adjudication of the claims of Plaintiff and the proposed Class. "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." Wolin, 617 F.3d at 1175-76 (holding class action was superior where "filing hundreds of individual lawsuits . . . could involve duplicating discovery and costs that exceed the extent of proposed class members' individual injuries"); see also Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190 (9th Cir.), opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action."). In assessing superiority, the alternative no litigation is not considered a "means of adjudicating "th[e] controversy." See, e.g., Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004) ("a class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all").

No actual or perceived manageability concerns outweigh the superiority of a class action. Manageability refers to "the whole range of practical problems that may render the class action format inappropriate for a particular suit," such as the calculation of individual damages, distribution of damages, and notice. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 164 (1974); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1304 (9th Cir. 1990). Cases that involve numerous and substantial individual issues, or varying state-law causes of action, may pose management difficulties. See Zinser, 253 F.3d at 1192. This case contains no such issues.

Manageability is a factor only if it outweighs the overall superiority of a class action. See Santoro v. Aargon Agency, Inc., 252 F.R.D. 675, 686-87 (D. Nev. 2008). Courts do not assess manageability in the abstract, but instead examine "how the problems that might occur in managing a class suit compare to the problems that would occur in managing litigation without a

1   class suit." 2 Newberg on Class Actions § 4:72; see also Williams v. Mohawk Indus., Inc., 568

2   F.3d 1350, 1358 (11th Cir. 2009) ("[W]e are not assessing whether this class action will create

3   significant management problems, but instead determining whether it will create relatively more

4   management problems than any of the alternatives.").

5      No manageability issues in this case warrant denial of certification. The claims at issue

6   arise pursuant to simple facts that may be redressed under a single state-law statute. The questions

7   that must be answered to determine Defendant's liability are not individual to members of the

8   Class, but common by virtue of Defendant's uniform and standardized course of conduct.

9      Class members have no other realistic means of pursuing their individual claims against

10  Santander, so any manageability concerns that may exist do not outweigh the superiority of a class

11  action. Plaintiffs should be permitted to combine their claims together in a single class-wide

12  proceeding, the superior method of resolving this controversy.

13  **IV.   CONCLUSION**

14     This case is appropriate for class certification. All of the prerequisites of Rule 23(a) are

15  met, along with those of Rule 23(b)(2) and (b)(3). Plaintiff, individually and on behalf of the

16  proposed Class, respectfully requests that the Court issue an order certifying the proposed class,

17  certifying April Lindblom as class representative, and certifying Davis & Norris, LLP as Class

18  Counsel.

19
20  Date: October 12, 2017                    Respectfully Submitted,

21                                            s/   Dargan M. Ware
                                              Attorney for Plaintiffs
22
23  D. Frank Davis
    John E. Norris
24  Wesley W. Barnett
    Dargan M. Ware
25  Kristan B. Rivers
    DAVIS & NORRIS, LLP
26  2154 Highland Ave. S.
    Birmingham, AL 35205
27

Plaintiff's Motion for Class Certification

Tel:   (205) 930-9900
Fax:  (205) 930-9989
fdavis@davisnorris.com
jnorris@davisnorris.com
wbarnett@davisnorris.com
dware@davisnorris.com
krivers@davisnorris.com

Benjamin P. Tryk
TRYK LAW, P.C.
7050 N. Fresno St. #210
Fresno, CA 93720
Phone: (559) 840-3240
Fax: (888) 528-5570
ben@tryklaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served on all counsel of record on October 13, 2017 through the CM/ECF Electronic Filing System of the United States District Court for the Eastern District of California.

/s/ Dargan M. Ware
One of the Attorneys for Plaintiffs