1

**MCGUIREWOODS LLP**
Marc A. Lackner (SBN 111753)

2
mlackner@mcguirewoods.com
David S. Reidy (SBN 225904)

3
dreidy@mcguirewoods.com
Anthony Q. Le (SBN 300660)

4
ale@mcguirewoods.com

5
Two Embarcadero Center
Suite 1300

6
San Francisco, CA 94111
Telephone: 415.844.9944

7
Facsimile: 415.844.9922

8
Attorneys for Defendant

9
Santander Consumer USA Inc.

10

11
**UNITED STATES DISTRICT COURT**

12
**EASTERN DISTRICT OF CALIFORNIA**

13
**FRESNO DIVISION**

14

15
APRIL LINDBLOM and TIMOTHY
LINDBLOM,

16
                    Plaintiffs,

17
v.

18
SANTANDER CONSUMER USA INC.,

19
                    Defendant.

20

21

22

23

24

25

26

27

28

Case No.: 1:15-cv-00990-BAM

**CLASS ACTION**

**DEFENDANT SANTANDER CONSUMER
USA INC.'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION**

Date: January 12, 2018
Time: 9:00 AM
Ctrm: 8

Honorable Barbara A. McAuliffe

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.      INTRODUCTION ............................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................... 3

    A.      Most of SC's California Customers Signed Contracts That Contain Arbitration and Class Waiver Provisions ............................................ 3

    B.      Plaintiff Used Speedpay 43 Times—Sometimes Avoiding Larger Late Fees—and SC Did Not Retain a Portion of the Fee in Every Instance ................... 5

    C.      SC Incurs a Net Loss on Certain Speedpay Transactions ..................... 6

    D.      Plaintiff's Rosenthal Act Claim and Class Allegations .......................... 7

III.    APPLICABLE LEGAL STANDARD ............................................................ 9

IV.     PLAINTIFF CANNOT SATISFY THE PREREQUISITES OF RULE 23(A) ................ 9

    A.      Plaintiff Cannot Serve as a Class Representative Because She Is Not a Member of the Class She Seeks to Certify .......................................... 10

    B.      Plaintiff Cannot Establish Commonality or Numerosity Because Most Class Members Are Subject to Arbitration and Class Waiver Provisions ...................... 11

    C.      Plaintiff's Rosenthal Act Claim Is Not Typical of the Class and She Is Not an Adequate Class Representative .......................................... 13

V.      PLAINTIFF CANNOT MEET THE REQUIREMENTS OF RULE 23(B) .................. 14

    A.      Plaintiff Cannot Demonstrate How Common Issues Would Predominate in a Class Trial as Required Under Rule 23(b)(3) ...................................... 15

    B.      Plaintiff's Proposed Class Is Patently Unmanageable, and Plaintiff Cannot Demonstrate Superiority Under Rule 23(b)(3) ...................................... 17

    C.      Plaintiff Has Not Established Any Entitlement to Injunctive Relief, and Her Request for Certification Under Rule 23(b)(2) Must Be Denied .......................... 19

VI.     CONCLUSION ............................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127, 1131 (9th Cir. 2011)......................................................................................19

*Amchem Prods., Inc. v. Windsor*,
    117 S.Ct. 2231, 2251 (1997) ..............................................................................................14

*AT&T Mobility LLC v. Concepcion*,
    131 S.Ct. 1740 (2011) ........................................................................................................11

*Bateman v. Am. Multi-Cinema, Inc.*,
    623 F.3d 708, 713 (9th Cir. 2010)..........................................................................9, 17, 18, 19

*Bolin v. Sears, Roebuck & Co.*,
    231 F.3d 970, 979 (5th Cir. 2000) ....................................................................................19

*Briseno v. Conagra Foods, Inc.*,
    844 F.3d 1121, 1126 (9th Cir. 2017)..................................................................................18

*Comcast Corp. v. Behrend*,
    133 S.Ct. 1426, 1432, 1433-1435 (2013)..................................................................9, 15, 16

*Darisse v. Nest Labs, Inc.*,
    No. 5:14-CV-01363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016)........................12, 20

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    131 S.Ct. 2179, 2184 (2011) ..............................................................................................15

*Espejo v. Santander Consumer USA, Inc.*,
    No. 11 C 8987, 2016 WL 6037625 (N.D. Ill. Oct. 14, 2016) ..............................................13

*Fendler v. Westgate-California Corp.*,
    527 F.2d 1168, 1170 (9th Cir. 1975)..................................................................................14

*Gen. Tel. Co. of Sw. v. Falcon*,
    102 S.Ct. 2364, 2370 (1982) ................................................................................................9

*Guzman v. Bridgepoint Educ., Inc.*,
    305 F.R.D. 594, 612 (S.D. Cal. 2015)................................................................................12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011, 1020 (9th Cir. 1998)..................................................................................14

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497, 508-509 (9th Cir. 1992) ..............................................................................9, 13

*Johnson et al. v. Santander Consumer USA Inc.*,
   Case No. 2:15-cv-00918-RDP (N.D. Ala. 2015), Dkt. 1, 23 ...............................11

*Klay v. Humana, Inc.*,
   382 F.3d 1241, 1255 (11th Cir. 2004)...............................................................15

*Pablo v. ServiceMaster Global Holdings, Inc.*,
   No. C 08-03894 SI, 2011 WL 3476473 (N.D. Cal. 2011) ................................17, 18

*Spokeo, Inc. v. Robins*,
   136 S.Ct. 1540, 1548 (2016) .............................................................................13

*State of Alaska v. Suburban Propane Gas Corp.*,
   123 F.3d 1317, 1321 (9th Cir. 1997).................................................................14

*Summers v. Earth Island Inst.*,
   555 U.S. 488, 493 (2009) ..................................................................................20

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227, 1234-35 (9th Cir. 1996) ...........................................................14, 17

*Varnado v. Midland Funding LLC*,
   43 F.Supp.3d 985, 993 (N.D. Cal. 2014) .........................................................19

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541, 2550-52 (2011) ............................................................... *passim*

*Winter v. Nat'l Res. Def. Council*,
   *Inc.*, 129 S.Ct. 365, 374 (2008); ........................................................................19

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180, 1186, 1190 (9th Cir. 2001) .............................................. *passim*

**Rules**

FED. R. CIV. P. 23....................................................................................... *passim*

FED. R. EVID. 801 ...............................................................................................12

FED. R. EVID. 1002 ..............................................................................................12

**Statutes**

15 U.S.C. § 1692 ....................................................................................... *passim*

CAL. BUS. & PROF. CODE § 6068(d).....................................................................14

CAL. CIV. CODE § 1788.............................................................................. *passim*

CAL. CIV. CODE § 1788.17 ..........................................................................7, 8, 19

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION

CAL. CIV. CODE § 1788.30 ................................................................................ *passim*

U.S. Const. Art. 3, § 2, cl. 1 .............................................................................13

**Other Authorities**

7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1780, at 562
   (1986) ..........................................................................................................17

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.     INTRODUCTION**

3       Plaintiff April Lindblom[1] seeks to certify a class of Santander Consumer USA Inc. ("SC")

4   customers in California who paid a Western Union Speedpay fee in conjunction with an auto loan.

5   Mot., at 7. The Speedpay service allows a customer to make a credit or debit card payment that is

6   credited to the account on the same day, unlike other slower methods such as mailing in a check,

7   and thereby potentially avoid late fees and other costs associated with missing a payment deadline.

8   Plaintiff alleges that SC retained some portion of the Speedpay fee in violation of the California

9   Rosenthal Fair Debt Collections Practices Act (the "Rosenthal Act").

10      As the moving party, Plaintiff bears the heavy burden of providing evidence sufficient to

11  facilitate this court's "rigorous analysis" into the requirements for certification. *Wal-Mart Stores,*

12  *Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Plaintiff's Motion falls short of meeting this burden in

13  several critical respects.

14      First, Plaintiff is not a member of the class she purports to represent. Plaintiff's class is

15  expressly limited to those California customers who used the Speedpay service on or after October

16  30, 2013. Mot., at 7. Yet, as she concedes in her Motion, Plaintiff's last Speedpay transaction was

17  in August 2012. Mot., at 6, Ex. D. Plaintiff's payment history therefore puts her outside the class

18  definition and, as a result, Plaintiff cannot serve as a typical or adequate class representative. FED.

19  R. CIV. P. 23(a)(3), (4). This conclusion is only compounded by the fact that Plaintiff faces statute

20  of limitations defenses that are not typical of the class either. *Id.*

21      Second, the vast majority of the class Plaintiff seeks to certify are subject to Retail

22  Installment Sales Contracts ("RISCs") that contain contractual arbitration provisions with class

23  waivers, preventing them from participating in the proposed class. Plaintiff seeks to certify a class

24  of over 258,000 customers [Mot., at 10] despite the fact that all but a fraction (SC estimates over

25  87%)[2] are contractually barred from participating in a class—a fact known to Plaintiff's counsel.

26  _____

27  [1] Plaintiff Timothy Lindblom does not join the motion for class certification, and is not a member of the putative class.

28  [2] Although SC can identify some portfolios in which the RISCs contain an arbitration or class waiver provision, there

Plaintiff cannot establish commonality with such putative class members. FED. R. CIV. P. 23(a)(2). And, since Plaintiff fails to raise these issues (much less demonstrate that a group of individuals exists that is not contractually barred from participating in a class) her Motion fails to establish numerosity as well. *Id.*, subd. (a)(1).

For these reasons alone, Plaintiff's Motion fails to meet the prerequisites for certification under Rule 23(a). But even if Plaintiff were a member of the class she purports to represent and even if she could meet her burden of demonstrating the existence (and size) of a non-arbitration class, her Motion would remain fatally flawed under Rule 23(b).

SC is an indirect auto lender, typically taking the assignment of RISCs entered into by consumers to finance their purchase. Typically, in executing an RISC, customers agree to be subject to a late charge if they fail to make timely payment. To facilitate timely payment, SC provides its customers with the Speedpay option that allows a payment to be credited to the account on the same day.

Plaintiff alleges that SC's practice, prior to April 2017, of retaining a portion of the $10.95 fee charged by Western Union (the "Speedpay Fee") for the Speedpay service violated the Rosenthal Act. Accordingly, and as this Court has already determined, any alleged Rosenthal Act violation is limited to that portion of the Speedpay Fee retained by SC. The Rosenthal Act provides for the recovery of "an amount equal to the sum of any actual damages sustained by the debtor *as a result of the violation*." CAL. CIV. CODE § 1788.30(a) (emphasis added).  But even where SC retained a portion of the fee, in many instances, *Plaintiff actually benefitted from using Speedpay and did not suffer any injury or actual damages*.  Thus, each transaction must be analyzed before any determination on injury or damages can be made.

In Plaintiff's case, the determination of the benefit she received by using Speedpay required a detailed transaction-by-transaction review of the payment history on Plaintiff's account.

---

are at least 40,000 accounts within the putative class for which this determination cannot be made without a file-by-file review.  Nightengale Decl. ¶ 19. Moreover, a file-by-file review would be required to determine whether those account holders are subject to bankruptcy-protection modifications, voluntary modifications, voluntary extensions, redemptions, or releases executed after the RISC, which might also include an arbitration provision with class waiver. *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION

For certification purposes, the determination of whether any putative class member suffered an actual injury as a result of a Speedpay Fee would likewise require an intensely individualized file review, rendering any proposed class unmanageable. FED. R. CIV. P. 23(b)(3). Indeed, with Plaintiff, it is more than likely that class members avoided much larger late fees by using Speedpay, and therefore might not have suffered any injury as a result of the service, or any retention of a portion of the Speedpay Fee by SC. Using Speedpay to facilitate a timely payment also could prevent the repossession of a customer's vehicle, preventing lost use, recovery fees, and storage fees upon reinstatement of the loan. Plaintiff's Motion addresses none of these potential benefits to class members, or their implications for any standing or damages analysis. In any event, these issues cannot be adjudicated classwide without relying predominantly on highly individualized and time-intensive file reviews. *See id.*

Plaintiff makes no showing as to the existence of a class of non-arbitration SC customers who, in fact, suffered actual injury from SC's retention of a portion of a Speedpay Fee. As such, Plaintiff fails to provide this Court with the required roadmap as to how the process could be managed to render a class trial feasible in light of the individualized, fact-intensive review required. For these reasons, her Motion should be denied.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      Most of SC's California Customers Signed Contracts That Contain Arbitration and Class Waiver Provisions

SC is a specialized consumer finance company focused in large part on vehicle finance. Nightengale Decl. ¶ 3. SC is an indirect vehicle lender, meaning that it takes assignment of the RISCs entered into between customers and automobile dealerships. *Id.* Although there are slight variations to the RISCs, they all provide for a monthly payment, grant a security interest to SC, allow SC to assess late charges for the customer's failure to make timely payments (in most instances calculated as 5% of the part of the payment that is late), and provide certain remedies to SC if customers default under the RISC. *Id.* The RISCs typically include an arbitration provision and class waiver. *Id.*

1    SC's customers can make their monthly payments, pursuant to their RISCs, by remitting a

2    personal check or MoneyGram to SC, resulting in no payment processing fees. *Id*. ¶¶ 5, 37. To

3    provide its customers with more payment options, SC employed a third-party vendor, Western

4    Union, to offer its Speedpay service to facilitate alternative methods of electronic payments—

5    including ACH, debit card, and credit card transactions—by SC's customers. *Id*. ¶ 5. When

6    customers used Speedpay, they agreed to and paid a flat rate of $10.95 for each payment

7    processing transaction, regardless of the payment method used. *Id*. ¶¶ 5, 38.

8        During discovery, Plaintiff sought and obtained SC's production of a spreadsheet

9    identifying each customer who made a Speedpay payment while a resident of California at the

10   time of the payment from the period of December 5, 2013, through October 6, 2016 (the

11   "Identified Period").[3] Nightengale Decl. ¶ 6-7.  SC identified approximately 258,000 customers

12   fitting this mold. *Id*.  SC estimates that of the approximate 258,000 customers identified in the

13   spreadsheet who made a Speedpay payment while a resident of California at the time of the

14   payment during the Identified Period, at least 225,000 customers (87% of customers identified in

15   the spreadsheet)—and possibly more—agreed to and executed an RISC containing an arbitration

16   provision with class waiver. *Id*. ¶¶ 10–20. Although SC can identify some portfolios in which the

17   customer RISCs contain an arbitration or class waiver provision, there are at least 40,000 accounts

18   within the putative class for which this determination cannot be made without a file-by-file

19   review. *Id*. ¶ 19.

20       Some customers are also subject to bankruptcy-protection modifications, voluntary

21   modifications, voluntary extensions, redemptions, or releases that were executed after the RISC,

22   and that might also include an arbitration provision and class waiver. *Id*. ¶ 18. A file-by-file

23   review would be necessary to identify these individuals among the California Speedpay

24   population. *Id*. ¶ 19. SC lacks the resources or any systematic methodology to conduct such a

25   review on a portfolio-wide basis, and estimates that it would take thousands of hours to perform

26   any such review, even if it were possible. *Id*. ¶¶ 19-20.

---

28   [3] Plaintiff's Proposed Class Period runs from October 30, 2013, to present. *See* Mot., at 7 n.2.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION

**B.      Plaintiff Used Speedpay 43 Times—Sometimes Avoiding Larger Late Fees—and SC Did Not Retain a Portion of the Fee in Every Instance**

On March 13, 2007, Plaintiff and her husband Timothy Lindblom signed an RISC to finance the purchase of a used 2006 Jeep Liberty. *Id.* ¶ 4, Ex. 1. Her contract was ultimately assigned to Drive Financial Services, now known as SC, for servicing. *Id.* Unlike the vast majority of California consumers whose loans are serviced by SC, Plaintiff's contract does not contain an arbitration clause or class waiver. *Id.*

Plaintiff used various methods to make payments on the loan. *Id.* ¶¶ 44–48. Plaintiff made 43 Speedpay Fee payments using the Speedpay service between May 2007 and August 2012. *Id.* ¶¶ 46-47. Of the 43 Speedpay transactions Plaintiff made, the Speedpay Fee was reversed on three occasions. *Id.* ¶ 48. On each instance, SC reversed Plaintiff's payment of her Speedpay Fee because Plaintiff did not provide a valid account number from which Western Union could deduct her monthly payment. *Id.* Speedpay Fees are indicated by various notations with a line item charge of $10.95—the amount of the Speedpay Fee during the relevant period. Mot., at 6; Index of Exs., Dkt. 108-1, Ex. D at SCUSA-Lindblom 006056; Nightengale Decl. ¶¶ 44-47. On August 22, 2012, Plaintiff made her last payment using the Speedpay service.  Nightengale Decl. ¶ 49.

Under the RISCs, SC assesses a late charge on a customer if the customer fails to pay within 10 days after the customer's payment is due. *Id.* ¶¶ 4, Ex. 1; 50. The late charge amounts to 5% of the part of the payment that was late. *Id.* For example, Plaintiff's monthly payment pursuant to her contract is $588.15 per month, due on the 12th day of each month. *Id.* Plaintiff was assessed a late charge if her payment was not received in full by the 23rd day of each month. *Id.* If Plaintiff had been assessed a late charge for failing to make a timely payment pursuant to her contract, Plaintiff would be assessed $29.40, which is 5% of Plaintiff's monthly payment of $588.15. *Id.* The late charge could vary if Plaintiff's payment amount differed in any particular month. *Id.* For example, on October 23, 2007, Plaintiff utilized Speedpay and made a VISA Credit Card payment of $588.15. *Id.* ¶ 50(a). Although Plaintiff paid a $10.95 Speedpay Fee, she avoided a late fee charge of $29.40 and saved $18.45 because Speedpay enabled her to make her monthly payment prior to incurring a late fee.  *Id.*

**C.      SC Incurs a Net Loss on Certain Speedpay Transactions**

Speedpay allowed SC to receive payments from its customers through: (i) a website operated by Western Union and accessed directly by SC's customers; (ii) a secure website operated by Western Union and accessed by SC for input of SC customer's payment information (the "SC Agent"); and (iii) an interactive voice (the "IVR") system operated by Western Union and accessible by SC's customers. *Id*. ¶ 28. Customers who used Speedpay were required to give consent to be charged the fee. *Id*. ¶ 23.

Prior to April 2017, all Speedpay Fees were assessed by Western Union but paid directly to SC. *Id*. At month's end, SC would perform a reconciliation wherein it would remit all Speedpay Fees to Western Union, but retain a portion of the Speedpay Fees based on the number of overall transactions in that month and payment methods used. *Id*. The amount SC retained varied depending on a variety of factors, including, but not limited to: (i) the payment method used by the customer (ACH, Credit, Debit); (ii) whether SC waived any Speedpay Fees; and (iii) costs borne by SC for processing the payment under Western Union's Speedpay service. *Id*. ¶¶ 23, 42.

SC had the authority to waive the Speedpay Fee paid by SC's customer to Western Union—as it did on three occasions for Plaintiff. *Id*. ¶¶ 42, 48. In such cases, SC paid Western Union the entire Speedpay Fee even though the customer received a refund. *Id*. ¶¶ 42, 48, 50(b). The below chart summarizes additional costs incurred by SC under its agreements with Western Union and pursuant to other contractual relationships. *Id*. ¶¶ 32-41. Because of these costs, which were incurred by SC on credit card transactions in which the Speedpay service was offered, the cost to SC could often be greater than the amount of the Speedpay Fee retained by SC. *Id*. ¶ 41.

\\

\\

\\

\\

\\

\\

\\

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CLASS CERTIFICATION

**SC Costs for Processing Speedpay Payments**

| Payment Method | Agent | Web | IVR |
|---|---|---|---|
| **ACH** | None | None | None |
| **Debit/ATM** | ~$1.50 ODFI fee | ~$1.50 ODFI fee | ~$1.50 ODFI fee |
| **Credit** | .00% to 2.95% of customer's payment for Merchant fee | .00% to 2.95% of customer's payment for Merchant fee | .00% to 2.95% of customer's payment for Merchant fee |

The simplified formula for the amount of Speedpay Fee ultimately retained by SC is as follows: $10.95 Speedpay Fee *minus* Western Union retention *minus* SC costs *equals* the amount retained by SC. *Id.* ¶¶ 32-41. Finally, a waived Speedpay Fee required SC to pay Western Union directly for the Speedpay Fee even though the customer no longer had to pay the Speedpay Fee. *Id.* ¶ 42. In other words, for waived Speedpay Fees, SC lost $10.95—the cost of the Speedpay Fee.

In certain transactions, SC actually lost money by providing its customer the ability to process a transaction with Speedpay. *Id.* ¶¶ 41, 50(a) (showing that Plaintiff's Speedpay payment on October 23, 2007 using a VISA Credit Card resulted in a *loss* of $3.85 to SC) (emphasis added), 50(c).   After April 2017, SC no longer retained any portion of Speedpay Fees, as evidenced by the Tenth Amendment to the Speedpay Agreement. *Id.* ¶ 24.

**D.      Plaintiff's Rosenthal Act Claim and Class Allegations**

Plaintiff asserts a single claim against SC under the Rosenthal Act. Am. Compl., Dkt. 81, ¶ 2. Plaintiff alleges that when she attempted to make payments on her auto loan online or by telephone, "Western Union demanded an additional payment in the form of a fee" for using its "Speedpay" feature. *Id.* ¶ 14. Plaintiff alleges "the payment processor collected this money from Plaintiffs and remitted a portion of it back to Santander." *Id.* Plaintiff alleges that by retaining a portion of the Speedpay Fee, SC violated the Federal Fair Debt Collection Practices Act ("FDCPA") and, by incorporation, the Rosenthal Act because it collected an amount not authorized by Plaintiff's loan agreement. *Id.* ¶¶ 24–26 (citing 15 U.S.C. § 1692(f)(1), CAL. CIV. CODE § 1788.17). Plaintiff does not allege a willful violation of the Rosenthal Act, and seeks an

1 award of "compensatory and statutory damages" under her claim. Am. Compl., at 10, Prayer for

2 Relief ¶ F.[4]

3       The Rosenthal Act permits a plaintiff to recover "an amount equal to the sum of any actual

4 damages sustained by the debtor as a result of the violation." CAL. CIV. CODE § 1788.30(a).

5 Similarly, under provisions of the FDCPA incorporated by the Rosenthal Act, a plaintiff may

6 recover "any actual damages sustained by such person as a result of such failure [to comply with

7 any provision of the FDCPA]." 15 U.S.C. § 1692k(a)(1); CAL. CIV. CODE § 1788.17.

8       In denying SC's Motion for Judgment on the Pleadings, this Court ruled that while

9 Plaintiff had "plausibly alleged [SC's] collecting a portion of the Speedpay Fee violated §

10 1692f(1)," the Court agreed "that… if it turns out [SC] did not collect any portion of the Speedpay

11 Fee, her § 1692f(1) claim fails." Order, Dkt. 71, at 12; *see* Mot., at 2. The Court also confirmed

12 that "[t]he issue is not whether the Speedpay Fee is a 'debt' under the Rosenthal Act; the issue is

13 whether under § 1692f(1) [SC] may lawfully receive a portion of the Speedpay Fee when collected

14 in connection with Plaintiff's debt payments to [SC]." Order, Dkt. 71, at 6. It therefore follows

15 that because the fee paid to Western Union is not by itself actionable, only the portion retained by

16 SC constitutes a "violation" of the Rosenthal Act.

17       Plaintiff alleges that the Rosenthal Act's one year statute of limitations "has been tolled" as

18 to her claim because SC did not disclose that a portion of the money paid by Plaintiff for the

19 Speedpay service was remitted to SC. Am. Compl., Dkt. 81 ¶ 15. Plaintiff's class definition does

20 not rely on tolling, however, but is limited to California individuals who were charged a Speedpay

21 Fee during the applicable one-year limitations period (i.e., after October 30, 2013):

22           All individuals in the state of California, who, during the applicable
            limitations period [defined to begin October 30, 2013], paid a
23           convenience fee through Western Union's Speedpay service in
            connection with any consumer loan held and/or serviced by
24           Santander.

25 Mot., at 7 n.2.

26

27 _____

28 [4] The Parties have resolved Plaintiffs' individual claim under the Telephone Consumer Protection Act
(Count II). *See* Dkt. 116.

1  **III.    APPLICABLE LEGAL STANDARD**

2      "Rule 23 does not set forth a mere pleading standard. A party seeking class certification

3  must affirmatively demonstrate [her] compliance with the Rule—that is, [she] must be prepared to

4  *prove* that there are *in fact* sufficiently numerous parties, common questions of law or fact,"

5  typicality of claims or defenses, and adequacy of representation under Rule 23(a). *Dukes*, 131

6  S.Ct. at 2551 (emphasis added); *accord Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013).

7      A motion for class certification will only be granted if "the trial court is satisfied, after a

8  *rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied." *Dukes*, 131 S.Ct. at

9  2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 102 S.Ct. 2364, 2372 (1982)) (emphasis added). The

10  plaintiff bears the burden of establishing these requirements. *Zinser v. Accufix Research Inst., Inc.*,

11  253 F.3d 1180, 1186 (9th Cir. 2001). And a court considering class certification must probe

12  beyond the pleadings to assess whether the plaintiff has met the requirements of Rule 23. *Hanon v.*

13  *Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). This analysis frequently "overlap[s] with

14  the merits of plaintiff's underlying claim," because "[t]he class determination generally involves

15  considerations that are enmeshed in the factual and legal questions comprising the plaintiff's cause

16  of action." *Dukes*, 131 S.Ct. at 2551–52 (citation and quotation marks omitted).

17      In addition to the prerequisites of numerosity, commonality, typicality, and adequacy

18  under Rule 23(a), the plaintiff must also satisfy *through evidentiary proof* at least one of the

19  provisions of Rule 23(b). *Comcast*, 133 S.Ct. at 1432. Rule 23(b)(3) requires proof that "questions

20  of law or fact common to class members predominate over any questions affecting only individual

21  members, and that a class action is superior to other available methods for fairly and efficiently

22  adjudicating the controversy." FED. R. CIV. P. 23(b)(3). This analysis requires the Court to

23  consider the likely difficulties in managing a class action, among other factors, and to determine

24  that the class can be adjudicated most profitably on a representative basis. FED. R. CIV. P. 23(b)(3);

25  *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 713 (9th Cir. 2010); *Zinser,* 253 F.3d at 1190.

26  **IV.    PLAINTIFF CANNOT SATISFY THE PREREQUISITES OF RULE 23(A)**

27      Rule 23(a) requires the moving party plaintiff to demonstrate: (1) the class is so numerous

28  that joinder of all members is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a). Plaintiff's Motion fails to meet this standard.

> **A.    Plaintiff Cannot Serve as a Class Representative Because She Is Not a Member of the Class She Seeks to Certify**

Plaintiff seeks certification of a California class consisting of all individuals who paid a Speedpay Fee in connection with an SC loan on or after October 30, 2013. Mot., at 7. Plaintiff's Motion fails, however, because she is not a member of this proposed class.

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Dukes*, 131 S.Ct. at 2550 (citation and quotation marks omitted). "In order to justify a departure from that rule, a class representative *must be part of the class* and possess the same interest and suffer the same injury as the class members." *Id*. (emph. added).  The typicality prerequisite of Rule 23(a)(3) embodies this requirement, and holds that the claims or defenses of the representative parties are typical of the claims or defenses of the class. *See* FED. R. CIV. P. 23(a)(3).

In her Motion, Plaintiff cites to the payment history on her SC loan (attached as Exhibit D to Plaintiff's Index of Exhibits) as proof of the payments she made to SC on which Speedpay Fees were charged. Mot., at 6; Index of Exs., Dkt. 108-1, Ex. D. That document shows, however, that of the 43 transactions on which a Speedpay Fee was charged, not one occurred during the class period (*i.e.*, after October 30, 2013). *Id.*  Speedpay Fees are indicated by various notations with a line item charge of $10.95—the amount of the Speedpay Fee during the relevant period —and the record reflects Plaintiff's last Speedpay Fee was made in August 2012. *See id*., at SCUSA-Lindblom 006056; Nightengale Decl. ¶¶ 46-49. Plaintiff is therefore excluded from her own class and, for this reason alone, her Motion fails as a matter of law. *Dukes*, 131 S.Ct. at 2550; FED. R. CIV. P. 23(a)(3).

**B.** **Plaintiff Cannot Establish Commonality or Numerosity Because Most Class Members Are Subject to Arbitration and Class Waiver Provisions**

A class may not be certified unless the proposed class is sufficiently numerous and "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(1), (2). A common question is one that, when answered as to one class member, will advance the resolution of the claims of the other members of the putative class. *Dukes*, 131 S.Ct. at 2551 (claims must depend on a common contention and "be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."). Thus, a "common question" must be susceptible to a common answer that will be critical to the resolution of the litigation. *See id.*

Plaintiff cannot establish commonality because the vast majority of putative class members are excluded pursuant to arbitration provisions with class waivers that govern their claims. FED. R. CIV. P. 23(a)(2); *see AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011) (class arbitration waivers in consumer contracts are valid and enforceable). SC estimates that of the approximate 258,000 accounts that Plaintiff seeks to include in her class, over 87% involve customers who have agreed to arbitration provisions with class waivers. Nightengale Decl. ¶ 19. SC cannot determine this number with certainty, however, and Plaintiff—who bears the burden of demonstrating the viability of her class—does not even raise the issue, much less suggest any methodology for excluding individuals barred from participating in a class, or identifying those individuals who are putative class members. *Zinser*, 253 F.3d at 1186. Plaintiff's counsel have been aware of the arbitration issue, moreover, and their failure to address the problem cannot be attributed to mere ignorance.[5]

Although SC can identify some portfolios in which the customer RISCs contain an arbitration or class waiver provision, there are at least 40,000 accounts within the putative class for

---

[5] In a separate class action brought against SC by Plaintiff's counsel here, plaintiffs sought a determination as to which of over 4000 individuals were subject to arbitration clauses. *Johnson et al. v. Santander Consumer USA Inc.*, No. 2:15-cv-00918-RDP (N.D. Ala. 2015), Dkt. 1, 23. The court ordered the parties to meet and confer "in an effort to develop an efficient process for [determining individuals subject to arbitration clauses]." *Id.*, Dkt. 23. The arbitration issue has also been raised by SC's counsel in connection with this case.

1   which this determination cannot be made without a file-by-file review. *Id.* ¶ 19. Such a file-by-file

2   review would also be required to determine whether those account holders are subject to

3   bankruptcy-protection modifications, voluntary modifications, voluntary extensions, redemptions,

4   or releases that were executed after the contract, and which also may include an arbitration

5   provision and class waiver excluding the individual from participating in a class. *Id.* Plaintiff does

6   not propose any method for conducting such a review, and SC lacks the resources or any

7   systematic methodology to undertake the task on a portfolio-wide basis, and estimates that it

8   would take thousands of hours at minimum. *Id.* ¶¶ 19-20.

9        The fact that most of the class members cannot participate in the litigation precludes a

10  finding of commonality. FED. R. CIV. P. 23(a)(2). In *Darisse v. Nest Labs, Inc.*, the court denied

11  class certification in part because of an arbitration clause in many of the sales contracts at issue.

12  No. 5:14-CV-01363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016). Specifically, the court

13  determined that "a swathe of putative class members is excluded from this class action" and held

14  that "[t]here cannot be common questions of law or fact with respect to potential class members

15  who are bound by the arbitration clause and class action waiver and are excluded from this

16  lawsuit." *Id.* at *5; *see also Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 612 (S.D. Cal.

17  2015) (denying certification where up to 96% of the proposed class were subject to arbitration

18  agreements and "may not even be eligible to participate in this class action").

19       The arbitration and class waiver issues preclude a finding of numerosity as well. Plaintiff

20  cites the spreadsheet[6] listing all customers in the California Speedpay population, but she does not

21  propose any means of identifying how many, and which of those individuals, have <u>not</u> executed

22  arbitration provisions with class waivers—and therefore could participate in the class. Instead,

23  Plaintiff merely claims that "numerosity of the proposed class cannot seriously be questioned"

24

25  _____

26  [6] SC objects to the admissibility of the declaration of Plaintiff's counsel Wesley W. Barnett, purporting to summarize the information contained in the spreadsheet SC produced during discovery. Dkt. 108-1, Pl.'s Index of Exs., Ex. C,

27  Barnett Decl. ¶¶ 4-10 (referring to SCUSA-Lindblom 000305-006052). Plaintiff's counsel's statements are inadmissible hearsay and the spreadsheet—not the statement by counsel—is the best evidence of what is contained

28  therein. FED. R. EVID. 801, 1002.

1 [Mot., at 10], without actually attempting to establish the prerequisite. FED. R. CIV. P. 23(a)(1);

2 *Zinser*, 253 F.3d at 1186 (plaintiff bears the burden of establishing Rule 23(a) prerequisites).

3       Without such a showing, Plaintiff cannot satisfy her burden on numerosity. *See Espejo v.*

4 *Santander Consumer USA, Inc.*, No. 11 C 8987, 2016 WL 6037625, at \*8 (N.D. Ill. Oct. 14,

5 2016). In *Espejo*, plaintiff sought to certify a class of individuals who allegedly received

6 autodialed calls to cellular phones without consent, citing evidence that "almost three million

7 individuals were called" and arguing that it therefore was "overwhelmingly likely that thousands

8 of individuals" fit the proposed class. *Id*. The court denied the motion, holding that plaintiff had

9 failed to meet her burden on numerosity because she had not "attempted to identify *any* group of

10 individuals (forty, or even less than that) who meet her class definition…." *Id*. (emphasis added).

11 The same analysis applies here: Plaintiff has not established numerosity. FED. R. CIV. P. 23(a)(1).

12     **C.**     **Plaintiff's Rosenthal Act Claim Is Not Typical of the Class and She Is Not an**

13            **Adequate Class Representative**

14       For the reasons set forth—including that Plaintiff is not a class member and most class

15 members are subject to arbitration and class waiver agreements—Plaintiff is not typical of the

16 class she seeks to represent. Typicality also is not satisfied where, as here, the putative class

17 representative is subject to unique defenses which threaten to become the focus of the litigation.

18 *Hanon*, 976 F.2d at 508–09. FED. R. CIV. P. 23(a)(3).

19       Plaintiff alleges that the Rosenthal Act's one year statute of limitations "has been tolled" as

20 to her claim [Am. Compl. ¶ 15], but nonetheless the limitations defense will be raised by SC as to

21 Plaintiff and will be at issue in the trial. By contrast, Plaintiff *applies* the one-year statute of

22 limitations to her proposed class and does not propose in her Motion that the statute of limitations

23 can or should be tolled as to putative class members. Furthermore, Plaintiff benefitted from the

24 Speedpay service in many instances, raising questions as to whether Plaintiff suffered any concrete

25 injury sufficient to have standing to sue (as discussed more fully in SC's summary judgment

26 motion). U.S. Const. Art. 3, § 2, cl. 1; *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016).

27       Plaintiff's unique situation therefore makes it predictable that a major focus of the

28 litigation will revolve around a defense which is unique to her. *Hanon*, 976 F.2d at 508–09; *see*

*also State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997) ("[W]hen named plaintiffs are subject to unique defenses which could skew the focus of the litigation, district courts properly exercise their discretion in denying class certification."). As a result, she cannot satisfy the typicality prerequisite of Rule 23(a)(3). FED. R. CIV. P. 23(a)(3).

For these reasons, Plaintiff is not an adequate class representative under Rule 23(a)(4) either. FED. R. CIV. P. 23(a)(4) ("the representative parties will fairly and adequately protect the interest of the class."). To satisfy Rule 23(a)(4) a plaintiff must show that (1) the named plaintiff and counsel do not have a conflict of interest with the proposed class; and (2) that the named plaintiff is represented by qualified and competent counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Although the adequacy and typicality requirements "tend to merge" (*Amchem Prods., Inc. v. Windsor*, 117 S.Ct. 2231, 2251 n.20 (1997)), the focus of adequacy is on the named plaintiff as a representative of a proposed class's myriad members, with their differing and separate interests. *See Falcon*, 102 S.Ct. 2364, 2370 n.13.

Plaintiff does not demonstrate the adequacy of Plaintiff's counsel. *Fendler v. Westgate-California Corp.,* 527 F.2d 1168, 1170 (9th Cir. 1975) (class counsel must have necessary "zeal and competence" to protect interests of absentee class members). Plaintiff's counsel was aware— before Plaintiff filed the Motion—that a significant portion of the proposed class are subject to contractual arbitration provisions and class waivers. Yet counsel failed to raise the issue despite a duty to do so. *See* CAL. BUS. & PROF. CODE § 6068(d). Plaintiff therefore fails to meet her burden of establishing adequacy and her Motion fails. FED. R. CIV. P. 23(a)(4).

## V. PLAINTIFF CANNOT MEET THE REQUIREMENTS OF RULE 23(B)

Rule 23(b) requires proof that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Only after finding Plaintiff has met the requirements of Rule 23(a) does the Court begin to examine whether common questions of law or fact predominate and that the class device offers a superior means of resolving the dispute. *Id.*; *see Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1235 (9th Cir. 1996).

1      **A.      Plaintiff Cannot Demonstrate How Common Issues Would Predominate in a**

2      **Class Trial as Required Under Rule 23(b)(3)**

3      "The same analytical principles [discussed above with respect to Rule 23(a)] govern Rule

4  23(b). If anything, Rule 23(b)(3)'s predominance criterion is *even more demanding* than Rule

5  23(a)." *Comcast*, 133 S.Ct. at 1432 (emphasis added). In determining whether common issues

6  predominate, the court first identifies the substantive issues related to claims and affirmative

7  defenses, then considers the proof necessary to establish each element of the claim or defense, and

8  considers how these issues would be tried. *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct.

9  2179, 2184 (2011) ("Considering whether 'questions of law or fact common to class members

10 predominate' begins, of course, with the elements of the underlying cause of action."). "Where,

11 after adjudication of the classwide issues, plaintiffs must still introduce a great deal of

12 individualized proof or argue a number of individualized legal points to establish most or all of the

13 elements of their individual claims, such claims are not suitable for class certification under Rule

14 23(b)(3)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004).

15      As set forth above, the questions at the heart of Plaintiff's Rosenthal Act claim is whether

16 SC received a portion of the Speedpay Fee when collected in connection with Plaintiff's debt

17 payments to SC (Order, Dkt. 71, at 6) and whether Plaintiff, or any class member, suffered any

18 actual damages as a result of the violation.   CAL. CIV. CODE § 1788.30(a).   As set forth in the

19 Nightengale Declaration, there were some transactions during the class period in which SC was

20 charged Originating Depository Financial Institution (ODFI) fees, Merchant Agreement fees,

21 online PIN-less debit fees, telecom fees, and confirmation letter fees, and in some of those cases

22 these fees would exceed the amount of the $10.95 that SC received, resulting in a net loss to SC in

23 some transactions. Nightengale Decl. ¶¶ 41, 50(a) (citing example of credit card transactions over

24 $500), 50(c). In other instances, when SC waived the $10.95 Speedpay Fee to Plaintiff, SC paid

25 that fee. *Id.* ¶¶ 42, 50(b). In these cases, Plaintiff did not ultimately pay the fee. *Id.* ¶¶ 5-6, 42,

26 50(b).

27      Even assuming a violation of the Act, moreover, Plaintiff's circumstances highlight the

28 individualized nature of her damages claim. Under the Rosenthal Act, a plaintiff may recover "an

15

1   amount equal to the sum of any actual damages sustained by the debtor *as a result of the*

2   *violation*." CAL. CIV. CODE § 1788.30(a) (emphasis added); *see also* 15 U.S.C. § 1692k(a)(1).

3   Here, Plaintiff engaged in Speedpay transactions that were either refunded to her or allowed her to

4   avoid a late fee that was higher than the $10.95 Speedpay charge. Nightengale Decl. ¶¶ 50(a), 51-

5   52. In those cases, the Speedpay service allowed Plaintiff to save money and she therefore cannot

6   establish any damages as a result of SC's retention of some part of the $10.95. CAL. CIV. CODE §

7   1788.30(a).

8         This demonstrates the transaction-by-transaction analysis of Plaintiff's account history

9   (even assuming she were a member of the class) that would be necessary to identify those

10   Speedpay charges that did not *benefit Plaintiff*. Without such an analysis, Plaintiff cannot prove

11   that she suffered any injury, much less actual, measureable damage. Class members presumably

12   would be subject to the same issues, and these individualized inquiries would overwhelm any class

13   trial, thereby precluding certification under Rule 23(b)(3). *Zinser,* 253 F.3d at 1190. Indeed, the

14   ability to make a Speedpay payment might also prevent repossession, or the accrual of further

15   interest on the amount owed, thereby conferring other benefits on class members. Nightengale

16   Decl. ¶ 5.

17         In evaluating Rule 23(b)(3)'s requirements, the Supreme Court has made clear that a

18   moving party plaintiff must provide *evidence* at the class certification stage, such as an economic

19   model, establishing that damages are capable of being measured classwide. *See Comcast*, 133

20   S.Ct. at 1433. And while the Ninth Circuit has held that the amount of damages is invariably an

21   individual question, and by itself does not defeat class action treatment, the plaintiff still must

22   show that "the whole class suffered damages traceable to the same injurious course of conduct

23   underlying the plaintiffs' legal theory. *Comcast,* 133 S.Ct. at 1433–35. Plaintiff has advanced no

24   evidence to satisfy such a showing here.

25         The intensive transaction-by-transaction analysis required to evaluate Plaintiff's claims

26   would have to be replicated across the class, even assuming Plaintiff could represent the class and

27   a method existed to identify class members. The predominance of such individualized inquiries

28   dooms certification here. FED. R. CIV. P. 23(b)(3); *Comcast*, 133 S.Ct. at 1432.

**B.      Plaintiff's Proposed Class Is Patently Unmanageable, and Plaintiff Cannot Demonstrate Superiority Under Rule 23(b)(3)**

The superiority inquiry asks whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234. Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority inquiry, including: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3); *Bateman*, 623 F.3d at 713. A consideration of the Rule 23(b)(3) factors "requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (quoting 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1780, at 562 (1986)).

Applying the statutory factors here, Plaintiff's proposed class does not meet the superiority test. Plaintiff omits any discussion of the *first* factor to be considered: the interest of each class member in "individually controlling the prosecution or defense of separate actions." FED. R. CIV. P. 23(b)(3)(A). Consideration of this factor shows exactly why class certification is inappropriate here: not only is Plaintiff defined out of her own class, but the vast majority of class members who are covered by the definition are subject to contractual arbitration provisions and class waivers that preclude them from prosecuting this action. *See Pablo v. ServiceMaster Global Holdings, Inc.*, No. C 08-03894 SI, 2011 WL 3476473, at *2 (N.D. Cal. 2011) ("The arbitration agreements . . . support the Court's finding that a class action is not the superior method of adjudication in this case.").

In *Pablo*, the court relied on evidence that a "significant number" of class members entered into arbitration agreements to hold that the case would not be manageable. *Pablo*, 2011 WL 3476473, at *2 ("a significant portion of this litigation would be devoted to discovering which class members signed such agreements and enforcing those agreements, rather than to the

resolution of plaintiffs' legal claims . . ..."). The same analysis applies here. Plaintiff provides no mechanism whatsoever for identifying—either at trial, or for purposes of a binding judgment—which class members did *not* agree to arbitration and therefore *can* participate in the class. Although the Ninth Circuit has not recognized an independent ascertainability requirement, courts in this Circuit nonetheless follow well-settled precedent in evaluating superiority. *Briseno v. Conagra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017) (noting that Rule 23(b)(3) requires a court certifying a class under that section to consider the likely difficulties in managing a class action) (internal quotations and citations omitted). Where most of the class has agreed to arbitration, and the moving party plaintiff does not propose any method of addressing the arbitration issue prior to a class trial, superiority has not been demonstrated. *See Pablo*, at *3.

Plaintiff offers no evidence demonstrating the "extent and nature of any litigation [or arbitration] concerning the controversy commenced on behalf of the class," and therefore cannot establish that this factor weighs in favor of certification either. FED. R. CIV. P. 23(b)(3)(B). It bears repeating that Plaintiff carries the burden of an evidentiary showing that proves the efficiency and economy of a class action here (*see Zinser*, 253 F.3d at 1190), and her failure to present any evidence to facilitate the court's analysis weighs against certification. *Dukes*, 131 S.Ct. at 2551. And the myriad damages questions, as well as the fact that most class members are parties to arbitration provisions with class waivers, further weigh against Plaintiff on the "desirability . . . of concentrating the litigation" in this forum. FED. R. CIV. P. 23(b)(3)(C).

Finally, "the likely difficulties in managing a class action" are manifest. FED. R. CIV. P. 23(b)(3)(D). "Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant." *Bateman*, 623 F.3d at 713. Plaintiff contends that "manageability concerns are not so great as to outweigh the advantages of a class action" [Mot., at 17], but her Motion does not address these manageability concerns. As discussed in detail above, Plaintiff's own damage claims is questionable at best, and is susceptible to an intensive, transaction-by-transaction review. Further, SC's individualized statute of limitations defense also does not fit within a manageable class trial.

1    Plaintiff cannot show how a class trial therefore is superior to an individual trial in which

2    these issues could be adjudicated. The Motion also fails to show how the judicial system can

3    determine who is in the proposed class without any guidance from Plaintiff; nor does Plaintiff

4    address the fact that she is not even a member of her own class. Plaintiff cannot explain the

5    omission of such key issues and information from her Motion and Plaintiff cannot explain how the

6    public at large can benefit from a class action in which class members arguably suffered no injury

7    or damages. *See Bateman*, 623 F.3d at 713. For all these reasons, Plaintiff's Motion fails to

8    demonstrate the superiority required under Rule 23(b)(3), and should be denied.

9    **C.    Plaintiff Has Not Established Any Entitlement to Injunctive Relief, and Her**

10   **Request for Certification Under Rule 23(b)(2) Must Be Denied**

11   Plaintiff seeks certification under Rule 23(b)(2) because "final injunctive relief is

12   appropriate to protect Plaintiff and the other members of the Class from [SC's] conduct in the

13   future." Mot., at 14. However, injunctive relief is not an available remedy under either the

14   Rosenthal Act or the FDCPA. *See Varnado v. Midland Funding LLC*, 43 F.Supp.3d 985, 993

15   (N.D. Cal. 2014) (dismissing requests for injunctive relief because plaintiff not entitled to

16   injunctive relief under the FDCPA or the Rosenthal Act). Remedies for claims made under the

17   Rosenthal Act and the FDCPA are limited to damages, attorney's fees, and costs. *Id.*; *see also* 15

18   U.S.C. § 1692k; CAL. CIV. CODE §§ 1788.17, 1788.30. "The unavailability of injunctive relief

19   under a statute would automatically make a (b)(2) certification an abuse of discretion." *Bolin v.*

20   *Sears, Roebuck & Co.*, 231 F.3d 970, 979 (5th Cir. 2000). Plaintiff therefore cannot establish any

21   entitlement to certification under Rule 23(b)(2).

22   Plaintiff's request for injunctive relief also fails on its own merits because Plaintiff cannot

23   establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to Plaintiff

24   in the absence of preliminary relief; (3) that the balance of equities tips in Plaintiff's favor; and (4)

25   that an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council*, Inc., 129 S.Ct. 365,

26   374 (2008); *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)

27   (reiterating *Winter* four-factor test for injunctive relief). "In a class action setting, the

28   representative plaintiff bears the burden of showing that [she] has standing for each type of relief

19

sought, and so a plaintiff seeking equitable relief such as an injunction must further demonstrate a likelihood of future injury." *Darisse v. Nest Labs, Inc.*, No. 5:14-CV-01363-BLF, 2016 WL 4385849, at *3 (N.D. Cal. Aug. 15, 2016) (citing *Summers v. Earth Island Inst.*, 129 S.Ct. 1142 (2009) (internal quotations omitted)). "This requires a showing that the plaintiff is realistically threatened by a repetition of the violation." *Id.* (internal citations and quotations omitted).

Plaintiff seeks to enjoin SC from receiving a portion of the Speedpay Fees where the evidence demonstrates that SC stopped retaining any portion of the fees in April 2017. Nightengale Decl. ¶ 24. There is no evidence that SC intends to resume a policy of retaining a portion of the fee. Thus, Plaintiff cannot establish any risk of ongoing injury and there is no conduct to enjoin. *Darisse*, 2016 WL 4385849, at *3. For these reasons, Plaintiff cannot satisfy the requirements for certification of an injunctive relief class under Rule 23(b)(2).

## VI.   CONCLUSION

Plaintiff's class certification motion fails because she is not a member of the class that she seeks to certify, and is subject to individual defenses not common to class members. Even if she could establish her own standing to represent the class, Plaintiff fails to meet her burden under Rule 23 of establishing—with evidence—the feasibility of the class she proposes because the great majority of class members have agreed to arbitration and waived their right to participate in a class action.

It is evident that Plaintiff (and presumably other class members) used the Speedpay service to avoid late fees that exceeded the $10.95 Speedpay Fee in many instances. Indeed, it is questionable whether Plaintiff or any class member can establish any concrete injury caused by SC's mere act of retaining a portion of a $10.95 when: (1) the same service still costs $10.95, although SC no longer retains any amount; (2) Plaintiff agreed to the service and got precisely what she agreed to at the price that she agreed to pay; and (3) Plaintiff typically benefitted in an amount in excess of the $10.95 charged and in some cases received a refund. Plaintiff offers no roadmap for a class trial, much less a method by which class members could be identified or damages claims could be adjudicated without a transaction-by-transaction inquiry that evades

class treatment. Plaintiff fails to establish that her proposed class is proper or feasible and her Motion therefore must be denied.

Dated: November 28, 2017                                        **MCGUIREWOODS, LLP**


By: /s/ *David S. Reidy*_____
    David S. Reidy
    *Attorneys for Defendant*
    **SANTANDER CONSUMER USA INC.**

1

## **CERTIFICATE OF CM/ECF SERVICE**

2   The undersigned hereby certifies that a true and correct copy of the above and foregoing

3 document has been served on November 28, 2017, to all counsel of record who are deemed to

4 have consented to electronic service via the Court's CM/ECF system per Rule 5 of the Federal

5 Rules of Civil Procedure.  Any counsel of record who have not consented to electronic service

6 through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile,

7 and/or overnight delivery.

8

9                 */s/ David S. Reidy*

10                 David S. Reidy

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORIES