# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL LINDBLOM,<br><br>        Plaintiffs,<br><br>vs.<br><br>SANTANDER CONSUMER USA INC.,<br><br>        Defendant.<br>_____/ | Case No. 1:15-cv-0990-BAM<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 111) |

## I. INTRODUCTION

Plaintiffs April and Timothy Lindblom ("Plaintiffs") bring this proposed class action complaint against Defendant Santander Consumer USA, Inc. ("Defendant" or "Santander") alleging a violation of the California Rosenthal Fair Debt Collection Practices Act ("the Rosenthal Act" or "RFDCPA"), California Civil Code § 1788, for fees paid by Plaintiffs and the putative class.[1]

Presently before the Court is Defendant's motion for summary judgment. (Doc. 111). Plaintiffs opposed the motion on November 28, 2017, and Defendant filed a reply on December 15, 2017. (Docs. 117, 122). The Court heard oral argument on January 12, 2018. Counsel John E. Norris appeared in person on behalf of Plaintiffs. Counsel Chad Fuller, David Reidy, and Anthony Le appeared in person on behalf of Defendant. Having considered the moving, opposition and reply

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 74, 77). For that reason, the action was reassigned to the Honorable Barbara A. McAuliffe for all purposes. *See* 28 U.S.C.§ 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305. (Doc. 78).

1

papers and the parties' arguments and for the reasons set forth below, Defendant's Motion for Summary Judgment is DENIED. (Doc. 111).

## II.    FACTUAL BACKGROUND

The facts giving rise to Plaintiffs' single remaining Rosenthal Act claim are essentially undisputed.[2] In March of 2005, Defendant Santander's predecessor, Drive Financial, executed a "Speedpay" agreement with Western Union. (Plaintiffs' Statement of Additional Undisputed Facts ("SAUF"), ¶ 1 at pg. 6, (Doc. 117-1)). The terms of this agreement allowed Santander to retain portions of fees paid by Santander customers using Western Union's "Speedpay service" to transmit their auto payments to Santander ("Speedpay fee-sharing"). SAUF ¶ 1.

On March 13, 2007, Plaintiffs signed a Retail Installment Contract ("Contract") to purchase a 2006 Jeep Liberty, which Plaintiffs financed with a loan serviced by Santander. (Statement of Undisputed Facts ("SUF"), ¶ 1, (Doc. 112-1)). At times, Plaintiffs made payments on the loan by phone or online using Western Union's Speedpay service. SUF ¶ 7.  To do so, Plaintiffs were required to pay a flat $10.95 fee ("Speedpay fee") per transaction.  SUF ¶ 5. Plaintiffs could however pay their loan obligation without being charged a fee by sending a check through the mail.  SUF ¶ 9.  Plaintiffs knew they were not required to use the costly Speedpay service and that they could submit loan payments without incurring a fee, however Plaintiffs used the Speedpay service when they were behind on their payments to avoid repossession or added late charges.  SAUF ¶ 9.  While Plaintiffs were informed by Western Union of the fee when they used the Speedpay service, the Contract between Santander and Plaintiffs did not expressly mention or provide for a Speedpay fee.

During the life of the loan, Plaintiff was charged a Speedpay fee on more than 40 occasions. (Doc. 108 at 11). However, on approximately two occasions, the Speedpay fee was waived.  After Plaintiff made over 65 total monthly payments, her car was repossessed in 2014.

Plaintiffs filed a putative class action against Defendant alleging, in part, that Defendant's participation in the Speedpay fee-sharing agreement with Western Union, whereby Defendant retained a portion of the Speedpay fee, violated the Rosenthal Act.  Specifically, Plaintiff asserts that

---

[2] These facts are taken from the parties' statements of undisputed facts and additional undisputed facts (Docs. 111-2, 117-1, 123), and from other parts of the record that the Court has deemed undisputed after considering all of the parties' arguments and objections.

Santander's collection and retention of Speedpay fees violated § 1692f(1) of the FDCPA and, in turn, violated § 1788.17 of the Rosenthal Act, "which prohibits any entity covered by the Rosenthal [Act] from violating the [FDCPA]." (Doc. 81). 15 U.S.C. §1692 et seq.

By the present motion, Defendant moves for summary judgment on this claim, arguing that: (1) Plaintiffs lack standing because they have suffered no injury; and (2) Plaintiffs expressly authorized the collection of Speedpay fees when they knowingly agreed to use the Speedpay service. (Doc. 111 at 7).

### III. PROCEDURAL HISTORY

The initial complaint, styled *Woods v. Santander Consumer USA Inc.*, No. 2:14-cv-02104-MHH (N.D. Ala.), was filed on October 30, 2014, in the United States District Court for the Northern District of Alabama. (Doc. 1). On December 5, 2014, an Amended Complaint added April Lindblom as a plaintiff and her claim under the Rosenthal Act. (Doc. 1). On June 22, 2015, the Alabama District Court entered an Order transferring Plaintiff April Lindblom's claims to this Court. (Doc. 1). Following transfer, Defendant moved for judgment on the pleadings (Doc. 53), arguing that charging a fee does not violate the FDCPA, and hence does not violate the Rosenthal Act. The Court denied Santander's motion based, in part, on Plaintiffs' allegation that Santander itself retained part of the fee, unbeknownst to Plaintiffs. (Doc. 71).

On August 25, 2016, Plaintiff filed an unopposed Motion for Leave to Amend to add Timothy Lindblom, April Lindblom's husband and co-borrower on the Contract, as a plaintiff in this case. (Doc. 79–81). On August 30, 2016, Plaintiffs filed the operative amended complaint alleging two causes of action: (1) an individual claim under the Telephone Consumer Protection Act (the "TCPA"), and (2) a putative class claim under the Rosenthal Act. (Doc. 81). On November 27, 2017, Plaintiffs filed a notice of voluntary dismissing their individual TCPA claim, leaving a single claim for violation of Rosenthal FDCPA at issue. (Doc. 116).

### IV. LEGAL STANDARD

#### 1. Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor."

*Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

### 2. The Rosenthal Act

The Rosenthal Act, California's version of the Federal Debt Collections Practices Act ("FDCPA"), is designed to protect consumers from unfair and abusive debt collection practices. *See* Cal. Civ. Code § 1788.1 ("It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts"). The Rosenthal Act is also a strict liability statute. *See Branco v. Credit Collection Servs. Inc.*, 2011 U.S. Dist. LEXIS 94077, 2011 WL 3684503, at *9 (E.D. Cal. Aug. 23, 2011); *Gordon v. Credit Bureau of Lancaster & Palmdale*, 2012 U.S. Dist. LEXIS 72868, 2012 WL 1813668, at *2 (C.D. Cal. Apr. 20, 2012). "Whether or not a communication or debt collection practice is deceptive under the RFDCPA is determined from the standpoint of the 'least sophisticated debtor.'" *Munekiyo v. Capital One Bank, N.A.*, 2011 U.S. Dist. LEXIS 140213, 2011 WL 6057830, at *5 (C.D. Cal. Dec. 5, 2011).

"The Rosenthal Act mimics or incorporates by reference the FDCPA's requirements ... and makes available the FDCPA's remedies for violations." *Caudillo v. Portfolio Recovery Associates, LLC*, 2013 U.S. Dist. LEXIS 114305, 2013 WL 4102155, at *4 (S.D. Cal. Aug. 13, 2013) (citing *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012)). Accordingly, whether an act "violates the Rosenthal Act turns on whether it violates the FDCPA." *Riggs*, 681 F.3d at 1100. Thus, Rosenthal Act violations and FDCPA violations are viewed identically.

To state a claim under the Rosenthal Act, the plaintiff must establish that: (1) he/she is a "consumer," (2) who was the object of a collection activity arising from a "debt"; (3) the defendant is a "debt collector"; and (4) the defendant violated a provision of the FDCPA. *Lindblom v. Santander Consumer USA, Inc.*, 1:15-CV-990-LJO-BAM, 2016 WL 2841495 (E.D. Cal. May 9, 2016*); Flores v. Collection Consultants of Calif.*, No. SACV 14-771-DOC (RNBx), 2015 WL 4254032, at *4 (C.D. Cal. Mar. 20, 2015) (citations omitted). Defendant concedes, and the Court agrees, that Plaintiffs have

satisfied the first three elements of a Rosenthal Act claim. *Lindblom*, 2016 WL 2841495 at * 4 ("There is no dispute that there is a debt between Plaintiff and Santander or that Santander is a debt collector here). The remaining question is whether "under § 1692f(1) Santander may lawfully receive a portion of the Speedpay fee when collected in connection with Plaintiffs' debt payments to Santander." *Id.*

IV.     **DISCUSSION**

   A.     **Article III Standing**

In moving for summary judgment, Defendant first argues that Plaintiffs lack standing because they have not sufficiently alleged a concrete harm as a result of paying the Speedpay fee, as required by *Spokeo, Inc. v. Robins (Spokeo I)*, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016). (Doc. 111 at 8-9). According to Defendant, rather than suffering an actual injury, Plaintiff April Lindblom testified that the Speedpay service helped her avoid significantly higher late fees and "in some ways it was a benefit to [her] to pay the Speedpay at th[e] time." (Doc. 122 at 7); Deposition of April Lindblom ("Lindblom Depo.") at 66:3-10, (Doc. 111-5).

Plaintiffs respond that, despite the added convenience, they were indeed harmed by having to pay an unauthorized, "illegal fee of $10.95 every time they paid their loan amount online or over the phone, which was over forty times." (Doc. 117 at 25).

   1.     **Legal Standard**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). Anyone seeking "to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983). To establish standing, a plaintiff must demonstrate (1) an "injury in fact," (2) that is fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

To establish injury in fact, a plaintiff must show that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent.'" *Spokeo, Inc.,*

6

136 S. Ct. at 1548.  Moreover, a concrete injury "must actually exist," and "must affect the plaintiff in a personal and individual way." *Id.* A plaintiff cannot automatically satisfy the injury-in-fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. A "bare procedural violation, divorced from any concrete harm" does not satisfy the injury-in-fact requirement of Article III. *Id.*

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. Without constitutionally-required Article III jurisdiction, this Court cannot proceed.

**2.     Analysis**

Defendant relies on *Blue v. Diversified Adjustment Serv.,* for the proposition that a Plaintiff fails to demonstrate an injury when a defendant debt collector offers several payment options that do not incur a fee.  *Blue v. Diversified Adjustment Serv.*, No. 5:17-cv-00366-SVW-KK, 2017 U.S. Dist. LEXIS 130876, 2017 WL 3600723, *2 (C.D. Cal. Aug. 11, 2017).  In *Blue v. Diversified Adjustment*, plaintiff alleged that DAS, a debt collection agency, sent him a collection letter with a number of payment options. 2017 WL 3600723 at *4.  The collection letter advised that plaintiff could pay in person or by mail, but if plaintiff elected to pay online he would be charged a convenience fee.  *Id.* at *2. Blue admitted that he received the offer to pay online, but instead of paying the fee, he filed suit four months later alleging violations of the FDCPA and RFDCPA. *Id.*  In dismissing Blue's complaint for lack of subject matter jurisdiction, the Central District Court reasoned that plaintiff lacked standing to pursue his claims based on *Spokeo* because his complaint relied solely on a "hypothetical" claim of injury without alleging any actual harm. *Id.* at *7.

Here, in contrast to *Blue*, Plaintiffs have submitted evidence that they paid the unlawful fee numerous times.  Actual payment of the fee demonstrates that they have indeed suffered a concrete harm; namely, that Santander repeatedly collected an allegedly unlawful fee from Plaintiffs that was purportedly neither permitted by law nor authorized by contract.  "It is immaterial that the fee was optional [and at times convenient' if the collection of fee is impermissible altogether" under the RFDCPA.  *See Acosta v. Credit Bureau of Napa County*, 2015 U.S. Dist. LEXIS 55870, 2015 WL

7

1943244, at *3-4 (N.D. Ill. Apr. 29, 2015); *see Doyle v. Chrysler Group, LLC*, 663 Fed Appx. 576, 578 (9th Cir. 2016) ("[p]laintiffs have standing when they spend money 'that, absent defendants' actions, they would not have spent.'"). As a number of other courts have agreed, offering permissible or even beneficial payment options "does not save offering a payment option that would violate the statute, as the latter is still an attempt to collect a fee which is prohibited by the FDCPA." *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1020 (E.D. Mo. 2015) (citing S*hami v. Natl. Enter. Sys.*, 2010 WL 3824151 (E.D.N.Y. Sept. 23, 2010).

Having paid the fee over forty times, Plaintiffs' harm is therefore unlike the "conjectural or hypothetical" harm found in *Blue* where the plaintiff there never paid the "convenience fee." *Blue*, 2017 WL 3600723 at *2. The actual collection of a fee in violation of FDCPA § 1692f(1) demonstrates concrete harm and is not merely a bare procedural violation, unlike in *Blue* where an attempted collection of an authorized fee did not satisfy *Spokeo* standing requirements. *See, e.g., Fuentes v. AR Resources, Inc.*, 2017 WL 1197814, at * 3-4 (D.N.J. Mar. 31, 2017)(analyzing standing based on a violation of Section 1692f(1)); *Thomas v. John A Youderian Jr., LLC*, 232 F. Supp. 3d 656 (D.N.J. 2017); *McLain v. Head Mercantile Co*., Inc., 2017 WL 3710073 (M.D. La. 2017); *Bernal v. NRA Grp., LLC*, 2016 WL 4530321 at *4-5 (N.D. Ill. Aug. 30, 2016). Therefore, the Court finds that Plaintiffs' alleged financial injury is a concrete injury for purposes of Article III standing.

**B.     Violation of Section 1692f(1)**

**1.     Statutory Language requiring "expressly authorized"**

Section 1692f(1) of the FDCPA forbids a debt collector from collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §1692f(1); *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1080-81 (E.D. Cal. 2008). Thus, a fee does not violate the FDCPA (1) where it is expressly permitted under state law; or (2) if state law does not expressly authorize or prohibit the charge, where the customer expressly agrees to the fee in the contract creating the debt. *See Schwarm*, 552 F. Supp. 2d at 1080.

8

Under California Civil Code §1698,[3] a written contract can be modified by an oral agreement. As relevant to this case, a written contract can be orally modified under state law in one of two ways. First, a written contract can be orally modified if supported by new consideration: "unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration."[4] Cal. Civ. Code, § 1698, subd. (c). Second, "a contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties." Cal. Civ. Code § 1698 subd. (b).

### 2. Parties' Arguments

Defendant does not contend that the Speedpay fee is written or otherwise expressly authorized in the Contract. Rather, Defendant concedes that Contract is silent with respect to the Speedpay fee. Thus, the Speedpay fee violates the FDCPA unless the fee is authorized under a valid oral modification under California law. Defendant argues that each time April Lindblom paid the Speedpay fee, she and Santander orally modified the underlying contract to allow that fee. Defendant

---

[3] A modification of a written contract is governed by California Civil Code § 1698 which provides in pertinent part:

(a) A contract in writing may be modified by a contract in writing.

(b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties.

(c) Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration. The statute of frauds (Section 1624) is required to be satisfied if the contract as modified is within its provisions.

(d) Nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel, oral novation and substitution of a new agreement, rescission of a written contract by an oral agreement, waiver of a provision of a written contract, or oral independent collateral contracts.

Cal. Civ. Code § 1698.

[4] At oral argument, Defendant stated that any oral modification, authorizing the Speedpay fee, was supported by new consideration. However, Section 1698(c) allows oral modification of a written contract with new consideration only if the written contract does not provide otherwise. *See Marani v. Jackson*, 183 Cal.App.3d 695, 704, 228 Cal.Rptr. 518 (Ct.App.1986) (noting that oral modification of a written contract is allowed only if "the written contract does not contain an express provision requiring that modification be in writing"). The Contract provides that "This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding." (Lindblom RISC, Doc. 108-4 at 1; SAUF, ¶4.) Santander therefore cannot rely on § 1698(c) in support of its oral modification claim, and the court does not address it further.

9

argues that its collection of Speedpay fees does not violate the statute because, under California contract law, the collection of Speedpay fees was "expressly authorized" by Plaintiffs' fully executed consent to pay those fees. *See* Cal. Civ. Code § 1698(b). Defendant explains that each and every time Plaintiffs used Western Union to pay their loan obligation, Plaintiffs were informed of the $10.95 Speedpay fee. Plaintiffs testified that they knew about the Speedpay fee and agreed to pay the fee in order to receive the benefit of a faster and more convenient payment option. Defendant contends that this evidence establishes that the written Contract was orally modified by Plaintiffs' "fully executed" conduct in paying the Speedpay fee.

Plaintiffs reject the idea that their payment of the Speedpay fee constitutes an oral modification to the underlying Contract. Plaintiff argues that an oral modification is inconsistent with the statutory language which requires an "expressly authorized" fee in the Contract. But even assuming that the parties entered into an oral agreement, Plaintiffs argue that Defendant must still demonstrate that the parties mutually intended to waive the Contract's "no oral modification clause." (Doc. 117 at 13). Because waiver requires "full knowledge of facts," Plaintiffs argue that they could not waive the no oral modification clause to permit the profit-sharing of the Speedpay fees because Plaintiffs were unaware that Defendant retained a portion of that fee.

### 3. Payment of the Speedpay fee is not an oral modification "executed by the parties"

Having reviewed Defendant's arguments and the cited authority, the Court is not persuaded that Defendant's oral modification theory precludes an RFDCPA violation here. "Whether a writing has been modified by an executed oral agreement is a question of fact." *Kelley v. R. F. Jones Co.* (Cal. App. 2d Dist. 1969). Additionally, "proof of every element of an oral agreement, as well as its execution, must be clear and convincing." *Coldwell Banker & Co. v. Pepper Tree Office Center Associates*, 106 Cal.App.3d 272, 280–81, 165 Cal.Rptr. 51, 56 (1980).

Defendant argues that the consent to pay the Speedpay fee is a valid oral modification. Here, however, as acknowledged by Defendant, the parties' Contract is silent with respect to Speedpay fees. An "oral modification" presupposes an existing term or provision in writing. "An executed oral modification of a term or provision of the contract does not wholly extinguish the contract; the effect

is to alter only those portions of the written contract directly affected by the oral agreement leaving the remaining portions intact." *Flemmer v. Newell (In re Vill. Concepts, Inc.)*, No. 2:14-cv-00021-KJM-DAD, 2015 U.S. Dist. LEXIS 33816, 2015 WL 1258621, at * 10 (E.D. Cal. Mar. 17, 2015) (*citing Davies Mach. Co. v. Pine Mountain Club, Inc*., 39 Cal.App.3d 18, 24–25, 113 Cal.Rptr. 784 (1974).

Payment of the Speedpay fee does not alter the terms of the Contract because there is no provision addressing the fee in the underlying Contract. There is no term in the Contract to modify.[5] Plaintiffs' oral agreement to pay Western Union thus did not alter or modify any part of the written Contract with Santander. If at all, the Speedpay fee is a new oral agreement. It was an oral agreement to pay Western Union, not Santander. Santander is not party to that new, hypothetical, contract.[6] Santander would, at best, be a third-party beneficiary. As a third-party beneficiary, however, Santander would have no standing to enforce the Speedpay fee agreement because a third party's right to enforce performance "is predicated on whether the contracting parties intended to confer a benefit on the third party." *Murphy v. Allstate Ins. Co*., 17 Cal.3d 937, 944, 132 Cal.Rptr. 424, 553 P.2d 584 (1976). Plaintiffs' evidence is that they were unaware that Defendants retained a portion of the Speedpay fee, and thus, precludes a finding that the Speedpay fee agreement was intended to confer a benefit on Santander.

Second, an oral modification is only valid if there is a showing that the modification was fully executed by both parties; a fact that Defendant has not demonstrated. Cal. Civ. Code § 1698(b). A party cannot fully perform on an agreement of which they do not have complete knowledge. In her deposition, Plaintiff April Lindblom testified that when she complained to Santander representatives about the excessive Speedpay fee, Defendant explained that the entirety of the Speedpay fee was a cost imposed by Western Union in order to process payments made online or by phone. SAUF ¶ 7. Plaintiffs were thus under the impression that the $10.95 fee was justifiable based on the costly nature of processing the transaction. Plaintiffs, however, now present undisputed evidence that Defendant, misrepresented that fact, and retained a portion of the fee—over and above the cost of that

---

[5] To the extent Santander argues that the Contract was orally modified to **add** the Speedpay fee, the court rejects that argument, as explained more fully *infra*, as inconsistent with the RFDCPA's remedial purposes.

[6] The court makes no ruling whether there was indeed a new oral contract regarding the Speedpay fee, but makes this argument only to demonstrate that an oral modification cannot modify a non-existent term.

11

transaction—as compensation.

From the evidence submitted, the disagreement regarding the nature of the fee raises a material dispute as to whether both parties fully performed the purported oral agreement. *See Davidson v. ConocoPhillips Co.*, 2009 U.S. Dist. LEXIS 59577, 2009 WL 2136535 at *4 (N.D. Cal., July 10, 2009). This is a sufficient basis to deny Defendant's motion for summary judgment on an oral modification theory.

Moreover, even if the Court were to assume that Plaintiffs fully executed an oral modification through their words or conduct—a finding that the Court does not make—the Court is not convinced that the later oral modification could be consistent with statutory protections. Section 1692f(1) prohibits collection of fees "unless such amount is expressly authorized by the agreement creating the debt." 15 U.S.C. § 1692f(1). The phrase "expressly authorized by the agreement creating the debt" requires some actual knowledge or consent by the consumer during the course of the transaction which gives rise to the debt. Giving life to "oral modifications" based on subsequent acts—weeks, or even months later—is contrary to the plain language of the FDCPA that Plaintiffs must agree to the fee at the time the debt is created.

Denying Defendant's oral modification theory under these facts is entirely consistent with the broad remedial purpose underlying California's version of the FDCPA. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) ("The [FDCPA] is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists."); Cal. Civil Code § 1788.1(b) ("It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts ..."). The language of Section 1692f(1) prohibits a debt collector from imposing a service charge unless (i) the customer expressly agrees to the charge in the contract creating the debt or (ii) the charge is permitted by law. The majority of cases examining this provision agree that this section seeks to preclude debt collectors from implementing a method of obtaining increased compensation through the collection of service charges in addition to the underlying debt. *See Longo v. Law Office of Gerald E. Moore & Assocs., P.C.*, No 04 C 5759, 2005 U.S. Dist. LEXIS 48493 (N.D. Ill. Feb. 3, 2005); *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434 (E.D.N.Y. 2014). To allow a debtor to contract around that protection simply

by agreeing to pay an otherwise unlawful fee is wholly contrary to the statute and its purpose to protect consumers.

For all of these reasons, Defendant's argument that Plaintiffs modified their Contract to lawfully permit Defendant's collection of a Speedpay fee is rejected.

## CONCLUSION AND ORDER

For the reasons set forth above, it is HEREBY ORDERED that Defendant Santander Consumer USA Inc.'s motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: __**January 22, 2018**__          /s/ Barbara A. McAuliffe _
                                         UNITED STATES MAGISTRATE JUDGE