UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL LINDBLOM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SANTANDER CONSUMER USA, INC,<br><br>Defendant. | Case No. 1:15-cv-00990-BAM<br><br>ORDER DENYING INTERVENORS MOTIONS FOR LEAVE TO INTERVENE<br><br>(Docs. 124, 127, 136). |

**I. INTRODUCTION**

Presently before the Court are two motions to intervene filed by proposed intervenors Vicki Blakely, Steven Lawson, Christy Mitchell, Leslie Williams, James Rolland, Jaynellis Salinas ("Intervenors I") and Kathleen Jones, Kevin Grief, Samuel Carter, and Annie Bluitt ("Intervenors II") to intervene as class representatives. (Docs. 124, 127, 136).[1] Defendant Santander Consumer USA, Inc. ("Defendant" or "Santander") opposed the motions, (Docs. 133, 140), and Intervenors replied (Docs. 137, 141). On June 20, 2018, the parties filed notices of supplemental authority. (Docs. 144, 145, 146.) The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g) and took the motions under submission. (Docs. 142). Having

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 74, 77). For that reason, the action was reassigned to the Honorable Barbara A. McAuliffe for all purposes. *See* 28 U.S.C.§ 636(c); Fed. R. Civ. P. 73; *see also* L. R. 301, 305. (Doc. 78).

1

carefully considered the intervenors' motions, the defendant's oppositions, the reply briefs, and the notice of supplemental authority, as well as the entire record in this case, the Court DENIES the motions.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

In March 2007, Plaintiff purchased a 2006 Jeep Liberty which she financed with a loan serviced by Defendant Santander Consumer USA, Inc. At times, Plaintiff made payments on the loan by phone or online using Western Union's Speedpay service. To do so, Plaintiff was required to pay a flat $10.95 fee ("Speedpay fee") per transaction to Western Union. Plaintiff alleges Western Union then remitted most of the Speedpay fee it collected to Santander. Plaintiff challenges the legality of the Speedpay fees retained by Santander under § 1692f(1) of the Fair Debt Collections Practices Act ("RFDCPA"), and in turn, its California counterpart the Rosenthal Fair Debt Collections Act ("Rosenthal Act"). 15 U.S.C. § 1692f(1); Cal. Civ. Code § 1788.17.

On October 30, 2014, the initial complaint giving rise to the underlying putative class action was filed in the United States District Court for the Northern District of Alabama. (Doc. 1). That complaint styled *Woods v. Santander Consumer USA Inc.,* No. 2:14-cv-02104- MHH (N.D. Ala.), accused Defendant Santander of illegally charging Speedpay Fees in violation of the Fair Debt Collections Practices Act. On December 5, 2014, the initial Plaintiffs amended the complaint to add April Lindblom as a named Plaintiff. (Doc. 1). On June 22, 2015, the Alabama District Court severed Plaintiff's suit and transferred the matter to this Court.

Following transfer, this Court ruled on two motions to dismiss and denied Defendant Santander's motion for judgment on the pleadings. The Court subsequently entered a scheduling order and Plaintiff's suit proceeded to class discovery on June 22, 2016. (Doc. 76). After being continued twice, the deadline for fact discovery closed on February 27, 2017. (Docs. 84, 87).

On October 13, 2017, Plaintiff moved to certify a class composed of "[a]ll individuals in the state of California, who, during the applicable limitations period, paid a convenience fee through Western Union's Speedpay service in connection with any consumer loan held and/or serviced by Santander." (Doc. 81). Defendant opposed certification in part by challenging Plaintiff's adequacy as a class representative. Defendant argued that Plaintiff could not be a

member of the defined class because her claim fell outside of the one-year "applicable [statute of] limitations period." Cal. Civ. Code § 1788.30(f).

At oral argument on January 12, 2018, the Court expressed concern that Plaintiff was not a member of the class because she had not paid the Speedpay fee within the applicable limitations period; requiring her to rely on equitable tolling to qualify as a member of the defined class. Plaintiff's counsel acknowledged that he was "struggling to figure out a way" that Plaintiff could represent the class given the applicable limitations period. (Reidy Decl. at 25). Plaintiff's counsel later responded that due to the Court's concerns regarding Plaintiff's class membership, he intended to file a motion for intervention to name alternative class representatives. (Doc. 133-1 at 25). Accordingly, following the hearing and while the motion for class certification was under submission, proposed Intervenors I filed their Motion for Leave to Intervene as alternative class representatives. (Doc. 133).

On January 26, 2018, the Court denied Plaintiff's Motion for Class Certification, finding that Plaintiff April Lindblom was not an adequate class representative and her claims were atypical of the class. *Lindblom v. Santander Consumer USA, Inc.*, 15-CV-0990-BAM, 2018 WL 573356 (E.D. Cal. Jan. 26, 2018). Then, Intervenors II filed a second motion to intervene as class representatives (Intervenors I and II are collectively referred to as "Movants"). (Doc. 136).

In the two pending Motions to Intervene, the ten Movants seek to intervene in this litigation "to protect their ability to bring their RFDCPA claim as part of a class action." (Doc. 124 at 3). In their motion and attached complaint, Movants allege that they are individuals residing throughout California in various counties, including Sacramento, Los Angeles, Riverside and Alameda. (Doc. 124-1 at 1-2). Movants further allege that they each "purchased a vehicle through an auto loan that came to be serviced by Defendant Santander. [They] paid on [the] loan over the phone and [were] charged the Speedpay fee, which Santander collected." (Doc. 124-1, at 1-2). Movants seek permissive intervention on grounds that: (1) "their claims share common questions of law and fact with those of April Lindblom"; (2) "as putative class members, they have a direct interest in the outcome of the case"; and (3) the motion is "timely and will neither delay nor prejudice the adjudication of the original parties' rights." (Doc. 124 at 2). Defendant has filed a response in

3

opposition, arguing that the Movants' motions are untimely and would prejudice the Defendant if granted. (Docs. 133, 140).

## III. DISCUSSION

### A. Legal Standard – Permissive Intervention

Federal Rule of Civil Procedure 24(b)(2) governs a party's request to intervene by permission of the court. Rule 24(b)(2) provides:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b)(2).

In this circuit, there are three necessary prerequisites to allow permissive intervention pursuant to Rule 24(b)(2): "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996). As with motions for intervention as of right, "[a] finding of untimeliness defeats a motion for permissive intervention." *United States v. Washington*, 86 F.3d 1499, 1507 (9th Cir. 1996). In the context of permissive intervention, however, the Court analyzes the timeliness element more strictly than with intervention as of right. *See United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (*citing Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1061 (9th Cir. 1997), *cert. denied*, 524 U.S. 926, 118 S. Ct. 2319, 141 L. Ed. 2d 694 (1998)).

### B. Timeliness of Intervention

Timeliness is a threshold requirement for permissive intervention. *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (explaining timeliness and stating that if untimely, other elements of the motion to intervene are not considered). In determining

whether a motion to intervene is timely, courts weigh three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Zurich Am. Ins. Co. v. ACE Am. Ins. Co.*, No. 11-cv-0881-KJM, 2012 U.S. Dist. LEXIS 126949, 2012 WL 3884695, at *2 (E.D. Cal. Sept. 6, 2012) (*citing U.S. v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)). "The question of timeliness is addressed to the sound discretion of the trial court." *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978).

### 1.    Stage of Proceedings

The first factor in determining timeliness is the stage of the proceeding. "Although delay can strongly weigh against intervention, the mere lapse of time, without more, is not necessarily a bar to intervention." *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 922 (9th Cir. 2004). Thus, to be timely, an applicant need not seek to intervene immediately. Instead, "courts consider whether there have been actual proceedings of substance on the merits in the underlying action." *CEP Emery Tech Investors LLC v. JPMorgan Chase Bank, N.A.*, 2010 U.S. Dist. LEXIS 144423, 2010 WL 1460263 (N.D. Cal. 2010).

In addressing the first prong of the timeliness test, Movants stress that their motions are timely because at the time of the first motion to intervene this case had not advanced past the stage of class certification. Defendant responds that the Motions to Intervene come at a very late stage of the case—three years into the litigation and after certification and summary judgment have been briefed, argued, and decided.

The Court finds that the stage of the proceedings factor weighs against intervention. Between the initial lawsuit filed on October 30, 2014 (subsequently transferred to this Court on June 29, 2015) and the Movants' Motions to Intervene on January 12, 2018 and February 2, 2018, numerous important litigation milestones had passed. Several motions to dismiss had been decided, as well as a motion for judgment on the pleadings, a motion for summary judgment, and a motion for class certification, all of which were extensively briefed by the parties. See (Docs. 19, 31, 53, 76, 105, 108, 111). The parties attended private mediation while the case was stayed, and the Court issued an amended scheduling order when mediation was ultimately unsuccessful. (Docs. 92, 94, 105). The parties conducted discovery for a full year and after the discovery deadlines were

extended, class discovery closed on February 27, 2017. (Doc. 87). All other class related deadlines have also long since expired.

Movants rely primarily on this Court's decision in *Munoz v. PHH Corp*. where this Court approved intervention following a motion for class certification, holding that "the proper stage of proceedings to seek intervention would be before a final order on class certification has issued." 2013 WL 3935054, at *7-8 (E.D. Cal. July 29, 2013) (McAuliffe, J.). But in *Munoz*, this Court found the "stage of the proceedings" factor weighed in favor of intervention not only because "very little ha[d] actually been litigated"—discovery was ongoing with no set cut-off date and a scheduling order had not yet been entered—but also the findings and recommendations on certification were not final and the court was inclined to grant certification in part. *Munoz*, 2013 WL 3935054 at *7.

Unlike *Munoz*, this case is not at an early stage of the litigation. The phase during which this case was a potential class action has ended. Class discovery deadlines have expired and class certification has been denied. Plaintiff has overcome a summary judgment motion against her, individually, and this case is entering the last remaining phase of this case—trial on her individual claim. The first factor, consequently, weighs in favor of a finding of untimeliness.

### 2. **Prejudice to the Other Parties**

In reviewing a motion to intervene, "the court [next] considers whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed R. Civ. P. 24(b)(3). "To determine whether intervention prejudices the other parties to a case, the court compares the harm from allowing intervention at a later stage of the proceedings with what would have occurred no matter when the applicant was allowed to intervene." *W. Coast Seafood Processors Ass'n v. Nat. Res. Def. Council, Inc*., 643 F.3d 701 (9th Cir. 2011). That is, prejudice in this context is the harm that arises from late intervention as opposed to early intervention. *Munoz*, 2013 WL 3935054, at *7-8. Intervention is not proper where it "would only serve to undermine the efficiency of the litigation process." *Donnelly*, 159 F.3d at 412; *see also, Kamakahi v. American Society for Reproductive Medicine,* No. 11-cv-0178-JCS, 2015 U.S. Dist. LEXIS 54842, 2015 WL 1926312, at *4 (N.D. Cal. Apr. 27, 2015) (prejudice results from the timing of intervention rather than the

fact of intervention).

### a. Defendant has Shown Prejudice

Defendant argues that intervention at this juncture would require "a do-over" of almost the entire litigation; the Court would be forced to entertain requests to reopen discovery and issue new discovery deadlines. Defendant would be required to take depositions and conduct substantial written discovery to determine whether any of the ten intervenors are suitable class representatives. Intervention would further result in additional motion practice including briefings on summary judgment and class certification. *Compare Munoz*, 2013 WL 3935054, at *9 (finding no prejudice, in part, because discovery was still open and defendants would have conducted discovery with respect to the intervenor's claims regardless of whether she was listed as an original representative or sought to intervene at any point).

Movants respond that despite their decision to wait until the midst of class certification to move for intervention, there is no serious prejudice to Defendant in permitting intervention. Naming new class representatives will not inject new issues and matters into the litigation as Movants "have the exact same claims as [Plaintiff]; each of the proposed movants paid unlawful Speedpay fees to Defendant when attempting to pay on their auto loans online or over the phone, in violation of the Rosenthal Act." Indeed, in the Movants' view, intervention is less prejudicial to Defendant because "under Supreme Court precedent, including *American Pipe*,[2] if this motion is denied, proposed Intervenors can simply file another lawsuit and make another court [and Defendant] go through this all again." (Doc. 141 at 6).

The Movants' arguments do little to convince the Court of the absence of prejudice to the existing parties. Rather, the Movants' motions demonstrate that, far from being a minor inconvenience, the addition of new class representatives would serve to derail this case from its current track to trial; particularly in light of Defendant's arguments that intervention would require significant and costly discovery to determine whether Movants are truly in the class. Defendant's

---

[2] In *American Pipe*, the Supreme Court noted that the "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974).

7

opposition raised substantive questions regarding several of the Movants' eligibility for membership in the putative class. (Doc. 133 at 4). For example, Defendant argues that "of the six [Intervenor I movants, Defendant] located [only] two Intervenors on the class list. Two other Intervenors—Leslie Williams and James Rolland—are not on the class list. As to the remaining two Intervenors I, it is unclear whether Intervenor Steven Lawson is on the class list as there are two individuals with the same name on the class list. Even if one of those individuals is correct, he is subject to an arbitration and class waiver clause. Finally, Intervenor Christy Mitchell is not on the class list. Two "Kristy Mitchells" are on the class list, but it is unclear whether either of these individuals is the same Intervenor Christy Mitchell. Even if one of these individuals is the correct Intervenor, she is also subject to a class waiver and arbitration clause." (Doc. 133-1 at 3).

Instead of meaningfully addressing the deficiencies Defendant identified with respect to Intervenors I, counsel for Plaintiff filed a second Motion to Intervene (Intervenors II) with new and additional would-be class representatives. (Doc. 136). This successive filing of motions to intervene raises doubts whether some or all of the proposed intervenors can serve as the class representatives or even participate in this action. (Doc. 140 at 12). At a minimum, it foretells significant litigation to resolve disputes surrounding the numerous potential class representatives. *See Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) (denying intervention because many substantive and procedural issues had already been settled by the time of the intervention motion).

Thus, while proposed intervenors argue that the questions regarding their class membership "can and should be answered at a later date," at this stage in the proceedings where discovery is over, class certification has been denied, and the parties are marching towards trial, requiring Defendant to conduct discovery to explore the merits of the ten intervenors' viability in this suit is prejudicial to both Plaintiff and Defendant. (Doc. 137 at 2).

### b. The Effect of *China Agritech, Inc.*

In supplemental papers filed after the Motions to Intervene, Movants raised a new argument that denying intervention is prejudicial to the would-be class members in light of the Supreme Court's decision in *China Agritech, Inc. v. Resh.*—decided during the pendency of the Movants' application to intervene. *China Agritech, Inc. v. Resh, et al.*, 138 S.Ct 1800, 2018 WL 2767565,

___ U.S. ___ (2018); (Doc. 146).

In *China Agritech*, the Supreme Court clarified that the *American Pipe* rule only tolls a putative class member's <u>individual</u> claims—it does not allow a putative class member to file a new class action after the statute of limitations has expired. *China Agritech, Inc. v. Resh*, No. 17-432, 138 S.Ct 1800, 2018 WL 2767565 (U.S. June 11, 2018) ("Ordinarily, to benefit from equitable tolling, plaintiffs must demonstrate that they have been diligent in pursuit of their claims," "A would-be class representative who commences suit after expiration of the limitation period, however, can hardly qualify as diligent in asserting claims and pursuing relief."). In *American Pipe*, the Supreme Court had held that the filing of a class action tolls the running of the applicable statute of limitations for all asserted members of the class. *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554 (1974). In *China Agritech,* the Court clarified that "*American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action." *China Agritech*, 138 S.Ct at 1806. Thus, to the extent that Movants would rely on *American Pipe* tolling to file a successive class action, Movants would not be entitled to proceed on behalf of a putative class; only their individual claims are tolled.

Movants argue that they, then, must be permitted to intervene so that they may bring a class action, which they cannot now do in a successive case. But *China Agritech* does not bolster Movants' right to intervene in this action. In considering whether to allow permissive intervention, the Court does not consider potential prejudice to the absent, putative class members. The Court is unaware of any case holding that the Court should consider potential impairment to a would-be class member for purposes of permissive intervention, even though a proposed intervenor's direct interest is not impaired. *See Lee v. Pep Boys-Manny Moe & Jack of California,* 12-CV-05064-JSC, 2016 U.S. Dist. LEXIS 9753, 2016 WL 324015, at *4 (N.D. Cal. Jan. 27, 2016) (holding that there does not appear to be case law supporting an intervenors effort to protect potential impairment to absent putative class members). Rather, prejudice under permissive intervention looks at the harm suffered by the existing parties—Plaintiff April Lindblom and Defendant Santander. Indeed, "the requirement of timeliness is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *See Roane v. Leonhart*, 741

F.3d 147, 151 (D.C. Cir. 2014).

Further, to the extent that the proposed intervenors class claims are no longer viable in a successive action, *China Agritech* leaves undisturbed the proposition that movants may still benefit from *American Pipe* tolling in pursuit of their individual claims. Therefore, movants need not intervene here to pursue their individual claims.[3] While the ability to bring a claim in separate litigation is not in itself a sufficient reason to deny intervention, *Ghazarian v. Wheeler*, 177 F.R.D. 482 (C.D. Cal. 1997), the fact that the proposed intervenors will suffer no harm if intervention is denied is relevant to the Court's assessment of the timeliness of its motion.

All of the other considerations before the Court indicate that the movants intervention at this late date will serve only to disadvantage the existing parties, delay the resolution of this protracted litigation, and unnecessarily complicate an already-complex proceeding by relitigating issues. This factor therefore weighs against timeliness.

### 3. Reason for the Length and Delay

Finally, the third factor which the Court considers for intervention is the reason for and length of the delay. This factor looks to how long the party has known of her interest.

Movants provide little justification for waiting three years to seek lead-plaintiff status in this case. Movants claim that they "did not learn that [Defendant] would raise the . . . argument that [Plaintiff] was not a member of the class until [Defendant] filed its response to [the] Motion for Class Certification on November 28, 2017." (Doc. 124 at 3). But there is no dispute that, as of October 20, 2015, counsel for Plaintiff and the movants were aware that Defendant was asserting the statute of limitations as its first affirmative defense in the answer. (Doc. 33 at ¶ 15). Indeed, Plaintiff's first amended complaint, filed on September 27, 2015, set out an equitable tolling defense in anticipation of Defendant's defense. The first amended complaint states that "the statute of limitations has been tolled as to the Plaintiff during all relevant times because defendants concealed from the plaintiff, and the public generally, that a portion of the money paid by Plaintiffs for its Speedpay service was remitted to debt collectors including Santander, in violation of the

---

[3] Indeed, on June 6, 2018, Movants filed *Blakely et al. v. Santander Consumer USA, Inc,* Case No. 2:18-cv-01647 WBS-EFB which is currently pending in this district before District Judge William B. Shubb. (Doc. 143).

Rosenthal Act." (Doc. 27 at 6, ¶ 15).

It was known, as early as September 27, 2015, that a major issue was whether the statute of limitations would bar Plaintiff's claims, thereby making her an arguably inadequate representative. Undoubtedly, the issue was a subject of discovery, which closed on February 27, 2017. (Doc. 87). Movants' counsel is also Plaintiff's counsel, who knew of the statute of limitations defense. Further, in 2016, Plaintiff and her counsel were again made aware of the related statute of limitations issues when they were presented with a spreadsheet of the proposed class, and Plaintiff's name was not listed among the class members.

Rather than seeking to intervene as soon as movants learned that Plaintiff's claim may be barred by the statute of limitations, Movants waited until the middle of oral argument on class certification before informing Defendant and the Court of their desire to be included as named Plaintiffs. Reidy Decl. at 25. In the interim, this Court has denied Plaintiff's motion for class certification, on the grounds which Plaintiff has predicted as early as September 27, 2015—nearly two and half years earlier. (Doc. 132) (finding Plaintiff an inadequate class representative on statute of limitations grounds).

Even though Movants knew or should have known that Defendant would challenge the underlying suit based on statute of limitations grounds, Movants failed to act until all class-certification discovery had closed and the class certification motion was fully briefed and argued. That failure is all the more significant because Plaintiff intended from the outset to pursue this case as a class action. For that reason, factor three weighs strongly against a finding of timeliness.

*///*

*///*

*///*

*///*

*///*

*///*

## IV. CONCLUSION

In sum, Movants have failed to meet the threshold requirement of timeliness for permissive

intervention under Federal Rule of Civil Procedure 24(b). A finding of untimeliness is fatal to an application for intervention. Accordingly, the Court declines to exercise its discretion to grant permissive intervention. For the reasons described above, the Motions for permissive intervention by Vicki Blakely, Steven Lawson, Christy Mitchell, Leslie Williams, James Rolland, Jaynellis Salinas, Kathleen Jones, Kevin Grief, Samuel Carter, and Annie Bluitt to intervene are DENIED.

IT IS SO ORDERED.

Dated: **June 29, 2018**   /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE